**Matlock Law Group**
A Professional Corporation
Anne Leith W. Matlock, SBN 244351, Application Pending in Northern District of CA
Guy D. Chism, SBN 244284, Admitted in the Northern District of California
961 Ygnacio Valley Road
Walnut Creek, CA 94596
Office: 925-944-7131
Fax: 925-938-4625

Attorneys for Movant

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AT&T Corp.<br><br>PLAINTIFF,<br><br>v.<br><br>Dataway, Inc.<br><br>DEFENDANT. | **CASE NO. C07-02440 SC**<br><br>**NOTICE OF MOTION AND MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>**Date: Friday, October 12, 2007**<br>**Time: 9 a.m.**<br>**Courtroom: No. 7** |

**NOTICE**

Defendant Dataway, Inc. ("Dataway") hereby gives notice that on Friday, October 12, 2007, in Courtroom No. 7 before the Honorable Judge Maxine M. Chesney this Motion to Set Aside the Entry of Default will be heard.

**RELIEF SOUGHT**

Defendant Dataway, Inc. ("Dataway") is seeking an order to set aside clerical entry of default entered on August 6, 2007.

**POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE ENTRY OF DEFAULT**

**TABLE OF CONTENTS**

I. TABLE OF AUTHORITIES

II. STATEMENT OF ISSUES TO BE DECIDED

III. FACTUAL BACKGROUND

IV. ARGUMENT

A. GOOD CAUSE

B. PREJUDICE OF PLAINTIFF NOT PRESENT

C. MERITORIOUS DEFENSES

D. INCULPABLE DELAY IN ANSWER

1. MISTAKE OF FACTS

2. EXCUSABLE NEGLECT

3. "VOID" JUDGMENT FOR LACK OF PROPER SERVICE

4. LACK OF SUBJECT MATTER JURISDICTION

5. FRAUD

E. BALANCING OF ALL RELEVANT FACTORS

V. CONCLUSION

# TABLE OF AUTHORITIES

**CASES**

American Alliance Inc. Co. v. Eagle Ins. Co., 92 F.3d 57 (2d Cir. 1996) ... 11

Brady v. U.S., 122 F.3d 499, 504 … 14

Chrysler Credit Corp. v. Macino, 710 F2d 363, 368 (7th Cir. 1983) … 10

Davis v. Musler, 713 F.2d 907 (2d Cir. 1983) ... 7

Eichenberg v. Moreno, Cal.App. 4 Dist., 2007 WL 158745 … 10

Falk v. Allen, 739 F.2d 461 (9th Cir. 1984) ... 7

Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc., 375 F.3d 922, 926 … 7

Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d 508 (9th Cir. 1986) ... 8

Jones v. Phipps, 39 F.3d 158 (7th Cir. 1994) ... 8

Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149 (1908) … 15

Mendoza v. Wright Vineyard Management, 783 F.2d 941 (9th Cir. 1986) ... 7

Pennoyer v. Neff, 95 U.S. 714 (1877) … 14

Pessler v. Metcalf, 2007 WL 1696996 … 8

Posern v. Prudential Securities, Inc., No. C03-0507 SC, 2004 WL 771399, 8 (N.D.Cal. Feb.18, 2004) … 9

Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, , 113 S.Ct. 1489 (1993) ... 12

Schwab v. Bullock's, Inc., 508 F.2d 353 (9th Cir.1974) … 5, 17

Securities & Exchange Commission v. McNulty, 137 F. 3d 732 (2d Cir. 1998) ... 8

TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691 (9th Cir. 2001) ... 11

Tobel v. City of Hammond, 94 F3d 360 (7th Cir. 1996) … 16

Veeck v. Commodity Enterprises, Inc., 487 F.2d 423 … 14

**STATUTES**

Fed. R. Civ. P. 4 ... 13, 16, 18

Fed. R. Civ. P. 55 ... 4, 7, 10, 17

Fed. R. Civ. P 60(b) … 4, 7, 10, 11, 13, 14, 15, 16, 17

28 U.S.C. 1331 … 14

29 U.S.C. 139, 1391… 15

47 U.S.C. 201 et. seq. … 8, 15

**STATEMENT OF ISSUES TO BE DECIDED**

Is there good cause for "Dataway's" failure to answer AT&T's summons pursuant to Fed. R. Civ. P. § 55(c) or, absent a default judgment, is there excusable neglect pursuant to Fed. R. Civ. P. § 60(b)?

