1  **Matlock Law Group,** A Professional Corporation
   Anne-Leith W. Matlock, SBN 244351
2  961 Ygnacio Valley Road
   Walnut Creek, CA 94596
3  Office: 925-944-7131
   Fax: 925-938-4625
4  e-mail: anne-leith@matlocklawgroup.com
5
   Attorney for Defendant/Counterclaimant.
6

7

8                    **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10                    **SAN FRANCISCO DIVISION**

11

12 AT&T Corp.                           **CASE NO. C07-02440 MMC**

13                  PLAINTIFF,

14        v.                            **DEFENDANT DATAWAY, INC.'S**
                                        **ANSWER AND COUNTERCLAIM TO**
15                                      **COMPLAINT FILED BY AT&T**
                                        **CORPORATION**
16 Dataway, Inc.

17

18                  DEFENDANT.

19
   Dataway, Inc.
20
                    COUNTERCLAIMANT
21

22        v.

23 AT&T Corp.

24                  COUNTERDEFENDANT

25

26

27

28
                                    1

TABLE OF CONTENTS

Parties, Jurisdiction and Venue - including lack of jurisdiction over the subject matter and improper venue ................................................................................. 2

First Claim for Relief ............................................................................................. 4

Second Claim for Relief ......................................................................................... 4

AFFIRMATIVE DEFENSES ................................................................................. 5

Insufficiency of Process ......................................................................................... 5

Insufficiency of Service of Process ........................................................................ 5

Failure to State Claim upon which Relief can be Granted ....................................... 7

Third Party Conduct ............................................................................................... 8

Waiver .................................................................................................................... 9

Failure to Mitigate ................................................................................................ 10

Unclean Hands ..................................................................................................... 10

Unjust Enrichment ............................................................................................... 11

Failure to Exhaust Administrative Remedies ....................................................... 12

Usury ................................................................................................................... 12

PRAYER FOR RELIEF ....................................................................................... 13

COUNTERCLAIM .............................................................................................. 14

PARTIES, JURISIDICTION AND VENUE ......................................................... 14

BACKGROUND ................................................................................................. 15

BREACH OF EXPRESS CONTRACT ................................................................ 16

BREACH OF ORAL CONTRACT ...................................................................... 17

FRAUDULENT INDUCEMENT TO CONTRACT ............................................. 18

VIOLATION OF THE TELECOMMUNICATION ACT – SLAMMING ............. 19

TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS ................ 20

PRAYER FOR RELIEF ....................................................................................... 21

i

1

2

<u>TABLE OF AUTHORITIES</u>

3

**Cases**

Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149, 152 (1908) ...................... 3

Pessler v. Metcalf, 2007 WL 1696996, 9 .......................................................................... 8

Posern v. Prudential Securities, Inc., Not Reported in F.Supp.2d, 2004 WL 771399

    (N.D.Cal.) ................................................................................................................... 11

**Statutes**

28 U.S.C. § 1331 ................................................................................................................ 4

29 U.S.C. § 1391 ................................................................................................................ 5

29 U.S.C. § 1391(a) ........................................................................................................... 5

47 CFR 64.1110 ............................................................................................................... 16

47 U.S.C § 258 ................................................................................................................. 20

47 U.S.C § 258 ................................................................................................................. 20

47 U.S.C. § 201 et. seq. ..................................................................................................... 9

47 U.S.C. § 258 .................................................................................................... 12, 16, 21

47 U.S.C. §§ 201 et seq. .................................................................................................... 4

AT&T Tariff F.C.C. No. 30 ............................................................................................... 6

AT&T Tariff F.C.C. No.1 .................................................................................................. 6

FRCP § 4 ............................................................................................................................ 7

FRCP § 12 .......................................................................................................................... 7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

## ANSWER

Pursuant to Federal Rule of Civil Procedure 12(a)(1), Defendant Dataway, Inc. (hereinafter "Dataway" or "Defendant") hereby answers the unverified Complaint of Plaintiff AT&T Corporation (hereinafter "AT&T") as follows:

## Parties, Jurisdiction and Venue

1.      In answer to paragraph one of the Complaint, Defendant admits that Plaintiff AT&T is a New York corporation, doing business in the State of California.

