Timothy Carl Aires, Esq. (138169)
AIRES LAW FIRM
180 Newport Center Drive, Suite 260
Newport Beach, California 92660
(949) 718-2020
(949) 718-2021 FAX

Attorneys for Plaintiff and Counterdefendant,
AT&T CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AT&T CORPORATION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>DATAWAY INC. and dba DATAWAY DESIGNS,<br><br>　　　　Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. C07-02440 MMC<br><br>REPLY IN SUPPORT OF MOTION OF COUNTERDEFENDANT AT&T CORPORATION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED<br><br>[F.R.C.P., Rule 12(b)(6)]<br><br>DATE:　　January 8, 2008<br>TIME:　　2:00 p.m.<br>CTRM:　　E |

Counterdefendant AT&T Corporation, by and through its counsel of record, hereby submits its reply in support of its motion to dismiss the first, second, third, and fifth claims for relief of the Counterclaim of Counterclaimant Dataway Inc., as follows:

///

///

///

///

///

///

# REPLY MEMORANDUM

1. **THE FILED RATE DOCTRINE REMAINS VIABLE WITH RESPECT TO AT&T TARIFF F.C.C. NO. 30.**

The telecommunications industry is regulated by Chapter 5 of the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996, codified at 47 U.S.C. § 151 et seq. (Ton Services v. Qwest Corp. (10th Cir. 2007) 493 F.3d 1225, 1229.)[1]

The federal filed rate doctrine, codified at 47 U.S.C. § 203, is a central tenet of telecommunications law. (See MCI Telecomms. Corp. v. Am. Tel. & Tel. Co. (1994) 512 U.S. 218, 229-230.) The doctrine generally requires that providers of services in regulated industries, such as the communications and shipping industries, adhere to tariffs approved by and filed with the regulatory agency overseeing the industry. (Ton Services v. Qwest Corp. (10th Cir. 2007) 493 F.3d 1225, 1236.) In the telecommunications context, the doctrine provides that "once a carrier's tariff is approved by the FCC [or an appropriate state agency], the terms of the federal tariff are considered to be the law and therefore conclusively and exclusively enumerate the rights and liabilities as between the carrier and the customer." (Ton Services v. Qwest Corp. (10th Cir. 2007) 493 F.3d 1225, 1236.) In order to prevent price discrimination and preserve agencies' exclusive role in ratemaking, courts have no power to adjudicate claims which would "invalidate, alter, or add to the terms of the filed tariff." (Ton Services v. Qwest Corp. (10th Cir. 2007) 493 F.3d 1225, 1236.)

---

[1] The federal courts have subject matter jurisdiction under 47 U.S.C. §201 et seq. over matters pertaining to the enforcement and collection of telecommunication tariffs. (28 U.S.C. §1337(a); Western Union Intern. v. Data Development (11th Cir. 1995) 41 F.3d 1494, 1496; American Telephone & T. Co. v. Florida-Texas Frgt. (S.D.FL. 1973) 357 F. Supp. 977, 978 (Plaintiff, a common carrier engaged in interstate communication by wire, brought suit against defendant, an interstate freight forwarder, upon an account stated for private line, network telephone services provided to defendant. Exercise of jurisdiction by district court proper.).] This Court has subject matter jurisdiction.

REPLY RE: MOTION TO DISMISS
2

# REPLY MEMORANDUM

1. **THE FILED RATE DOCTRINE REMAINS VIABLE WITH RESPECT TO AT&T TARIFF F.C.C. NO. 30.**

The telecommunications industry is regulated by Chapter 5 of the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996, codified at 47 U.S.C. § 151 et seq. (Ton Services v. Qwest Corp. (10th Cir. 2007) 493 F.3d 1225, 1229.)[1]

