1  Timothy Carl Aires, Esq. (138169)
   AIRES LAW FIRM
2  180 Newport Center Drive, Suite 260
   Newport Beach, California 92660
3  (949) 718-2020
   (949) 718-2021 FAX
4
   Attorneys for Plaintiff and Counterdefendant,
5  AT&T CORPORATION

6

7                    UNITED STATES DISTRICT COURT

8      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

9

10  AT&T CORPORATION,                    ) Case No. C07-02440 EDL
                                         )
11          Plaintiff,                   ) OPPOSITION OF PLAINTIFF AT&T
                                         ) CORPORATION TO MOTION OF
12  v.                                   ) DEFENDANT DATAWAY INC. and dba
                                         ) DATAWAY DESIGNS FOR ORDER
13  DATAWAY INC. and dba DATAWAY         ) COMPELLING FURTHER RESPONSES
    DESIGNS,                             ) TO REQUESTS FOR PRODUCTION OF
14                                       ) DOCUMENTS, ELECTRONICALLY
            Defendants.                  ) STORED INFORMATION AND
15  _____ ) TANGIBLE THINGS, OR ENTERING
                                         ) ONTO LAND, FOR INSPECTION AND
16  AND RELATED COUNTERCLAIM.            ) OTHER PURPOSES; REQUEST FOR
    _____ ) AWARD OF ATTORNEY'S FEES AND
17                                         EXPENSES AGAINST DATAWAY INC.
                                           AND ANNE-LEITH MATLOCK,
18                                         JOINTLY AND SEVERALLY, IN THE
                                           SUM OF $5,500.00; DECLARATION OF
19                                         TIMOTHY CARL AIRES

20                                         [F.R.C.P., Rule 34]

21                                         DATE:        May 20, 2008
                                           TIME:        2:00 p.m.
22                                         CTRM:        E, 15th Floor

23

24         Plaintiff AT&T Corporation hereby submits its opposition to the motion of Defendant

25  Dataway Inc. and dba Dataway Designs for order compelling further responses to requests

26  for production of documents; and its request for award of attorney's fees and expenses

27  against Dataway Inc. and Anne-Leith Matlock, jointly and severally, in the sum of $5,500.00,

28  as follows:

# TABLE OF CONTENTS

1.   KEY ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3.   THE REQUEST FOR ATTORNEY'S FEES AND OTHER EXPENSES
     FAILS TO COMPLY WITH LOCAL RULE 37-3. . . . . . . . . . . . . . . . . . . . . . . . . 2

4.   DEFENSE COUNSEL NEVER RESPONDED SUBSTANTIVELY
     TO PLAINTIFF'S POSITION ON THE OBJECTIONS - THE "MEET
     AND CONFER" RECORD HAS NOT BEEN PORTRAYED
     ACCURATELY OR FAIRLY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5.   GOOD CAUSE DOES NOT WARRANT THE DISCOVERY SOUGHT. . . . . . 4

     (A)    A TELEPHONE CUSTOMER IS LIABLE FOR *ALL*
     LONG-DISTANCE CALLS MADE FROM ITS ON-PREMISES
     SYSTEM, REGARDLESS OF WHETHER SUCH CALLS WERE
     AUTHORIZED OR FRAUDULENT.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     (B)    IRRESPECTIVE OF THE FILED RATE DOCTRINE, ONE,
     SOME OR ALL OF THE CLAIMS IN THE COUNTERCLAIM
     LACK MERIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            (1)    ONE OR MORE ELEMENTS OF THE
            COUNTERCLAIM FOR BREACH OF EXPRESS CONTRACT
            CANNOT BE PROVED.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            (2)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM
            FOR BREACH OF ORAL CONTRACT CANNOT BE PROVED . . . . . . 9

            (3)    ONE OR MORE ELEMENTS OF THE CLAIM FOR
            FRAUDULENT INDUCEMENT OF CONTRACT CANNOT
            BE PROVED.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            (4)    ONE OR MORE ELEMENTS OF THE CLAIM FOR
            "SLAMMING" CANNOT BE PROVED . . . . . . . . . . . . . . . . . . . . . . . . 10

            (5)    ONE OR MORE ELEMENTS OF THE CLAIM FOR
            "TORTIOUS INTERFERENCE" CANNOT BE PROVED  . . . . . . . . . 11

     (C)    BECAUSE THE RELATIONSHIP BETWEEN AT&T AND
     DATAWAY IN THIS CONTEXT ARISES OUT OF INTERNATIONAL
     AND DOMESTIC, INTERSTATE, INTEREXCHANGE DIRECT-DIAL
     SERVICES TO WHICH THE END-USER OBTAINED ACCESS BY
     DIALING THE CARRIER'S ACCESS CODE, THE "FILED RATE"
     DOCTRINE STILL APPLIES – THE STATE LAW COUNTERCLAIMS
     ARE PREEMPTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

     (D)    THE SPECIFIC DISCOVERY REQUESTS ARE OVERBROAD,
     WILL NEVER LEAD TO THE DISCOVERY OF ADMISSIBLE
     EVIDENCE OR SEEK PRIVILEGED MATTER. . . . . . . . . . . . . . . . . . . . . . . . 14

6.    AN AWARD OF ATTORNEY'S FEES AND EXPENSES ARE
      WARRANTED ON THIS RECORD .................................. 18

7.    CONCLUSION ................................................ 18

1

TABLE OF AUTHORITIES

2

3  Decisions:

4  <u>Acoustics, Inc. v. Trepte Constr. Co.</u>, 14 Cal.App.3d 887 (1971) . . . . . . . . . . . . . . . 8, 9

5  <u>Applied Equipment Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal.4th 503 (1994) . . . . . . . . 11