**FACTUAL BACKGROUND**

**PROCEDURAL**

On May 8, 2007, an order for recussal was entered and Honorable Judge Chesney was assigned on May 9 all further proceedings. In the interim, all court dates, were vacated. On July 10, 2007 Defendant was allegedly served with a summons and complaint and order granting recussal and vacating all court dates. The Reassignment Order and new Case Management dates were not served.

On July 11, 2007 the process server entered the company's premises, vainly tried to descry an officer or the agent for service and when all employees refused to accept the documents, he merely jettisoned the summons and the complaint and left. The Plaintiff, however, alleges that the Defendant was, at first, served in person, and then, secondly, served by service upon the company's agent for service, both on July 10. Neither day, was an officer of the company present, and Simon Lewis, "Dataway's"

agent for service, was out of the state and did not return to the office until July 16, 2007.

Simon Lewis found the improperly served complaint and the summons on his desk when he returned to his office from his travel on July 16. On August 1, 2007 "Dataway" delivered without any legal assistance a Letter of Appeal to the Consumer Affairs Bureau at C.P.U.C., the agency to whom the dispute was referred. On August 2, "Dataway" was caught by surprise when it was served with a request for entry of default. The court's clerk entered the default on August 6, 2007 but, as of August 27, 2007, the Defendant has not received a notice of entry of default, neither via e-mail nor U.S. mail.

"Dataway" retained legal counsel immediately. On August 10, 2007, counsel for the Defendant learned from the Court Docket that the case had been reassigned to Honorable Judge Maxine M. Chesney for all further proceedings.

## UNDERLYING CASE

On July 24, 2006 fraudulent calls were made through "Dataway's" voice mail system using AT&T's Legacy T network, a service "Dataway" never subscribed to and an account that was never authorized by the Defendant. In fact, "Dataway" consolidated all its telecommunication services with SBC/AT&T which in turn set up a slamming protection, a means to prevent a switching of providers. The investigating parties found that only the unauthorized calls' routing number pointed to "Dataway", but that Defendant did not execute the calls. After a clarifying dialogue, AT&T assured "Dataway" that AT&T would waive the charges for the fraudulent calls once "Dataway" disputed them because such hacker incidents recently occurred frequently. See Declaration of Simon Lewis attached hereto.

Despite this agreement, a subsequent request submitted by "Dataway" and multiple correspondence, AT&T sent a Past Due Reminder that the balance was still

open and, shortly after, a notice of disconnect for "Dataway's" account. To resolve the dispute Defendant again contacted and informed AT&T as well as AT&T's local managers, and four administrative authorities, among them F.C.C. and C.P.U.C. See Declaration of Simon Lewis attached hereto. Defendant also replied to a form received from the AT&T Fraud Resolution Group with the requested documents, a copy of unauthorized account statement and a statement of dispute of account see declaration of Simon Lewis attached hereto. These endeavors merely resulted in a halt of the disconnect notice and an unacceptable offer to discount the total balance by 35% (November 2006) and then 50% (December 2006). Both were refused by Defendant who subsequently responded by filing an informal complaint with F.C.C.. AT&T was served by F.C.C. with this complaint on January 17, 2007. Also in January, "Dataway" was notified, that its case had been referred to C.P.U.C. and, in a phone conference on February 1, 2007, an F.C.C. agent explained that the F.C.C. would be disabled from further involvement due to AT&T's offered discount to settle.

## ARGUMENT

## GOOD CAUSE

The standard of "good cause" applied to a motion for relief from the entry of default is setting forth a lower threshold than the "excusable neglect" standard necessary for relief from *final* judgments. Any doubt should be resolved in favor of setting aside the default in order to decide cases on their merits. Schwab v. Bullock's, Inc., 508 F.2d 353, 355 (9th Cir.1974). This lower standard is justified by the fact that an entry of default is a clerical act, and not a final judgment issued by the Court.

However, even though the standards differ, the same basic factors govern relief from both, entry of default and a default judgment. This is, because the three factors derived from the "good cause" standard that governs the lifting of entries of default

under Fed. R. Civ. P. 55(c) governs the vacating of a default judgment under Rule 60(b) as well.