2.      Defendant Dataway admits that Dataway is a California corporation with its principal place of business in San Francisco, California.

3.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the complaint, and therefore denies such allegation. Furthermore, Dataway denies any alleged joint responsibility with unknown Defendants.

4.      Defendant Dataway denies all of the allegations of paragraph 4. The unknown Defendants were not agents or employees of Dataway, were not acting within the course and scope of the agency, and did not act with Dataway's express or tacit permission or consent.

### Lack of Jurisdiction over the Subject Matter

5.      In answer to paragraph 5 Defendant denies that this court has subject matter jurisdiction. Federal Courts have limited subject matter jurisdiction, only have the authority to hear a claim if the parties are diverse or if the issue at bar deals with a federal question within the meaning of 28 U.S.C. § 1331. Diversity, even though it was not claimed by the defendant, would not provide for proper subject matter jurisdiction because AT&T is doing business in California and the matter in controversy does not meet the minimum threshold of $ 75,000. A federal question

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM                    CASE NO. C07-02440 MMC

1    pursuant to 28 U.S.C. § 1331 is not presented either, because any potential rights

2    arising out of 47 U.S.C. §§ 201 et seq., as argued by Plaintiff, do not implicate federal

3    issues on laws.  In order to establish federal question jurisdiction that is not original

4    jurisdiction, a right or immunity created by the law of the United States must be an

5    essential element of the plaintiff's cause of action. According to the well-pleaded

6    complaint rule the Plaintiff must allege the federal question in his complaint, which

7    means that either federal law creates the cause of action for the plaintiff or the

8    plaintiff's complaint requires resolution of a substantial question of federal law. An

9    anticipated federal question defense, however, will not raise federal question subject

10   matter jurisdiction. <u>Louisville & Nashville Railroad Co. v. Mottley</u>, 211 U.S. 149,

11   152 (1908). Allegedly, the controversy-crucial sections concern a utility company's

12   ability to, through interstate commerce, collect for its services. However, this is not

13   an issue here. The issue is whether the client owes money, and if so how much. Thus,

14   this is a collection case. The law, however, does not allow collections to be heard

15   exclusively in Federal Court. It does allow for damages and remedies to be heard in

16   Federal Court as to rights and services and actions through interstate commerce

17   activity contained in a statute, but such is not the matter before this court. Therefore,

18   AT&T has failed to demonstrate any federal subject matter jurisdiction.

19                              **Improper Venue**

20        6.      Defendant Dataway denies that this court is the proper court for this

21   action pursuant to Title 29 U.S.C. § 1391(a)(2). Section 1391(a) does not have a

22   subdivision 2 and, thus, cannot establish what appears to be venue. Besides, 29

23   U.S.C. § 1391 is a statute dealing with labor, governing the methods for computing

24   withdrawal liability. This does not establish this court as a proper court for trail. For

25   these two reasons, 29 U.S.C. § 1391 does not support Plaintiff's venue claim.

26

27

28
                                      3

**First Claim for Relief**

7.    In response to paragraph 7 of the complaint Defendant Dataway refers to and incorporates its responses set forth above to each and every allegation in paragraphs 1 through 6 as if fully set forth herein.

8.    Defendant Dataway admits the allegations set forth in paragraph 8 of the complaint. Dataway consolidated all its telecommunication services with SBC/AT&T.

9.    In response to paragraph 9 Defendant Dataway admits that the disputed amount was included on invoices presented to Dataway and that, generally, payments are due upon presentation of the invoices. Dataway admits, that it was billed for charges in the amount of $ 17,856.30 when its system was compromised. Defendant Dataway, however, denies based on lack of information or knowledge if the payment was due pursuant to AT&T Tariff F.C.C. No.1, Section 2.5 or, alternatively, AT&T Tariff F.C.C. No. 30.