The federal filed rate doctrine, codified at 47 U.S.C. § 203, is a central tenet of telecommunications law. (See MCI Telecomms. Corp. v. Am. Tel. & Tel. Co. (1994) 512 U.S. 218, 229-230.) The doctrine generally requires that providers of services in regulated industries, such as the communications and shipping industries, adhere to tariffs approved by and filed with the regulatory agency overseeing the industry. (Ton Services v. Qwest Corp. (10th Cir. 2007) 493 F.3d 1225, 1236.) In the telecommunications context, the doctrine provides that "once a carrier's tariff is approved by the FCC [or an appropriate state agency], the terms of the federal tariff are considered to be the law and therefore conclusively and exclusively enumerate the rights and liabilities as between the carrier and the customer." (Ton Services v. Qwest Corp. (10th Cir. 2007) 493 F.3d 1225, 1236.) In order to prevent price discrimination and preserve agencies' exclusive role in ratemaking, courts have no power to adjudicate claims which would "invalidate, alter, or add to the terms of the filed tariff." (Ton Services v. Qwest Corp. (10th Cir. 2007) 493 F.3d 1225, 1236.)

---

[1] The federal courts have subject matter jurisdiction under 47 U.S.C. §201 et seq. over matters pertaining to the enforcement and collection of telecommunication tariffs. (28 U.S.C. §1337(a); Western Union Intern. v. Data Development (11th Cir. 1995) 41 F.3d 1494, 1496; American Telephone & T. Co. v. Florida-Texas Frgt. (S.D.FL. 1973) 357 F. Supp. 977, 978 (Plaintiff, a common carrier engaged in interstate communication by wire, brought suit against defendant, an interstate freight forwarder, upon an account stated for private line, network telephone services provided to defendant. Exercise of jurisdiction by district court proper.).] This Court has subject matter jurisdiction.

AT&T Tariff F.C.C. No. 30 is a tariff which still is required to be filed with the FCC notwithstanding the 1996 Telecommunications Act. Therefore, the filed rate doctrine has continuing applicability to this action through AT&T Tariff F.C.C. No. 30. Regardless of whether service is billed pursuant to tariff or contract, AT&T is still bound by the non-discrimination provisions of the Telecommunications Act. Not charging certain customers for certain calls would in effect be the same as giving those customers lower rates -- and based on the case law, there is no reason not to hold the customer – as opposed to AT&T – responsible for charges incurred from calls placed over a switch that the customer – not AT&T – controls.

Because the filed rate doctrine remains viable as to AT&T Tariff F.C.C. No. 30 after enactment of the 1996 Telecommunications Act, state law claims are preempted. As such, the motion of Counterdefendant AT&T Corporation to dismiss the first, second, third, and fifth claims for relief of the Counterclaim of Counterclaimant Dataway Inc. must be granted without leave to amend.

2.  <u>A TELEPHONE CUSTOMER IS LIABLE FOR *ALL* LONG-DISTANCE CALLS MADE FROM ITS ON-PREMISES SYSTEM, REGARDLESS OF WHETHER SUCH CALLS WERE AUTHORIZED OR FRAUDULENT.</u>

Even if a carrier should not be permitted to reap the benefits of fraud or other wrongful acts committed by the carrier, that type of fraud is different from toll fraud. In the case of toll fraud, it is an unknown third party – not AT&T – who has committed a wrongful act. Here, a third party "hacker" – not AT&T – is alleged to be the culprit. (Counterclaim, ¶¶3, 18, 32.)

///
///
///
///
///

A telephone customer is liable for *all* long-distance calls made from its on-premises system[2], regardless of whether such calls were authorized or fraudulent. (AT & T Corp. v. Community Health Group (S.D.Cal. 1995) 931 F. Supp. 719, 723 [Emphasis in original.].) The presence of a remote access mechanism, including an off premises computer, does not affect the "origination" determination; calls still "originate" from a customer's system even if access to the system was gained from a remote location. (AT & T Corp. v. Community Health Group (S.D.Cal. 1995) 931 F. Supp. 719, 723.)