6  <u>AT&T v. Central Office Telephone Inc.</u>, 524 U.S. 214 (1998) . . . . . . . . . . . . . . . . 12, 13

7  <u>AT&T Corp. v. Community Health Group</u>, 931 F.Supp. 719 (1995) . . . . . . . . . . . 5, 6, 7

8  <u>AT&T Corp. v. FCC</u>, 323 F.3d 1081 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 11

9  <u>AT&T Corp. v. Fleming and Berkeley</u>, 131 F.3d 145 (1997) . . . . . . . . . . . . . . . . . . . . 6, 7

10  <u>AT&T v. Intrend Ropes & Twines, Inc.</u>, 944 F.Supp 701 (1996) . . . . . . . . . . . . . . . . 6, 7

11  <u>AT&T v. Jiffy Lube International, Inc.</u>, 813 F.Supp 1164 (1993) . . . . . . . . . . . . . . 5, 6, 7

12  <u>AT&T v. New York City Human Res. Admin.</u>, 833 F.Supp. 962 (1993) . . . . . . . . . . . 6, 7

13  <u>Boomer v. AT & T Corporation</u>, 309 F.3d 404 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . 12

14  <u>City of Los Angeles v. Superior Court</u>, 51 Cal.2d 423 (1959) . . . . . . . . . . . . . . . . . . . 10

15  <u>CSC Holdings, Inc. v. Redisi</u>, 309 F.3d 988 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 3

16  <u>Dreamscape Design, Inc. v. Affinity Network, Inc.</u>, 414 F.3d 665 (7th Cir. 2005) . . . . 12

17  <u>FCC v. W.C.N. Listeners Guild</u>, 450 U.S. 582 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18  <u>Grady v. Easley</u>, 45 Cal.App.2d 632 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

19  <u>Hill v. Wrather</u>, 158 Cal.App.2d 818 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

20  <u>Hoelzel v. First Select Corp.</u>, 214 F.R.D. 634 (D CO 2003) . . . . . . . . . . . . . . . . . . . . . 4

21  <u>Industrial Leasing v. GTE Northwest</u>, 818 F.Supp 1371 (1992) . . . . . . . . . . . . . . . . 6, 7

22  <u>In re Sulfuric Acid Antitrust Litig.</u> 231 F.R.D. 331 (ND IL 2005) . . . . . . . . . . . . . . 3, 5

23  <u>In the matter of  Chartways Tech, Inc . v . AT&T</u>, 6 F.C.C.R. 2951 (1991) . . . . . . . . . . 6

24  <u>Kern Sunset Oil Co. v. Good Roads Oil Co.</u> 214 Cal. 435 (1931) . . . . . . . . . . . . . . . . . 9

25  <u>Leuter v. State of California</u>, 94 Cal.App.4th 1285 (2002) . . . . . . . . . . . . . . . . . . . . . . 9

26  <u>Molko v. Holy Spirit</u>, 46 Cal.3d 1092 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27  <u>Nagy v. Nagy</u>, 210 Cal.App.3d 1262 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28  <u>Pacific Gas & Electric Co. v. Bear Stearns & Co.</u>, 50 Cal.3d 1118 (1990) . . . . . . . . . . 11

Packman v. Chicago Tribune Co. 267 F.3d 628 (7th Cir. 2001)  . . . . . . . . . . . . . . . . 3, 5

Qwest Corp. v. AT&T Corp., 479 F.3d 1206 (10th Cir. 2007)  . . . . . . . . . . . . . . . . . . 12

Reichert v. General Insurance Co., 68 Cal.2d 822 (1968) . . . . . . . . . . . . . . . . . . . . . . 8, 9

Robinson v. Potter, 453 F.3d 990 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Roesch v. De Mota, 24 Cal.2d 563 (1944). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Soto v. City of Concord, 162 F.R.D. 603 (ND CA 1995)  . . . . . . . . . . . . . . . . . . . . . . . 4

Ting v. AT & T, 319 F.3d 1126 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94 (SD NY 1997)  . . . . . . . . . . . . . . . . . . 4

Union Telephone Co. v. Qwest Corporation, 495 F.3d 1187 (10th Cir. 2007)  . . . . . . . . 12


Statutes:

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1337 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. §1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

47 U.S.C. §160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

47 U.S.C. §203  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

47 U.S.C. §258  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

California Civil Code §1549 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Civil Code §1550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Civil Code §1572 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Civil Code §1708 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Civil Code §1709 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Civil Code §3300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


Other Authorities:

47 C.F.R. §61.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

CACI No. 335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CACI No. 336 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Civil Procedure, Rule 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure, Rule 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure, Rule 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Rules of Civil Procedure, Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Federal Rules of Civil Procedure, Rule 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rules of Civil Procedure, Rule 37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18

In re Motion of AT&T Corp. to be Reclassified as a Non-Dominant Carrier,

     Order in FCC 95-427, para. 1 (Oct. 23, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Local Rule 37-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

OPPOSITION MEMORANDUM

1. <u>KEY ISSUES</u>.

The moving papers, after all of the court-ordered deletions from the record, and the moving party's amendments and corrections, were not served until April 22, 2008 – less than 35 days prior to the hearing. The motion is not timely.

The moving papers do not include copies of the requests and responses as exhibits. As such, the dispute cannot be properly analyzed.

There is a suggestion in the moving papers that the responses were not initially timely served. The suggestion is false. The requests were served by mail on January 17, 2008. Responses were served by mail on February 19, 2008.[1/] February 16, 2008 was a Saturday. February 17, 2008 was a Sunday. February 18, 2008 was a federal holiday. The responses were timely served under F.R.C.P., Rules 5 and 6.

2. <u>STATEMENT OF FACTS</u>.