In the Ninth Circuit, the test the Court applies when relief from default is sought is: "(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984). However, this is a disjunctive list and "where timely relief is sought from a default ... and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits." Mendoza v. Wright Vineyard Management, 783 F.2d 941, 945-946 (9th Cir. 1986).

Based on the factors, as argued below, good cause exists for this Court to set aside the Clerk's Entry of Default against the Defendant "Dataway".

**PREJUDICE OF PLAINTIFF NOT PRESENT**

AT&T has not cited any prejudice it would suffer if the default were to be set aside and Defendant cannot perceive any either. Prejudice can be shown when the plaintiffs ability to pursue his claims will be hindered if a default is set aside. Falk, 739 F.2d at 463. Delay or passage of time alone does not constitute prejudice unless it "will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983).

Prejudice for AT&T will not occur because setting aside the default would only result in a mere lapse of time. Plaintiff will not sustain any loss of evidence but rather the regular trial proceeding will be reinitiated. Thus, defendant argues that no prejudice for the Plaintiff can be perceived by this case proceeding on the merits.

**MERITORIOUS DEFENSES**

The interest of substantial justice has to be served. Therefore, the movant has to show facts which would establish that the proposed motion is not only late for good reason but that defendant has meritorious defenses against the plaintiff's claim for relief, that he has some probability of success on the merits. Franchise Holding II, LLC. v. Huntington Restaurants Group, Inc., 375 F.3d 922, 926.

In considering whether a defendant has a meritorious defense, the Court must determine "whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." Hawaii Carpenters' Trust Funds v. Stone, 794 F.2d at 513. "A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." Jones v. Phipps, 39 F.3d 158, 165 (7th Cir. 1994). The standard is not a likelihood of success. Rather, defendant need only show that the defense allegations, if proven, would constitute a complete defense. Securities & Exchange Commission v. McNulty, 137 F. 3d 732 (2d Cir. 1998).

Plaintiff has alleged that Defendant is liable for the payment of charges in the amount of $ 11,543.67 for the unauthorized telecommunication calls and related services together with prejudgment interest of $ 5.69 per day from September 25, 2006. AT&T's right for relief allegedly arises out of 47 U.S.C. §§ 201 and Quantum Meruit. However, Plaintiff does not only fail to prove all elements of his claims but Defendant also has affirmative defenses against them.

The Quantum Meruit claim is not established by showing all its elements. Quantum Meruit is imposed to avoid the unjust enrichment of one party at the expense of another. This doctrine by which "…the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered." Pessler v. Metcalf, 2007 WL 1696996, 9. "To recover in Quantum Meruit, a party need

not prove the existence of a contract, but it must show the circumstances were such that 'the services were rendered under some understanding or expectation of both parties that compensation therefore was to be made.'" Pessler, at 9. In the case at hand, there was no understanding of any kind that compensation was to be made for the service. In fact, "Dataway" did not receive any services but it is established, that an outside, unauthorized intervening activity had occurred that used AT&T's services. Defendant also reported these unauthorized acts to the C.P.U.C. and F.C.C. asserting that an unauthorized party herein referred to as a "hacker" accessed the "Dataway" account and misused it. Such criminal conduct by a third party does not trigger the doctrine of Quantum Meruit as alleged by Plainitff. Quantum Meruit rather would require that a recipient to use services that were obviously not for free and, therefore, recipient should have expected to pay for such services and, in fact, is obliged to do so.

Alternatively, if these phone calls were to be treated as authorized activity, Plaintiff would be unjustly enriched if "Dataway" should be forced to pay the claimed amount. The elements that must be established to prove unjust enrichment are (1) receipt of a benefit and (2) unjustified retention of that benefit at another's expense. Posern v. Prudential Securities, Inc., No. C03-0507 SC, 2004 WL 771399, 8 (N.D.Cal. Feb.18, 2004). If the disputed calls were charged to "Dataway's" number and, thus, were made under the existing SBC/AT&T contract, Defendant, at most, would be charged with the rate determined in the contract. According to the contractual long distance plan rate, calls to the Philippines would cost $ 0.30 cents per minute. The arbitrary $5.67 rate used to calculate the unauthorized calls, however, is 1,920% higher than Defendant contracted for were the calls authorized. At contracted rates the cost of these 1,628 minutes of unauthorized calls would be a mere $ 488.80, plus corresponding related connectivity charges and taxes. Here, any demand or subsequent court order to pay any amount above the contractual amount would constitute a breach of contract and further facilitate the unjust enrichment of plaintiff.