10.    Defendant Dataway admits that it neither paid the whole nor any part of the amount due although demand therefore has been made, but otherwise denies that it owed the sum of $ 11,534.67 to Plaintiff together with prejudgment interest of $ 5.69 per day deployed since September 25, 2006, pursuant to AT&T Tariff F.C.C. No.1, Section 2.5.4.

**Second Claim for Relief**

11.    Defendant Dataway refers to and incorporates its responses set forth above to each and every allegation in paragraphs 1 through 10 as if fully set forth herein.

12.    In response to paragraph twelve, Defendant Dataway denies that it has become indebted to Plaintiff. The services were not rendered to Defendant Dataway at their special instance and request, and Defendant Dataway never agreed to pay the

4

sum of $ 11,534.67 for the services. Furthermore, Defendant Dataway disputes that this sum is the reasonable value of the services.

13.    Defendant Dataway admits that it did not pay all or any part of the disputed amount of $ 11,534.67 together with prejudgment interest from September 25, 2006.

## AFFIRMATIVE DEFENSES
### First Defense
### Insufficiency of Process

14.    Dataway alleges that Plaintiff's process was insufficient.

15.    Pursuant to Fed. R. Civ. P. § 4 the Plaintiff is responsible for service of summons and complaint. Thereby, the summons has to be proper according to Fed. R. Civ. P. § 4(a). The documents that were dropped off on the premises of Dataway, however, were not complete. Missing was the reassignment order and the new case management schedule.

16.    This incompleteness of the documents served renders the process insufficient.

### Second Defense
### Insufficiency of Service of Process

17.    Defendant Dataway alleges that the mode of service of process was insufficient pursuant to Fed. R. Civ. P. § 12(b)(5).

18.    According to Fed. R. Civ. P. § 4(h)(1) the summons upon a corporation in a judicial district of the United States are served "…in the manner prescribed for individuals by subdivision (e)(1), or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any

other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant… ."

19.    The plaintiff alleges that Defendant was, at first, served in person, and then, secondly, by service upon the company's agent for service, both on July 10, 2007. However, personal service upon Dataway is not possible because no officer was present, and Simon Lewis, Dataway's agent for service, was, at first, out of the country and then out of the state and did not return to Dataway's office until July 16, 2007.

20.    The process server, in fact, entered the company's premises, and when all employees refused to accept the documents, he merely placed the summons and the complaint on the counter.

21.    Furthermore, this alleged service of process did not take place on July 10, 2007  but on July 11, 2007. See Paragraph 11, Declaration of Simon Lewis attached hereto as Exhibit C.

22.    The court docket documents No. 9 and 10 (palpably by mistake titled No. 11) also support this unsoundness in regard of the date and kind of service. Both documents are dated July 12, even though the second proof of service is supposed to be a subsequent correction of a retroactively produced proof of service. Yet, the actually rendered service cannot be changed subsequently. Rather, the amendment was merely a formal correction.

23.    All this together impairs the document's authenticity and supports Defendant's claim that Dataway was not served properly.

6

**Third Defense**

**Failure to State Claim upon which Relief can be Granted**

24.     Defendant alleges that AT&T failed to state a claim upon which relief can be granted.

25.     Plaintiff fails to state facts that could support the elements of a claim under 47 U.S.C. § 201 et. seq as set forth in count one.

26.     The claimed sections of 47 U.S.C. concern a utility company's liability to establish tariffs that are just and reasonable. According to these statutes, long-distance carriers are required to file a "tariff" that contains their rates, terms and conditions. The purpose of the Communications Act provisions creating a cause of action for recovery of the damages for which a common carrier may be liable under the provisions of the Act's wire and radio communications chapter is to allow persons injured by violations of the Act's "just and reasonable" section to bring actions for damages.

27.     Thus, the overall application allows for the institution of private civil causes of actions for violations of the Telecommunications Act for any act of an interstate carrier that may be "unlawful." However, the Communications Act does not allow for claims of a service provider against the user and does not govern other issues, such as contract formation and breach of contract, that arise in a detariffed environment.