AT&T is not in a better position than the customer to detect and stop toll fraud. AT&T has no way of knowing whether calls placed from the customer's switch are authorized. AT&T must complete all such calls. At best, AT&T may detect a suspicious calling pattern and alert the customer to it – but the customer must still determine whether the calls are legitimate or should be blocked.

In AT & T Corp. v. Community Health Group (S.D.Cal. 1995) 931 F. Supp. 719, the District Court noted:

> ... Defendants here do not allege any such improper action by AT & T in the provision of its long-distance services. [¶] Defendants merely argue that AT & T has sophisticated equipment that can track suspicious phone activity, and that therefore AT & T should have notified Defendants earlier regarding the instant fraud. SYNC's expert witness states that the fraudulent calls began on September 30, 1992, and continued through October 6, 1992, on which date AT & T

---

[2] A PBX system is "a customer-provided private switching system used to facilitate the transmission of telephone calls to, from, and within a place of business. It is equipment added to the public telephone network by a customer ... the use of which requires neither the knowledge nor approval of AT & T." (American Tel. & Telegraph Co. v. Jiffy Lube Int'l, Inc. (D. Md. 1993) 813 F. Supp. 1164, 1165, fn. 1.)

notified SYNC of the suspicious calling pattern it had discovered. There was thus a seven-day period of fraudulent calling before AT & T gave its warning and SYNC requested a line-blocking service. The Court finds not only that Defendants' authority is in opposite, but also that Defendants' "duty to warn" arguments have been considered and rejected in FCC cases with fact patterns similar to the instant case.

(AT & T Corp. v. Community Health Group (S.D.Cal. 1995) 931 F. Supp. 719, 724.)

The cases cited by Counterclaimant Dataway Inc. are inapposite. As such, the motion of Counterdefendant AT&T Corporation to dismiss the first, second, third, and fifth claims for relief of the Counterclaim of Counterclaimant Dataway Inc. must be granted without leave to amend.

3.  CONCLUSION

For the foregoing reasons, as well as those stated in the moving papers, it is respectfully requested that the motion of Counterdefendant AT&T Corporation to dismiss the first, second, third, and fifth claims for relief of the Counterclaim of Counterclaimant Dataway Inc. be granted without leave to amend.

DATED: December 21, 2007        AIRES LAW FIRM

By: _____
    Timothy Carl Aires, Esq.
    Attorney for Plaintiff,
    AT&T CORPORATION

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, Timothy Carl Aires, am employed in the aforesaid county, State of California; I am over the age of eighteen years and not a party to the within action; my business address is: 180 Newport Center Drive, Suite 260, Newport Beach, California 92660.

On December 21, 2007, I served the document entitled: *Reply in Support of Motion of Counterdefendant At&t Corporation to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted* on all interested parties in this action by placing a true and correct copy thereof, enclosed in a sealed envelope, addressed as follows:

Anne Leith-Matlock, Esq. (anne-leith@matlocklawgroup.com)
Matlock Law Group, PC
1485 Treat Boulevard, Suite 200
Walnut Creek, CA 94597

(check applicable paragraphs)

__X__ (BY MAIL IN THE ORDINARY COURSE OF BUSINESS) I am readily familiar with the business practice for collection and processing of correspondence for mailing with the U.S. Postal Service and the fact that correspondence would be deposited with the U.S. Postal Service that same day in the ordinary course of business; On this date, the above-named correspondence was placed for deposit at Newport Beach, CA and placed for collection and mailing following ordinary business practices.

__ (BY PERSONAL SERVICE) I caused such document to be served by hand on the addressee.

__ (BY EXPRESS SERVICE) I caused such document to be deposited in a box or other facility regularly maintained by the express service carrier or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served.

__ (State) I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

__X__ (Federal) I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct, and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 21, 2007                                    _____
                                                                                                Signature of Declarant

---

REPLY RE: MOTION TO DISMISS

6