AT&T Corporation is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 1 AT&T Way, Bedminster, New Jersey and authorized to do business in the State of California and is a common carrier providing telecommunications services under published tariffs.

Dataway Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business within this district and located at 180 Redwood Street, San Francisco, California 94102 and doing business as Dataway Designs.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1332 and 1337. Further, venue is proper under Title 28 U.S.C. §1391(a)(2).

---

[1/]All relevant documents, which are not privileged or otherwise protected, have been produced in connection with a Rule 26(a) disclosure and a Rule 26(e) supplemental disclosure.

1    AT&T Tariff 30, Section 5, "Casual Calling Services", permits callers to access

2 AT&T's switched network for completion of their state-to-state and international dial station

3 calls by dialing carrier access code, 1010288. AT&T Tariff 30 is filed with the Federal

4 Communications Commission (the "FCC") under 47 C.F.R. §61.19.

5    On July 24, 2006, the telephone system owned and operated by Dataway was allegedly

6 compromised by an unauthorized third party accessing the AT&T Network (Legacy T) by

7 dialing carrier access code 1010288 which created an entirely new account for Dataway. No

8 unauthorized changes to a subscriber's telephone service were made by AT&T, or any other

9 carrier. The calls made on July 24, 2006 were not the responsibility of AT&T, but rather a

10 security failure on the part of Dataway. AT&T did not contract to, or otherwise had a duty

11 to, prevent access through the telephone system owned and operated by Dataway to the

12 AT&T Network (Legacy T) by dialing carrier access code 1010288.

13    Dataway was billed for the charges incurred when its telephone system was allegedly

14 compromised on July 24, 2006 by a written invoice. AT&T provided telecommunications

15 services to Dataway pursuant to AT&T Tariff F.C.C. No. 30 which makes Dataway liable

16 for the payment of charges for calls placed using its system through AT&T Network (Legacy

17 T) by dialing carrier access code 1010288. These charges amount to $11,534.67 and were

18 included on an invoice presented to Dataway. Pursuant to AT&T Tariff F.C.C. No. 30,

19 payment was due upon presentation of the invoice. There is now due and owing from

20 Dataway to AT&T the sum of $11,534.67, together with prejudgment interest.

21

22 3.    THE REQUEST FOR ATTORNEY'S FEES AND OTHER EXPENSES FAILS TO

23 COMPLY WITH LOCAL RULE 37-3.

24

25    Local Rule 37-3, in part provides:

26        When, in connection with a dispute about disclosure or

27        discovery, a party moves for an award of attorney fees or other

28        form of sanction under FRCivP 37, the motion must:

...

(b) Be accompanied by competent declarations which:

(1) Set forth the facts and circumstances that support the motion;

(2) Describe in detail the efforts made by the moving party to

secure compliance without intervention by the Court; and

(3) If attorney fees or other costs or expenses are requested,

itemize with particularity the otherwise unnecessary expenses,

including attorney fees, directly caused by the alleged violation

or breach, and set forth an appropriate justification for any

attorney-fee hourly rate claimed.

The moving papers are devoid of any competent declaration which meets the requirements of Local Rule 37-3. Even if the Court were to dispense with the Local Rule 37-3 requirements, the fee request is excessive given the simple nature of the motion and the absence of any detailed legal analysis or factual discussion.

4.    DEFENSE   COUNSEL   NEVER   RESPONDED   SUBSTANTIVELY   TO PLAINTIFF'S POSITION ON THE OBJECTIONS - THE "MEET AND CONFER" RECORD HAS NOT BEEN PORTRAYED ACCURATELY OR FAIRLY.

The burden rested with defense counsel to demonstrate an absence of merit to the objections and then independently to demonstrate good cause for the production of the items sought by a showing that actual and substantial prejudice will flow from the denial of discovery. *[In re Sulfuric Acid Antitrust Litig., 231 F.R.D. 331, 333 (ND IL 2005) ; see Packman v. Chicago Tribune Co., 267 F.3d 628, 647 (7th Cir. 2001).]* Defense counsel never addressed such factors as timeliness, good cause, utility and materiality. *[CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 992 (7th Cir. 2002).]* Defense counsel never address

the issues of undue burden and cost in light of the overbreadth of the requests.[2]  Indeed, defense counsel never made any effort to substantively meet the objections interposed to the production requests at issue.[3]   The motion should be denied on this ground alone.

The moving papers do not include a number of e-mails sent by Plaintiff's counsel in furtherance of "meet and confer" efforts.  On February 25, 2008, Plaintiff's counsel wrote by e-mail and advised defense counsel as to the appropriate protocol for "meeting and conferring".  Defense counsel never substantively replied to this "meet and confer" effort.[4] On March 31, 2008, Plaintiff's counsel inquired by e-mail as to whether defense counsel intended to respond substantively on the discovery dispute.   Defense counsel never substantively replied to this "meet and confer" effort.  On April 1, 2008, Plaintiff's counsel laid out in an e-mail why the production requests were properly objectionable.  Defense counsel never substantively replied to this "meet and confer" effort.  In short, defense counsel's portrayal of the "meet and confer" record is entirely misleading.  The motion should be denied on this ground alone.