Additionally, under the above analysis, any payment by defendant of plaintiffs previously proposed settlement offer would also constitute unjust enrichment because at best, the settlement offer was a 50% discount on the unconscionable rate used to calculate Plaintiff's demands for payment. Therefore, because "Dataway" can show these meritorious defenses, its motion has high probability of success on the merits.

## INCULPABLE DELAY IN ANSWER

Defendant's delay in answering the complaint was inculpable because "Dataway" can show good cause. Under Fed.R.Civ.P. 55(c) and 60(b) as previously set forth under good cause, see supra, the court may set aside an entry of default for good cause shown and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Although no default judgment has been entered Defendant can meet the higher standard of Fed. R. Civ. P. 60(b)(1) by showing "mistake, inadvertence, surprise or excusable neglect." Fed. R. Civ. P. 60(b)(1). These factors are foundational in determining "good cause" within the meaning of Fed. R. Civ. P. 55(c). Chrysler Credit Corp. v. Macino, 710 F2d 363, 368 (7th Cir. 1983).

### 1. Mistake of Fact

In Eichenberg it was established that relief from a default judgment may be granted if such judgment was obtained because of a mistaken understanding of the facts concerning the duty to respond. Eichenberg v. Moreno, Cal.App. 4 Dist., 2007 WL 158745, 3. Defendant's default in timely answering the complaint was not willful. Given the constructive knowledge of the suit was not obtained until at least July 16, and actual mail service was not effected till August 2. Defendant apparently mistook or, rather, lacked the knowledge of the proceedings' urgency. In fact, defendant acted

promptly upon discovery of the complaint, and retained legal counsel immediately to undertake actions to set aside the entry of default.

Additionally, Defendant assumed that all deadlines were suspended and that there was no reason to hurry along because of the vacancy order. The summons and complaint that Simon Lewis obtained did not include the new order showing judge appointment and subsequent court dates. Thus, he assumed all pending dates of motions, pretrial conferences and trial were vacated. Defendant's assumption caused by Plaintiff's failure to serve all relevant court documents, constitutes a mistake of fact.

**2. Excusable neglect**

Fed. R. Civ. P. 60(b)(1) does not define the term "excusable neglect." However, its meaning can be determined by reference to case law.

As default judgments are generally disfavored, the Ninth Circuit has narrowly defined conduct that will qualify as "neglect" and explained that a defendant's conduct must be "'willful, deliberate, or evidence of bad faith.'" to amount to culpability. TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001), quoting American Alliance Inc. Co. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996). Even where a defendant had "receive[d] a pleading, read[ ] and underst[ood] it, and t[ook] no steps to meet the deadline for filing a responsive pleading," his conduct would not be considered culpable. TCI Group Life Ins. Plan, at 697. "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process is not 'intentional' under our default cases, and is therefore not ...culpable or inexcusable." TCI, 244 F.3d at 698.

"Dataway's" delay is not culpable because it can offer such a good faith explanation. If a Defendant has received actual or constructive notice of the filing of the action and *intentionally* failed to answer his conduct is culpable. Id., at 697.

"Intentional [within this context] means an act or omission taken by an actor knowing what the likely consequence will be." Id., at 697. However, when Simon Lewis obtained notice of the summons and the complaint he undertook all necessary steps, and merely failed to meet the deadline whose time limit was set by a defective proof of service filed on July 12 giving the Defendant no chance to react timely. The complaint was not simply ignored, even though Simon Lewis assumed that he would have more time. "Dataway" genuinely attempted to comply and its actions were far from being intentional.

The term "excusable" is equally determined. As noted by the Supreme Court in Pioneer, the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the omission. These include danger of prejudice to the Plaintiff, the length of delay and its potential impact on judicial proceedings, the reason for the delay and whether the movant acted in good faith. Pioneer Inv. Servs. Co. V. Brunswick Assocs. Ltd. P'ship, 113 S.Ct. 1489, 1498 (1993). The actions Simon Lewis undertook in order to comply are excused because he reasonably believed that there were no urgent deadlines that had to be met. He assumed that all pending dates of motions, pretrial conferences and trial would be still vacated due to the served Order of Recusal. This lack of knowledge was Plaintiff's fault because AT&T failed to attach the subsequent order to the complaint it delivered to "Dataway".