28.     Thus, the alleged sections do not provide for a cause of action upon which relief can be granted.

29.     Plaintiff also fails to state facts which could establish the elements of a quantum meruit claim, AT&T's second count.

30.     Quantum Meruit is imposed to avoid the unjust enrichment of one party at the expense of another. This doctrine by which "…the law implies a promise

1  to pay for services performed under circumstances disclosing that they were not

2  gratuitously rendered." <u>Pessler v. Metcalf</u>, 2007 WL 1696996, 9. "To recover in

3  Quantum Meruit, a party need not prove the existence of a contract, but it must show

4  the circumstances were such that 'the services were rendered under some

5  understanding or expectation of both parties that compensation therefore was to be

6  made.'" <u>Pessler</u>, at 9. In the case at hand, there was no understanding of any kind that

7  compensation was to be made, in particular, because Dataway did not receive any

8  services. It is established that an unauthorized intervening third party used AT&T's

9  services by accessing Dataway's voice mail system. Defendant also reported these

10  unauthorized acts to the California Public Utility Commission (C.P.U.C.) and the

11  Federal Communication Commission (F.C.C.) asserting that an unauthorized party

12  herein referred to as a "hacker" accessed the "Dataway" account and misused it. Such

13  criminal conduct by a third party does not trigger the doctrine of Quantum Meruit as

14  alleged by Plaintiff.  Quantum Meruit rather would require that a recipient use

15  services that were obviously not free and, therefore, recipient should have expected to

16  pay for such services and, in fact, is obliged to do so.

17      31.      Thus, Plaintiff fails to state facts that could support the elements of a

18  Quantum Meruit claim.

19

20                            **Fourth Defense**

21                           **Third Party Conduct**

22      32.      Defendant alleges that some or all of AT&T's claims are barred

23  because Defendant Dataway's actions were not, or rather Dataway did not carry out

24  any actions that were the actual or proximate cause of any damages to AT&T.

25      33.      Dataway neither carried out, nor did it authorize calls through AT&T's

26  Legacy T network to the Philippines on July 24, 2006. In fact, Dataway never

27

28

8

subscribed to this AT&T service. Merely the calls routing number pointed to Dataway's voice mail system on an existing Dataway account but Defendant did not place the disputed phone calls. Rather, the calls were made by an unauthorized, unknown intervening third party actor, hackers. This constitutes intervening criminal activity that was carried out by an unknown third party.

34.    Therefore, Dataway cannot be held liable for the alleged claims. AT&T's claims are barred for this reason.

**Fifth Defense**

**Waiver**

35.    Defendant alleges that some or all of AT&T's claims are barred by the doctrine of waiver.

36.    AT&T promised Dataway that it would waive the charges for the fraudulent calls once Dataway disputed them because such hacker incidents recently occurred frequently.

37.    Dataway reasonably relied on this promise, submitted the required request and multiple correspondence with different AT&T subsidiaries and departments.

38.    Despite this agreement, AT&T sent a Past Due Reminder stating that the balance was still open and, shortly after, a notice of disconnect for the actual Dataway account.

39.    The waiver agreement and Defendant's reliance thereon, bars some or all of Plaintiff's claims.

9

**Sixth Defense**

**Failure to Mitigate**

40.     Plaintiff's claims are barred because AT&T failed to prevent the damages even though it was contractually obliged to do so.

41.     Dataway consolidated all its telecommunication services with SBC/AT&T which in turn set up a slamming protection, a means to prevent a switching of telecommunication services. The F.C.C. also imposed rules implementing 47 U.S.C. § 258 to combat slamming, requiring verification on carrier freezes in which the local company agrees not to change the customer's service without direct instructions from the customer.

42.     Despite this security means, the hackers were able to access Dataway's voice mail system to use AT&T's Legacy T network, a service Dataway never subscribed to, and an account that was never authorized by Defendant.