5.    GOOD CAUSE DOES NOT WARRANT THE DISCOVERY SOUGHT.

---

[2]Unless the party seeking discovery meets its burden, a party need not provide discovery of electronically-stored information "from sources that the party identifies as not reasonably accessible because of undue burden or cost." *[F.R.C.P., Rule 26(b)(2)(B)]*

[3]Defense counsel's "meet and confer" declaration does not satisfy the requirements of F.R.C.P., Rule 37(a). *[Robinson v. Potter, 453 F.3d 990, 995 (8th Cir. 2006) (Motion to compel properly denied where moving party did not show lawyer had attempted to confer in good faith to resolve discovery dispute before filing motion.); Soto v. City of Concord 162 F.R.D. 603, 623 (ND CA 1995) (Moving party must attempt to have a real exchange of ideas and opinions.); Tri-Star Pictures, Inc. v. Unger 171 F.R.D. 94, 99 (SD NY 1997) (Movant must detail efforts to confer and explain why they proved useless.); Hoelzel v. First Select Corp. 214 F.R.D. 634, 636 (D CO 2003) (Single e-mail message not a meaningful meet and confer.).]*

[4]Defense counsel claims that a letter was mailed on February 29, 2008.  The letter was not received until late March, 2008.  The letter dated February 29, 2008 was not faxed or e-mailed which has been the norm in this case.  In any event, the letter dated February 29, 2008 does not substantively address any of the discovery issues in dispute.

1    A party seeking the production of documents under Rule 34 must demonstrate good

2 cause for the production of the items sought by a showing that actual and substantial

3 prejudice will flow from the denial of discovery. *[In re Sulfuric Acid Antitrust Litig.* 231

4 *F.R.D. 331, 333 (ND IL 2005); see Packman v. Chicago Tribune Co.* 267 *F.3d 628, 647 (7th*

5 *Cir. 2001).]* Actual and substantial prejudice can never be shown where a party has no valid

6 claim or defense to assert in the action. For the reasons which follow, good cause does not

7 warrant the discovery sought by the pending motion.

8

9    (A)    A TELEPHONE CUSTOMER IS LIABLE FOR *ALL* LONG-DISTANCE

10          CALLS MADE FROM ITS ON-PREMISES SYSTEM, REGARDLESS OF

11          WHETHER SUCH CALLS WERE AUTHORIZED OR FRAUDULENT.

12

13    Through the complaint in this action, AT&T seeks to recover $11,534.67, together

14 with prejudgment interest of $5.69 per day from September 25, 2006 using the rate of 18%

15 per annum pursuant to AT&T Tariff F.C.C. No. 30, Section 3.5.4, for calls placed through

16 the telephone system owned and operated by Dataway to the AT&T Network (Legacy T) by

17 dialing carrier access code 1010288.

18    A telephone customer is liable for *all* long-distance calls made from its on-premises

19 system[5], regardless of whether such calls were authorized or fraudulent. *[AT & T Corp. v.*

20 *Community Health Group,* 931 *F. Supp. 719, 723 (S.D.Cal. 1995) (Emphasis in original.).]*

21 The presence of a remote access mechanism, including an off premises computer, does not

22 affect the "origination" determination; calls still "originate" from a customer's system even

23 if access to the system was gained from a remote location. *[AT & T Corp. v. Community*

24 *Health Group,* 931 *F. Supp. 719, 723 (S.D.Cal. 1995).]*

25 ──────────────────

26 [5] A PBX system is "a customer-provided private switching system used to facilitate the
transmission of telephone calls to, from, and within a place of business. It is equipment added to

27 the public telephone network by a customer ... the use of which requires neither the knowledge
nor approval of AT & T." *[AT&T v. Jiffy Lube Int'l, Inc.* (D. Md. 1993) 813 *F. Supp. 1164, 1165,*

28 *fn. 1.]*

1    The FCC has held that a party may become an AT&T customer by ordering services

2 in both the more traditionally understood manner or by unauthorized usage involving

3 incoming 800 service calls or LDMTS[6] calls and/or services that originate at the customer's

4 numbers. *[See, e.g. In the matter of Chartways Tech., Inc. v. AT&T, 6 F.C.C.R. 2951, 2954*

5 *( 1991) (FCC ruled that a customer was responsible for all of the charges originating at its*

6 *number or numbers, regardless of claims that those charges may or may not have been*

7 *unauthorized.).]*[7]

8    In the case of *FCC v. W.C.N. Listeners Guild, 450 U.S. 582 (1981)*, the Supreme

9 Court followed its previously enunciated rule that "the construction of a statute by those

10 charged with its execution should be followed unless there are compelling indications that

11 it is wrong...." *[FCC v. W.C.N. Listeners Guild, 450 U.S. 582, 598 (1981).]* Therefore, this

12 court must therefore give deference to the rule enunciated by the FCC that a customer is

13 responsible for all of the charges originating at its telephone number or numbers, regardless

14 of whether that party claims that those charges were not authorized. In fact, other courts

15 when presented with this identical situation have followed this rule.

16    For example, in *AT&T v. New York City Human Resource Administration, 833*

17 *F.Supp. 962 (1993)*, the court was asked to rule on AT&T's motion for summary judgment

18 seeking payment of LDMTS services which the New York City Human Resources

19 Administration and the City of New York claimed should not be paid because they were the

20 result of unauthorized third party toll fraud. The court concluded that the defendants were

21 in fact customers of AT&T notwithstanding that the toll calls were fraudulent and held that

22

23    [6]LDMTS stands for "long distance message telecommunication service". *[AT&T v. New York*
*City Human Resource Administration, 736 F.Supp. 496, 497 (1990).]*

24

25    [7]The rule that all calls, fraudulent or not, originating from a number and utilizing AT&T's
LDMTS calls and/or services makes that party a customer and obligates them to pay those

26 charges has been applied in numerous cases, including *AT&T Corp. v. Fleming and Berkeley,*
*131 F.3d 145 (1997), AT&T v. Intrend Ropes & Twines. Inc., 944 F.Supp 701 (1996), AT&T*

27 *Corp. v. Community Health Group, 931 F.Supp 719 (1995), AT&T v. Jiffy Lube International,*
*Inc., 813 F.Supp 1164 (1993) and Industrial Leasing Corporation v. GTE Northwest.*