Defendant's failure to file an answer or other response before the set time limit was, therefore, excusable, not culpable neglect. Also argued supra, the additional requirement of meritorious defense, necessary to establish the ground of "excusable neglect", is present because AT&T cannot establish all elements of its Quantum Meruit claim.

**3. "Void" Judgment for Lack of Proper Service**

Relief may also be granted upon the grounds of procedural or jurisdictional irregularities in obtaining the default or a default judgment. Defects of this type render the judgment "void" within the meaning of Fed. R. Civ. P. § 60(b)(4).

Such procedural irregularity is the lack of proper service. According to Rule 4(h)(1) the summons upon a corporation in a judicial district of the United States are served "…in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant…" Fed. R. Civ. P. § 60(b)(4). The plaintiff alleges that Defendant was, at first, served in person, and then, secondly, by service upon the company's agent for service, both on July 10. However, personal service upon "Dataway" is not possible because no officer was present, and Simon Lewis, "Dataway's" agent for service, was first out of the country and then out of the state and did not return to "Dataway" offices until July 16, 2007. The process server, in fact, entered the company's premises, and when all employees refused to accept the documents, merely placed the summons and the complaint on the counter. Furthermore, this service of process did not take place on July 10 but on July 11, 2007 see declaration of Simon Lewis attached hereto. The court's documents No.9 and 10 (palpably by mistake titled No. 11) also support this unsoundness in regard of the date and kind of service. Either document is dated July 12, even though the second proof of service is supposed to be a subsequent correction of a retroactively produced proof of service. Yet, the actually rendered service cannot be changed subsequently. Rather, the amendment was a mere formal correction. All this together impairs the document's authenticity and supports that the Defendant was not served properly. Additionally, the documents dropped off on the premises of "Dataway" were not complete. Missing was

the reassignment order and the new case management schedule. Collectively, this renders the default void pursuant to Fed. R. Civ. P. § 60(b)(4).

**4. Lack of Personal Jurisdiction**

Furthermore, the default was entered improperly because of the court's lack of personal jurisdiction. The court has physical power over "Dataway" within the meaning of Pennoyer. Pennoyer v. Neff, 95 U.S. 714, 726-728 (1877). However, the lack of proper service and, therefore, the lack of due process impede the court's power to adjudicate the personal legal rights of the parties brought before it. The Court for the Northern District of California, thus, has no personal jurisdiction over the Defendant "Dataway". The default should be set aside because the court lacks personal jurisdiction.

**5. Lack of Subject Matter Jurisdiction**

The clerk's entry of default is also improper because the U.S. District Court for the Northern District of California has no subject matter jurisdiction.

Any default entered against the defendant is a nullity if the court lacks subject matter jurisdiction. Brady v. U.S., 122 F.3d 499, 504. Federal Courts have limited subject matter jurisdiction. A court has the authority to hear a claim if the parties are from different states or if the issue at bar deals with a federal question within the meaning of 28 U.S.C. 1331. Diversity, even though it was not claimed by the defendant, is not proper subject matter jurisdiction because AT&T is doing business in California and the matter in controversy does not meet the minimum of $ 75,000.

The requirements of 28 U.S.C. 1331 are not met either. In order to establish federal question jurisdiction that is not original jurisdiction, a right or immunity created by the law of the United States must be an essential element of the plaintiff's cause of action. According to the well-pleaded complaint rule the Plaintiff must allege the

federal question in his complaint, which means that either federal law creates the cause of action for the plaintiff or the plaintiff's complaint requires resolution of a substantial question of federal law. An anticipated federal question defense, however, will not raise federal question subject matter jurisdiction. Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149, 152 (1908).

The statutes stated by AT&T, 29 U.S.C. § 1391(a)(2) and 29 U.S.C. § 139, do not satisfy this test. Plaintiff argued that statute 29 U.S.C. § 1391(a)(2) allegedly makes this court the proper court for the trial of this action. However, this statute does not exist in the cited form and cannot establish subject matter jurisdiction for this reason. 29 U.S.C. § 139, governing the Methods for computing withdrawal liability, does not establish a cause of action. Thus, it cannot pose a federal question that could establish subject matter jurisdiction for this court.