43.     Thus, Plaintiff's claims are barred because AT&T did not mitigate its alleged damages.

**Seventh Defense**

**Unclean Hands**

44.     Defendant alleges that some or all of Plaintiff's claims are barred by the doctrine of unclean hands.

45.     AT&T was contractually and statutorily obliged to set up protections against fraudulent access of client accounts by third parties and against slamming. It entered into an Anti-Slamming Agreement with Dataway and was bound by the F.C.C. Anti-Slamming Rules that prohibit customer's service changes without direct instructions from the customer.

46.     Due to AT&T's failure to fulfill its contractual and statutory obligations, the hackers were able to access and misuse Dataway's voice mail system. This criminal conduct created the outrageous charges Plaintiff claims now.

47.     Therefore, all or some of Plaintiff's claims are barred because plaintiff caused or contributed to the damages claimed in the Complaint.

**Eighth Defense**

**Unjust Enrichment**

48.     Defendant alleges that some or all of AT&T's claims for payment are barred by the doctrine of unjust enrichment.

49.     Even if the disputed phone calls were to be attributed to Dataway even though they were not authorized by Dataway, Plaintiff would be unjustly enriched if Dataway should be forced to pay the claimed amount. The elements that must be established to prove unjust enrichment are (1) receipt of a benefit and (2) unjustified retention of that benefit at another's expense. Posern v. Prudential Securities, Inc., Not Reported in F.Supp.2d, 2004 WL 771399 (N.D.Cal.). If the disputed calls were charged to "Dataway's" number and, thus, were made under the existing SBC/AT&T contract, Defendant, at most, should be charged the rate determined in the contract. According to the contractual long distance plan rate, calls to the Philippines would cost $ 0.30 cents per minute. The arbitrary $5.67 rate used to calculate the unauthorized calls, however, is 1,920% higher than Defendant contracted for had the calls been authorized. At the contracted rates the cost of these 1,628 minutes of unauthorized calls would be merely $ 488.80, plus corresponding related connectivity charges and taxes. Thus, any demand to pay a sum above the contractual amount would constitute a breach of contract and further facilitate the unjust enrichment of plaintiff.

11

50.     Additionally, under the above analysis, any payment by defendant of plaintiff's previously proposed settlement offer would also constitute unjust enrichment because at best, the settlement offer was a 50% discount on the unconscionable rate used to calculate Plaintiff's demands for payment.

51.     Thus, any payment by Defendant would unjustly enrich Plaintiff.

## Ninth Defense

### Failure to Exhaust Administrative Remedies

52.     Plaintiff failed to pursue the available administrative avenues.

53.     To resolve the dispute, Defendant Dataway filed a complaint with the F.C.C. and also informed the C.P.U.C., the Utility Consumers' Action Network (U.C.A.N.) and The Utility Reform Network (T.U.R.N.). AT&T was served with this complaint by the F.C.C. on January 17, 2007. Also in January, Dataway was notified that its case was referred to C.P.U.C. because the F.C.C. was disqualified from further involvement due to AT&T's unacceptable settlement offer. Defendant's following request to opposing counsel for extension of time was refused and, instead, a Complaint for Relief was filed by AT&T with this court.

54.     Opposing counsel's refusal cut off Dataway efforts and terminated all on-going administrative proceedings. Thus, Plaintiff deliberately failed to exhaust all available administrative remedies. This conduct bars Plaintiff's actions.

## Tenth Defense

### Usury

55.     Defendant alleges that some or all of AT&T's claims are barred by the doctrine of usury.

56.     The rate of interest upon the loan or forbearance of any money, goods, or things in action, or on accounts after demand, shall be 10 percent per annum pursuant to Article 15 California Constitution.

57.     Additionally to the charges for the disputed calls AT&T claims a prejudgment interest of $ 5.69 per day from September 25, 2006. This equals a rate of 18% per annum. This rate clearly exceeds current usury laws.