28 *Incorporated, 818 F.Supp 1371 (1992).*

1    AT&T was entitled to summary judgment. *[AT&T v. New York City Human Resource*
2    *Administration, 833 F.Supp. 962, 973 (1993).]*

3        In *AT & T Corp. v. Community Health Group, 931 F. Supp. 719 (S.D.Cal. 1995)*, the
4    court was faced with a situation almost identical to that presented here. In that case, the court
5    granted AT&T's motion for summary judgment, finding that Community Health Group was
6    liable for payment of LDMTS charges, even though those charges were the result of
7    unauthorized and fraudulent usage of their telephone system. The court noted that
8    Community Health Group was a "customer" even though it did not affirmatively order
9    AT&T LDMTS and had pre-subscribed for long distance service with an entirely different
10   carrier. The court concluded that all of the applicable authority clearly supported AT&T's
11   position that it was entitled to summary judgment. *[AT & T Corp. v. Community Health*
12   *Group, 931 F. Supp. 719, 722-725 (S.D.Cal. 1995).]*

13       Since there is no dispute that the calls originated from Dataway's numbers, the fact
14   that Dataway alleges that they were unauthorized and fraudulent is simply irrelevant to the
15   disposition of this claim.   Although the use of those numbers may have in fact been
16   unauthorized, the law is clear that the Dataway is and was, for the purposes of this matter,
17   a customer of AT&T and is required to pay the charges. *[See e.g., AT&T Corp v. Fleming*
18   *and Berkeley, 131 F.3d 145 (1997), AT&T v. Intrend Ropes & Twines , Inc., 944 F.Supp. 701*
19   *(1996), AT&T Corp. v. Community Health Group, 931 F.Supp. 719 (1995), AT&T v. Jiffy*
20   *Lube International, Inc, 813 F.Supp 1164 (1993), Industrial Leasing Corporation v. GTE*
21   *Northwest.Inc., 818 F.Supp. 1372 (1992) and AT&T v. New York City Human Resources*
22   *Administration, 833 F.Supp 962 (1993).]*

23       "[T]he repeated occurrence of remote access fraud does not create a general duty on
24   AT&T's part to warn its LDMTS customers the possibility of unauthorized access to their
25   PBX because the applicable tariff does not impose such a duty." *[AT&T v. New York City*
26   *Human Resources Administration, 833 F.Supp 962, 977 (1993).]*  There is no evidence that
27   can be offered by Dataway that AT&T was responsible for the installation and maintenance
28   ///

1    of the former's telephone system. In fact, exactly the opposite is true. Therefore, there is no

2    duty owed by AT&T to Dataway to prevent the toll fraud alleged by Dataway.

3          Actual and substantial prejudice can never be shown because Dataway does not have

4    a defense to assert in this action.  Good cause does not warrant the discovery sought by the

5    pending motion.

6

7          (B)     IRRESPECTIVE OF THE FILED RATE DOCTRINE, ONE, SOME OR ALL

8          OF THE CLAIMS IN THE COUNTERCLAIM LACK MERIT.

9

10               (1)     ONE OR MORE ELEMENTS OF THE COUNTERCLAIM FOR

11               BREACH OF EXPRESS CONTRACT CANNOT BE PROVED.

12

13          The first claim for relief in the counterclaim is entitled, Breach of Express Contract,

14   and contains no allegation that any damages flowed from the alleged breach. *[Counterclaim*

15   *(Docket No. 31), pp. 16:20-17:14, ¶¶15–19.]*

16          In order to prevail in an action for breach of contract, the plaintiff must establish: (1)

17   the existence of an enforceable agreement obligating the defendant to act or to forebear from

18   acting; (2) the plaintiff's performance of all obligations required on its part by the agreement,

19   except those excused by the defendant's breach; (3) the defendant's breach of the agreement

20   by an inexcusable  failure to act or failure to forebear from acting; and (4) damages to the

21   plaintiff caused by the defendant's breach of the agreement. *[Reichert v. General Insurance*

22   *Co., 68 Cal.2d 822, 830 (1968); Acoustics, Inc. v. Trepte Constr. Co., 14 Cal.App.3d 887,*

23   *913 (1971).]*

24          Neither AT&T, nor its predecessor in interest, contracted to, or otherwise had a duty

25   to, prevent access through the telephone system owned and operated by Dataway to the

26   AT&T Network (Legacy T) by dialing carrier access code 1010288. No damages for which

27   the law provides relief have been alleged.  No evidence exists that any damages for which

28   the law provides relief have been suffered.  In the absence of some damage claim cognizable

1  under the applicable law, and supported by some evidence, good cause supporting the

2  discovery sought can never be shown.

3

4          (2)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM FOR

5                 BREACH OF ORAL CONTRACT CANNOT BE PROVED

6

7          Damages are an essential element of a claim for breach of contract.[8/] *[Reichert v.*

8  *General Insurance Co., 68 Cal.2d 822, 830 (1968); Acoustics, Inc. v. Trepte Constr. Co., 14*

9  *Cal.App.3d 887, 913 (1971).]* The second claim for relief is entitled, Breach of Oral

10 Contract, and contains no allegation that any damages flowed from the alleged breach.

11 *[Counterclaim (Docket No. 31), pp. 17:18-18:4, ¶¶20-23.]*

12         The second claim for relief simply alleges "waiver".  Waiver is the intentional

13 relinquishment of a known right after knowledge of the facts. *[Roesch v. De Mota, 24 Cal.2d*

14 *563, 572 (1944).]* A "waiver" may be an affirmative defense under the right set of facts, but

15 an allegation of "waiver" does not constitute a claim for affirmative relief. *[Kern Sunset Oil*

16 *Co. v. Good Roads Oil Co. (1931) 214 Cal. 435, 440-441; see also CACI No. 336.]*

17 Therefore, it is not surprising that the claim for relief is entitled, Breach of Oral Contract,

18 contains no allegation that any damages flowed from the alleged breach. In the absence of

19 some damage claim cognizable under the applicable law, and supported by some evidence,

20 good cause supporting the discovery sought can never be shown.