The rights of AT&T arising out of Quantum Meruit and 47 U.S.C. §§ 201 et seq. are not federal question issues either. These sections of 47 U.S.C. concern a utility company's ability to, through interstate commerce, collect for its services and are not an issue here. The issue is whether the client owes money and if so how much. Thus, this is a collection case. The law, however, does not allow collections to be heard exclusively in Federal Court. It does allow for damages and remedies to be heard in Federal Court as to rights and services and actions through interstate commerce activity contained in the statute. Therefore, AT&T has failed to demonstrate any federal subject matter jurisdiction.

**6. Fraud**

"[F]raud… misrepresentation or other misconduct of an adverse party…" is another ground for relief that is, in fact, only applicable after a default judgment has been rendered but none the less met in the case at hand. Fed. R. Civ. P. 60(b)(3)

In order to obtain relief under Fed. R. Civ. P. 60(b)(3) the movant must show that (1) the party can maintain a meritorious claim at trial; and (2) because of the fraud, misrepresentation, or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its case at trial. Tobel v. City of Hammond, 94 F3d 360 (7th Cir. 1996).

As argued above Defendant has a meritorious defense. "Dataway" can show that there is the possibility that the outcome of the suit after a full trial will be contrary to the result that would be achieved by the default or a default judgment because it can show that it has affirmative defenses against Plaintiff's claims.

Furthermore, "Dataway" was prevented from presenting its case at trial because of the manner it was served with summons and complaint and because the documents that were served were incomplete.

As argued above, Defendant was not served properly. Even though the Plaintiff alleges that Defendant was, at first, served in person, and then, secondly, served by service upon the company's agent for service, both on July 10 Defendant's agent of service, as well as any other person that could have been served, did not receive notice of the complaint until July 16, 2007. Plaintiff should have known that personal service upon a corporation is not possible but that, according to Fed. R. Civ. P. § 4(h)(1) a corporation can only be served "…by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process…" Fed. R. Civ. P. § 4(h)(1). On July 10, 2007, Simon Lewis, the agent for service was absent and no other officer or other agent entitled to receive the service was present. Either intentionally or wrongfully, Plaintiff nevertheless filed its proof of service with the date of this conducted improper and therefore defective personal service. AT&T, furthermore, knew that it was responsible to include all documents that were filed with the court to include the missing reassignment order. Plaintiff's deviant behavior was either to

impair Defendant's ability to defend itself or was blatantly wrongful. Both satisfy the first prong of the required showings for the grounds of "fraud…misrepresentation or other misconduct of an adverse party." Fed. R. Civ. P. § 60(b)(3). Here plaintiff acted fraudulently.

Additionally, this fraud is further grounds for setting aside the entry of default because it also establishes "good cause" within the meaning of Fed. R. Civ. P. § 55(c).

**BALANCING OF ALL THE RELEVANT FACTORS**

If all relevant factors are balanced, a relief from the entry of default is favorable. Generally, the equities shall be balanced and trials on the merits shall be favored to a default judgment that would follow up the disputed entry of judgment. Schwab, at 356. A default judgment would be a too harsh response given this litigation is still in its beginning stages and Defendant had no chance to proceed on the merits. Up to August 9, 2007, "Dataway" was in fact in pro per and without counsel. The defective service upon the Defendant with documents that state a Case Management Conference on August 17, 2007 but had no prior opportunity to appear, defeated "Dataway's" chances to complete its administrative remedies and rendered it unsuspecting to an overwhelming entry of default. Thus, upon balance of all factors in the instant record, "Dataway" now seeks relief from entry of default and proceeding on the merits would prevail.

**CONCLUSION**

Having argued and shown that Defendant mistook facts, acted with excusable neglect and was not properly served due to Plaintiff's fraudulent behavior, Defendant "Dataway", Inc. now respectfully requests that this Court issue an Order granting relief from entry of default so that defendant my proceed with it's chosen administrative remedies without further delay.

DATED: August 28, 2007

Respectfully Submitted,

MATLOCK LAW GROUP

By: ______________________
Anne-Leith W. Matlock

______________________
Guy D. Chism

Attorneys for Dataway, Inc.