58.     Thus, some or all of Plaintiff's claims are barred by the usury doctrine.

## **PRAYER FOR RELIEF**

THEREFORE, this answering Defendant prays as follows:

1.   That Plaintiff take nothing by its Complaint herein and that the Complaint be dismissed in its entirety with prejudice;

2.   That in the event Defendant is held liable, Plaintiff can only claim a sum computed on the basis of the contractually determined rate for Defendant's authorized account;

3.   For restitution and disgorgement of all ill-gotten gains unjustly obtained and retained by Defendant through the acts complained of here;

4.   That Defendant be awarded actual attorney fees incurred herein;

5.   That the Court award Dataway all costs and expenses it incurs in this action; and

6.   That the Court award Dataway such other and further relief that it deems just and proper.

## **COUNTERCLAIM**

In support of its Counterclaim against AT&T Corp., Dataway alleges as follows:

### **PARTIES, JURISIDICTION AND VENUE**

1.    At all times herein mentioned, Counterclaimant Dataway (hereinafter "Dataway") was, and is, a corporation organized and existing under the laws of the State of California with its principal place of business in San Francisco, California.

2.    AT&T is a New York corporation, does business in the State of California and maintains a systematic and continuous commercial relationship with its customers in the State of California.

3.    One or more other parties unknown to Counterclaimant (hereinafter "DOES 1-10" or "hackers") have acted either alone, or in concert with one another, without the Counterclaimant's knowledge, permission or express or tacit consent to commit the illegal acts alleged in Plaintiff's Complaint against Dataway.

4.    This action arises out of, among other things, AT&T's breach of its telecommunication service contract with Dataway which is a state contract claim. There is no federal question and no diversity of the parties presented.

5.    Neither does the action arising out of the violation of the slamming prohibition present a federal question. The F.C.C. slamming rules implement the Federal Telecommunication Act (47 U.S.C. § 258) and give each state the option to act as the adjudicator of slamming complaints. According to 47 CFR 64.1110 California has opted to do this. Hence, this court does not have subject matter jurisdiction. Rather, this action should be tried in State Court.

6.    Dataway's principal place of business is in San Francisco, and AT&T engaged and still engages in commercial transactions within the County of San

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM                    CASE NO. C07-02440 MMC

1  Francisco. Thus, venue is proper in San Francisco County, in the Superior Court of

2  the State of California.

3

4  **BACKGROUND**

5      7.       In January 2003 Dataway consolidated all its business

6  telecommunication services with SBC/AT&T which in turn set up a slamming

7  protection, a means to prevent the switching of telecommunication services in

8  accordance with the Telecommunication Act and the F.C.C. Anti-Slamming

9  Regulations. See Letter of Agency and Carrier Slamming Protection Form attached

10  hereto as Exhibit A.

11      8.       On July 24, 2006 fraudulent calls were made through Dataway's

12  existing voice mail system using AT&T's Legacy T network, a service Dataway

13  never subscribed to and an account that was never authorized by the Defendant.

14      9.       At the end of September 2006, Dataway received a bill from AT&T

15  for $ 11,534.67 for the unauthorized calls. See Service Bill attached hereto as Exhibit

16  B.

17      10.     Agents and Employees of AT&T found that only the unauthorized

18  calls' routing number pointed to Dataway, but that Defendant did not execute the

19  calls.

20      11.     The parties conferred, and AT&T assured Dataway that AT&T would

21  waive the charges for the fraudulent calls once Dataway disputed them, because this

22  pattern of illegal usage recently had occurred frequently. See Paragraph 6,

23  Declaration of Simon Lewis attached hereto as Exhibit C.

24      12.     Despite this agreement, a subsequent request submitted by Dataway

25  and multiple additional correspondence with AT&T, Dataway received a Past Due

26

27

28

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM          CASE NO. C07-02440 MMC

1    Reminder that the balance was still open and, shortly after, a Notice of Disconnect for

2    Dataway's account. See Notice of Disconnect attached hereto as Exhibit D.

3        13.    To resolve the dispute Defendant again contacted and informed AT&T

4    as well as AT&T's local managers, as well as four administrative authorities, among

5    them the F.C.C. and C.P.U.C. Defendant also replied to a form received from the

6    AT&T Fraud Resolution Group with the requested documents, a copy of

7    unauthorized account statement and a statement of dispute of account. See Form sent

8    to the Fraud Resolution Group attached hereto as Exhibit E.