21 ///

22 ///

23

24 ───────────────────

25 [8/]"For the breach of an obligation arising from contract, the measure of damages ... is the amount
which will compensate the party aggrieved for all the detriment proximately caused thereby, or

26 which, in the ordinary course of things, would be likely to result therefrom." *[California Civil
Code §3300.]* "Whatever the proper measure of damages may be, in a given case, the recovery

27 therefor is still subject to the fundamental rule that damages which are speculative, remote,
imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *[Leuter v.*

28 *State of California, 94 Cal.App.4th 1285, 1302 (2002.]*

(3)    ONE OR MORE ELEMENTS OF THE CLAIM FOR FRAUDULENT INDUCEMENT OF CONTRACT CANNOT BE PROVED.

The third claim for relief is incoherent. At best, like the second claim for relief, it merely sets up an affirmative defense. *[California Civil Code §1572; Grady v. Easley, 45 Cal.App.2d 632, 634 (1941); see also CACI No. 335.]* Fraud exists in two forms: (1) As an action for damages based upon fraud and deceit[9/]; and, alternatively, (2) As a defense to the enforcement of a contract. *[California Civil Code §§1572 and 1709.]*[10/] Fraud is a defense where its presence vitiates consent. *[California Civil Code §§1550 and 1572.]*

No damages for which the law provides relief have been alleged. No evidence exists that any damages for which the law provides relief have been suffered.[11/] In the absence of some damage claim cognizable under the applicable law, and supported by some evidence, good cause supporting the discovery sought can never be shown.

(4)    ONE OR MORE ELEMENTS OF THE CLAIM FOR "SLAMMING" CANNOT BE PROVED

---

[9/]The necessary elements of a claim for fraud are: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *[Molko v. Holy Spirit, 46 Cal.3d 1092, 1108 (1988).]* Every element of a claim for fraud must be alleged in full, factually and specifically. *[Federal Rules of Civil Procedure, Rule 9(b).]* Damages allegedly resulting from fraud must also be pleaded with particularity. *[Nagy v. Nagy, 210 Cal.App.3d 1262, 1268-1269 (1989) ("An allegation of a definite amount of damage is essential to stating a cause of action [for fraud].").]*

[10/]Part 2 of Division 3 of the California Civil Code, commencing with §1549, describes the nature of a contract — The defense of fraud can be found here. Part 3 of Division 3 of the California Civil Code, commencing with §1708, describes obligations imposed by law — The action for fraud and deceit can be found here.

[11/]Fraud and deceit does not exist in a vacuum. *[City of Los Angeles v. Superior Court, 51 Cal.2d 423, 433 (1959); Hill v. Wrather, 158 Cal.App.2d 818, 825 (1958) ("[F]raud without damage or injury is not remediable. Deception which does not cause loss is not a fraud in the legal sense.").]*

1    In order to prevent telecommunications carriers from making unauthorized changes

2    to subscribers' telephone service — a practice known as "slamming" — the

3    Telecommunications Act of 1996 (the "1996 Telecommunications Act") makes it unlawful

4    for telecommunications carriers to "submit or execute a change in a subscriber's selection of

5    a provider of telephone exchange service or telephone toll service except in accordance with

6    such verification procedures as the Commission shall prescribe." *[47 U.S.C. §258(a); AT&T*

7    *Corp. v. FCC 323 F.3d 1081, 1082 (D.C. Cir. 2003).]*

8    The evidence is undisputed that on July 24, 2006, the telephone system owned and

9    operated by Dataway was allegedly compromised by an unauthorized intervening third party

10   accessing the AT&T Network (Legacy T) by dialing carrier access code 1010288 which

11   created an entirely new account for Dataway. No unauthorized changes to a subscriber's

12   telephone service were made by AT&T, or its predecessor in interest. The calls made on July

13   24, 2006 were not the responsibility of AT&T, but rather a security failure on the part of

14   Dataway. Insufficient evidence exists which supports the "slamming" claim. In the absence

15   of some damage claim cognizable under the applicable law, and supported by some evidence,

16   good cause supporting the discovery sought can never be shown.

17

18           (5)    <u>ONE OR MORE ELEMENTS OF THE CLAIM FOR "TORTIOUS</u>

19                  <u>INTERFERENCE" CANNOT BE PROVED</u>

20

21   The tort cause of action for interference with a contract[12] does not lie against a party

22   to the contract. *[Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 514*

23   *(1994).]* The fifth claim for relief fails to state a claim upon which relief can be granted

24

25   [12]"The elements which a plaintiff must plead to state the cause of action for intentional

26   interference with contractual relations are (1) a valid contract between plaintiff and a third party;
     (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a

27   breach or disruption of the contractual relationship; (4) actual breach or disruption of the
     contractual relationship; and (5) resulting damage." *[Pacific Gas & Electric Co. v. Bear Stearns*

28   *& Co., 50 Cal.3d 1118, 1126 (1990).]*

1  inasmuch as the only contractual relationship alleged throughout the counterclaim is between

2  AT&T, and its predecessor in interest, on the one hand, and Dataway, on the other hand.

3  Moreover,  the  claim for relief does not plead resulting damages.  In the absence of some

4  damage claim cognizable under the applicable law, and supported by some evidence, good

5  cause supporting the discovery sought can never be shown.