9        14.    These endeavors merely resulted in a suspension of the disconnect

10   notice and an unacceptable offer to discount the total balance by 35% (November

11   2006) and then 50% (December 2006). Both were refused by Defendant who

12   subsequently responded by filing an informal complaint with the F.C.C.. AT&T was

13   served by the F.C.C. with this informal complaint on January 17, 2007. Also in

14   January, Dataway was notified, that its case had been referred to C.P.U.C. and, in a

15   phone conference on February 1, 2007, an F.C.C. agent explained that the F.C.C.

16   would be disqualified from further involvement due to AT&T's offer to settle.

17

18                           **FIRST CAUSE OF ACTION**

19                         **BREACH OF EXPRESS CONTRACT**

20       15.    Dataway hereby incorporates by reference each and every allegation

21   set forth above, as though fully set forth herein.

22       16.    The Letter of Agency and the Carrier Slamming Protection constitute

23   legally binding, enforceable and reasonable contracts between SBC, and its successor

24   AT&T, and Dataway. These contemplate an implied warranty to impose security

25   means restricting access by third parties.

26

27

28

---

                                    16

1    17.    Dataway has fully performed all of the obligations it was required to

2    perform. It made and still makes payments covering AT&T's charges for Dataway's

3    authorized account usage.

4    18.    On July 24, 2006 hacker illegally accessed the voice mail system

5    Dataway maintained with AT&T using AT&T's Legacy T network. In August 2006,

6    AT&T billed Dataway for the five calls made by these hackers to the Philippines

7    from another, external account but with Dataway's routing number. AT&T billed

8    these calls at a rate of $ 5.78 per minute. According to the contractual long distance

9    plan rate, calls to the Philippines should cost $ 0.30 cents per minute. The arbitrary

10   $5.67 rate used to calculate the unauthorized calls, however, is 1,920% higher than

11   Defendant contracted for were the calls authorized. Furthermore, on November 3,

12   2006, AT&T sent a Disconnect Notice to Dataway, threatening Dataway to

13   disconnect its authorized account.

14   19.    AT&T's conduct was arbitrary and unreasonable.

15

16   **SECOND CAUSE OF ACTION**

17   **BREACH OF ORAL CONTRACT**

18   20.    Dataway hereby incorporates by reference each and every allegation

19   set forth above, as though fully set forth herein.

20   21.    After Dataway contacted AT&T's local managers on September 20,

21   2006, and requested the removal of the disputed charges from its accounts, AT&T

22   represented to Dataway that AT&T would waive its charges for the fraudulent calls

23   once Dataway formally disputed them.

24   22.    On November 10, 2006, Dataway submitted a written denial and sent a

25   duly completed form to AT&T's Fraud Resolution Group with copies to AT&T.

26

27

28

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM                                              CASE NO. C07-02440 MMC

1    23.    Even though the threatened disconnection was suspended and Dataway

2    was, once again, reassured that AT&T would drop all charges, Dataway was notified

3    in January 2007, that AT&T referred the dispute to an attorney for collection and

4    would judicially enforce its alleged claims.

5

6                              **THIRD CAUSE OF ACTION**

7                      **FRAUDULENT INDUCEMENT TO CONTRACT**

8    24.    Dataway hereby incorporates by reference each and every allegation

9    set forth above, as though fully set forth herein.

10    25.    SBC/AT&T confirmed in its Carrier Slamming Protection Agreement

11    that a switching of carriers would be impermissible and that Dataway would be

12    responsible only for charges for which it had contracted. SBC/AT&T included this

13    protection in accordance with 47 U.S.C § 258(a) and its implementing F.C.C.

14    Regulations preventing telecommunication carriers from making unauthorized

15    changes to subscribers' telephone service.

16    26.    The Anti-Slamming Agreement was substantial inducement for

17    Dataway to enter into the service contract with SBC/AT&T, to consolidate all its

18    telecommunication services with SBC/AT&T.