6

7        (C)    BECAUSE THE RELATIONSHIP BETWEEN AT&T AND DATAWAY IN

8               THIS   CONTEXT   ARISES   OUT   OF   INTERNATIONAL   AND   DOMESTIC,

9               INTERSTATE, INTEREXCHANGE DIRECT-DIAL SERVICES TO WHICH THE

10              END-USER   OBTAINED   ACCESS   BY   DIALING   THE   CARRIER'S   ACCESS

11              CODE, THE "FILED RATE" DOCTRINE STILL APPLIES – THE STATE LAW

12              COUNTERCLAIMS ARE PREEMPTED.

13

14       Even assuming that one, some or all of the claims in the counterclaim are well-

15  pleaded, have evidentiary proof, and support a claim for damages compensable under

16  applicable law, the four state law counterclaims are barred by the "Filed Rate" Doctrine.[13]

17       As noted by the Supreme Court in *AT&T v. Central Office Telephone Inc., 524 U.S.*

18  *214 (1998)*:

19              "Section 203(a) of the Communications Act[14] requires every

20              common carrier to file with the FCC "schedules," i.e., tariffs,

21              "showing all charges" and "showing the classifications,

22              practices, and regulations affecting such charges." 47 U.S.C.

23

24  [13]To paraphrase, Mark Twain the reports of the death of the Filed Rate Doctrine are greatly
    exaggerated.  The Filed Rate Doctrine remains viable in a variety of contexts after passage of the
25  1996 Telecommunications Act. *[See, e.g., Union Telephone Co. v. Qwest Corporation, 495 F.3d*
    *1187 (10th Cir. 2007); Qwest Corp. v. AT&T Corp., 479 F.3d 1206 (10th Cir. 2007);*
26  *Dreamscape Design, Inc. v. Affinity Network, Inc., 414 F.3d 665 (7th Cir. 2005); Boomer v. AT*
    *& T Corporation, 309 F.3d 404 (7th Cir. 2002).]*
27

28  [14]47 U.S.C. §203(a) has never been repealed.

1    §203(a). Section 203(c) makes it unlawful for a carrier to

2    "extend to any person any privileges or facilities in such

3    communication, or employ or enforce any classifications,

4    regulations, or practices affecting such charges, except as

5    specified in such schedule." §203(c). These provisions are

6    modeled after similar provisions of the Interstate Commerce Act

7    (ICA) and share its goal of preventing unreasonable and

8    discriminatory charges. <u>MCI Telecommunications Corp. v.</u>

9    <u>American Telephone & Telegraph Co.</u>, 512 U.S. 218, 229-230

10    (1994). Accordingly, the century-old "filed-rate doctrine"

11    associated with the ICA tariff provisions applies to the

12    Communications Act as well."

13    *[AT&T v. Central Office Telephone Inc., 524 U.S. 214, 221-222 (1998).]*

14    The 1996 Telecommunications Act merely gives the FCC the authority to forbear

15    from regulatory measures determined to be unnecessary to protect consumers. *[47 U.S.C.*

16    *§160(a); Ting v. AT & T, 319 F.3d 1126, 1131-1132 (9th Cir.2003).]*

17    Notwithstanding the statutory authority under the 1996 Telecommunications Act to

18    stand down from requiring tariffs, the FCC has determined that it is in the public interest to

19    continue to require the filing of tariffs by nondominant carriers with respect to the provision

20    of international and domestic, interstate, interexchange services through dial-around 1+

21    services. In this regard, 47 C.F.R. §61.19(b) provides:

22    Carriers that are nondominant in the provision of international

23    and domestic, interstate, interexchange services are permitted to

24    file tariffs for dial-around 1+ services. For the purposes of this

25    paragraph, dial-around 1+ calls are those calls made by

26    accessing the interexchange carrier through the use of that

27    carrier's carrier access code.

28    *[47 C.F.R. §61.19(b).]*

1   By order of the FCC, AT&T is a non-dominant carrier. *[In re Motion of AT&T Corp.*

2   *to be Reclassified as a Non-Dominant Carrier, Order in FCC 95-427, para. 1 (Oct. 23,*

3   *1995).]* As such, AT&T is permitted to file tariffs governing the provision of international

4   and domestic, interstate, interexchange services for dial-around 1+ services. AT&T has filed

5   such a tariff in the form of Tariff No. 30 which governs calls placed through the AT&T

6   Network (Legacy T) by dialing carrier access code 1010288. The filing of Tariff No. 30

7   invokes the "Filed Rate" Doctrine with respect to any state law claim, whether sounding in

8   tort or in contract, arising out of international and domestic, interstate, interexchange direct-

9   dial services to which the end-user obtained access by dialing the carrier's access code.

10  Hence, notwithstanding Dataway's suggestion to the contrary, the "Filed Rate" Doctrine still

11  applies to the relationship at issue here. As such, the state law counterclaims are preempted.

12  Good cause supporting the discovery sought can never be shown.

13

14  (D)   THE SPECIFIC DISCOVERY REQUESTS ARE OVERBROAD, WILL

15  NEVER LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE OR SEEK

16  PRIVILEGED MATTER.

17

18  No. 1:  All documents, electronic data, and electronic data, and electronic media

19  concerning the Defendant including, but not limited to, any and all contracts, bills or

20  interoffice correspondence, for any and all accounts during the relevant period.

21  Reasons to deny discovery: Notwithstanding its overbreadth due to the definition of

22  "relevant time period", and its obvious attempt to get attorney client communications and

23  attorney work product, this request cannot possibly lead to the discovery of any admissible

24  evidence beyond the invoices which the defense already has in its possession.

25  No. 2:  All communications between you and the Defendant during the relevant

26  period.

27  ///

28  ///

1   Reasons to deny discovery: Notwithstanding its overbreadth due to the definition of

2   "relevant time period", this request cannot possibly lead to the discovery of any admissible

3   evidence.