19    27.    Based on SBC's representations concerning Dataway's

20    telecommunication service, Dataway entered into the contract which presents the

21    basis of this action.

22    28.    However, Dataway is informed and believes and, based on such

23    information and belief, alleges that SBC/AT&T knew or should have known at all

24    times relevant to this dispute that such a slamming device was not an appropriate

25    means, in particular with regard to the imminent acquisition of SBC by AT&T. The

26    narrow wording of the Anti-Slamming Agreement would be rendered useless if not

27

28

applied to AT&T's spread out corporate structure. This supports that SBC/AT&T knew and did not intend to protect Dataway from switching between different services as required by 47 U.S.C. § 258(a). Nevertheless, AT&T assumed all of SBC's liabilities when it acquired SBC.

29.    At all times relevant to this Counterclaim Dataway relied Plaintiffs express and/or agreement as contracted for in the Anti-Slamming Agreement. In addition Dataway built on Counterdefendant's representations that Dataway would not be charged anything but its contractual rate for the service it authorized, and Dataway relied on AT&T's faithfully assume SBC's business and obligations.

30.    Dataway has been, and will continue to be irreparably injured by AT&T's breach of the Slamming Agreement.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE TELECOMMUNICATION ACT – SLAMMING

31.    Dataway hereby incorporates by reference each and every allegation set forth above, as though fully set forth herein.

32.    Due a lack of a protection against unauthorized calls, hackers were able to access Dataway's voice mail system on July 24, 2007. According to the strict liability standard imposed by the anti-slamming rules AT&T is liable for any charges from the resulting unauthorized calls.

33.    In violation of 47 U.S.C. § 258(a) AT&T did not provide adequate means for protecting Dataway from these calls that were made to the Philippines using a service Dataway never authorized nor subscribed for, namely the Legacy T Network.

34.    Dataway never gave permission for the utilization of this service and, in fact, did not have any knowledge of this incident until it received AT&T's bill.

35.     In this bill AT&T's claimed charges calculated in accordance with the Legacy T Network Tariff, a rate that Dataway had not contracted for and that was not part of its tariff.

36.     AT&T failed to notify its customer Dataway of this service change and did not undertake any resolution or  verification procedures as prescribed by the F.C.C.

## FIFTH CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

37.     Dataway hereby incorporates by reference each and every allegation set forth above, as though fully set forth herein.

38.     At all times relevant to this complaint, Dataway used AT&T as its only business telecommunication carrier.

39.     The hackers purposefully chose a voice mail system set up with AT&T.

40.     This system was accessed in an unauthorized manner with the intention to misuse it for the hackers' unlawful purpose. This conduct must be attributed to AT&T because AT&T had superior authority and control over the account Dataway maintained with it, yet recklessly did not provide sufficient security means to impede or prevent the hackers from accessing Dataway's voice mail system. Thus, it is vicariously liable for the conduct of the alleged wrongdoers.

41.     The hackers' conduct led to abnormal and excessive charges that brought about to a dispute between the contractual parties and to this action.

42.     Dataway has been, and will continue to be irreparably injured by AT&T's reckless impairment of its contractual relationship, respectively its failure to prevent fraudulent use of its services.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant Dataway prays for following relief:

     A.    Awarding Plaintiff all compensatory and non-compensatory damages according to proof at trial with interest at the highest legal rate;

     B.    Awarding punitive damages to Plaintiff in an amount determined by the Court to be fair and reasonable for Counterdefendant's willful and deliberate actions complained of herein, and to deter AT&T from making unauthorized changes to subscribers' telephone service in the future.

     C.    Awarding Plaintiff its costs, attorney's fees and expenses in prosecuting this action.

     D.    Awarding Plaintiff such other and further relief granted as the Court deems just and proper.


DATED: October 17, 2007

                       Respectfully Submitted,

                       MATLOCK LAW GROUP


                       By:   _____

                           Anne-Leith W. Matlock

                       Attorney for Dataway, Inc.

21