4   No. 3: All communications between you and any person or entity concerning the

5   Defendant during the relevant period.

6   Reasons to deny discovery: Notwithstanding its overbreadth due to the definition of

7   "relevant time period", and its obvious attempt to get attorney client communications and

8   attorney work product, this request cannot possibly lead to the discovery of any admissible

9   evidence.

10  No. 4: All documents, electronic data, electronic media concerning the Defendant's

11  complaint to you regarding bills received by Defendant.

12  Reasons to deny discovery: Notwithstanding its obvious attempt to get attorney client

13  communications and attorney work product, this request cannot possibly lead to the discovery

14  of any admissible evidence.

15  No. 5: All communications between you and the Defendant concerning the fraud

16  complaint filed with you by Defendant.

17  Reasons to deny discovery: This request cannot possibly lead to the discovery of any

18  admissible evidence.

19  No. 6: All communications between you and any person or entity concerning the fraud

20  complaint filed with you by Defendant.

21  Reasons to deny discovery: Notwithstanding its obvious attempt to get attorney client

22  communications and attorney work product, this request cannot possibly lead to the discovery

23  of any admissible evidence.

24  No. 7: All documents, electronic data, and electronic media reflecting, establishing

25  or concerning the relationship between Aires Law Firm and the Bethune & Associates as it

26  relates to Defendant and the AT&T accounts assigned to Defendant.

27  ///

28  ///

1    Reasons to deny discovery: Notwithstanding its obvious attempt to get attorney client

2    communications and attorney work product, this request cannot possibly lead to the discovery

3    of any admissible evidence.

4    No. 8: All communications between and among Aires Law Firm and any person

5    employed by or associated with Bethune & Associates as it relates to Defendant.

6    Reasons to deny discovery: Notwithstanding its obvious attempt to get attorney client

7    communications and attorney work product, this request cannot possibly lead to the discovery

8    of any admissible evidence.

9    No. 9: All documents, electronic data, and electronic media concerning the

10   investigation of Defendant's fraud complaint with the F.C.C, C.P.U.C. and/or any division

11   of office of Plaintiff.

12   Reasons to deny discovery: Notwithstanding its overbreadth due to the definition of

13   "relevant time period", and its obvious attempt to get attorney client communications and

14   attorney work product, this request cannot possibly lead to the discovery of any admissible

15   evidence.

16   No. 10: All communications between and among Plaintiff and any person or entity,

17   including governmental entities referred to above, concerning the fraud complaint filed by

18   the Defendant.

19   Reasons to deny discovery: Notwithstanding its overbreadth due to the definition of

20   "relevant time period", and its obvious attempt to get attorney client communications and

21   attorney work product, this request cannot possibly lead to the discovery of any admissible

22   evidence.

23   No. 11: All documents, electronic data, and electronic media containing, reflecting

24   or concerning AT&T's policies, procedures, and protocol for resolving fraud complaints filed

25   by AT&T customers.

26   Reasons to deny discovery: Notwithstanding its overbreadth due to the definition of

27   "relevant time period", and its obvious attempt to get attorney client communications and

28   ///

1    attorney work product, this request cannot possibly lead to the discovery of any admissible

2    evidence.

3        No. 12: All recordings of telephonic communications between you and the Defendant,

4    its agents and employees during the relevant period concerning its account, its fraud

5    complaint, or any other matter relevant to this litigation.

6        Reasons to deny discovery: Notwithstanding its overbreadth due to the definition of

7    "relevant time period", and its obvious attempt to get attorney client communications and

8    attorney work product, this request cannot possibly lead to the discovery of any admissible

9    evidence.

10        No. 13: All DOCUMENTS, ELECTRONIC DATA, and ELECTRONIC DATA, and

11    ELECTRONIC MEDIA, notes, memoranda, correspondence, e-mails and other documents

12    regarding Defendant or the instant litigation, including, without limitation, documents

13    generated during the course of any conversation or meeting.

14        Reasons to deny discovery: Notwithstanding its overbreadth due to the definition of

15    "relevant time period", and its obvious attempt to get attorney client communications and

16    attorney work product, this request cannot possibly lead to the discovery of any admissible

17    evidence.

18        No. 14: All DOCUMENTS, ELECTRONIC DATA, and ELECTRONIC MEDIA of

19    any nature or kind relating to Plaintiff's cause of action or any defense asserted or alleged

20    by Defendant.

21        Reasons to deny discovery: Notwithstanding its overbreadth due to the definition of

22    "relevant time period", and its obvious attempt to get attorney client communications and

23    attorney work product, this request cannot possibly lead to the discovery of any admissible

24    evidence.

25        No. 15: All DOCUMENTS, ELECTRONIC DATA, and ELECTRONIC MEDIA to

26    be used for trial for impeachment or other purpose.

27        This request is an obvious attempt to get attorney client communications and attorney

28    work product. This request cannot possibly lead to the discovery of any admissible evidence.

6.    **AN AWARD OF ATTORNEY'S FEES AND EXPENSES ARE WARRANTED ON THIS RECORD**

F.R.C.P., Rule 37 provides for the recovery attorney's fees and expenses in connection with discovery motions. On this record, an award of attorney's fees and expenses against Dataway Inc. and Anne-Leith Matlock, jointly and severally, in the sum of $5,500.00 is warranted as the pending motion should never have been presented.

7.    **CONCLUSION**

For the foregoing reasons, the motion of Defendant Dataway Inc. and dba Dataway Designs for order compelling further responses to requests for production of documents, electronically stored information and tangible things, or entering onto land, for inspection and other purposes should be denied.

DATED: May 6, 2008                AIRES LAW FIRM

By: _____
Timothy Carl Aires, Esq.
Attorney for Plaintiff,
AT&T CORPORATION