1  Timothy Carl Aires, Esq. (138169)
   AIRES LAW FIRM
2  180 Newport Center Drive, Suite 260
   Newport Beach, California 92660
3  (949) 718-2020
   (949) 718-2021 FAX
4
   Attorneys for Plaintiff and Counterdefendant,
5  AT&T CORP.

6

7

8                  UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11  AT&T CORP.,                    )  Case No. C07-02440 EDL
                                   )
12            Plaintiff,           )  NOTICE OF MOTION AND MOTION
                                   )  OF PLAINTIFF AND COUNTER-
13  v.                             )  DEFENDANT AT&T CORP. FOR
                                   )  SUMMARY JUDGMENT OR PARTIAL
14  DATAWAY INC. dba DATAWAY       )  SUMMARY JUDGMENT;
    DESIGNS,                       )  MEMORANDUM OF POINTS AND
15                                 )  AUTHORITIES; REQUEST FOR
              Defendants.          )  JUDICIAL NOTICE; DECLARATION
16                                 )  OF JAMES LAKE; DECLARATION OF
    _____)  TIMOTHY CARL AIRES
17
                                      [F.R.C.P., Rule 56]
18
                                      DATE:      August 5, 2008
19                                    TIME:      9:30 a.m.
                                      CTRM:      E, 15th Floor
20

21
         PLEASE TAKE NOTICE that at 9:30 a.m. on August 5, 2008 in Courtroom E, 15th
22
    Floor of this Court, located at 450 Golden Gate Avenue, San Francisco, California 94102,
23
    the motion of Plaintiff and Counterdefendant AT&T Corp. for summary judgment or
24
    alternatively, partial summary judgment, will be brought on for hearing.
25
         The motion for summary judgment is made pursuant to Federal Rules of Civil
26
    Procedure, Rule 56 on the grounds that there is no genuine issue of material fact in this civil
27
    action as to the Complaint of Plaintiff AT&T Corp. (Docket No. 1) and Counterclaim of
28

1  Counterclaimant Dataway Inc. dba Dataway Designs (Docket No. 31) in their entirety, and,
2  therefore, Plaintiff AT&T Corp. is entitled to judgment on the Complaint of Plaintiff AT&T
3  Corp. (Docket No. 1) as a matter of law against Defendant Dataway Inc. dba Dataway
4  Designs in the sum of $11,534.67, together with prejudgment interest of $5.69 per day from
5  September 25, 2006, and Counterclaimant Dataway Inc. dba Dataway Designs is entitled to
6  nothing as a matter of law on the Counterclaim of Counterclaimant Dataway Inc. dba
7  Dataway Designs (Docket No. 31).

8       The motion for partial summary judgment is made pursuant to Federal Rules of Civil
9  Procedure, Rule 56 on the grounds that there is no genuine issue of material fact as to the
10 first claim for relief in the Complaint of Plaintiff AT&T Corp. (Docket No. 1)  and,
11 therefore, Plaintiff AT&T Corp. is entitled to judgment as a matter of law against Defendant
12 Dataway Inc. dba Dataway Designs in the sum of $11,534.67, together with prejudgment
13 interest of $5.69 per day from September 25, 2006.

14      The motion for partial summary judgment is made pursuant to Federal Rules of Civil
15 Procedure, Rule 56 on the grounds that there is no genuine issue of material fact as to the
16 second claim for relief in the Complaint of Plaintiff AT&T Corp. (Docket No. 1) and,
17 therefore, Plaintiff AT&T Corp. is entitled to judgment as a matter of law against Defendant
18 Dataway Inc. dba Dataway Designs in the sum of $11,534.67, together with prejudgment
19 interest of $5.69 per day from September 25, 2006.

20      The motion for partial summary judgment is made pursuant to Federal Rules of Civil
21 Procedure, Rule 56 on the grounds that there is no genuine issue of material fact as to the
22 first counterclaim for relief in the Counterclaim of Counterclaimant Dataway Inc. dba
23 Dataway Designs (Docket No. 31) and, therefore, Counterdefendant AT&T Corp. is entitled
24 to judgment as a matter of law.

25      The motion for partial summary judgment is made pursuant to Federal Rules of Civil
26 Procedure, Rule 56 on the grounds that there is no genuine issue of material fact as to the
27 second  counterclaim for relief in the Counterclaim of Counterclaimant Dataway Inc. dba
28 ///

Dataway Designs (Docket No. 31) and, therefore, Counterdefendant AT&T Corp. is entitled to judgment as a matter of law.

The motion for partial summary judgment is made pursuant to <u>Federal Rules of Civil Procedure</u>, Rule 56 on the grounds that there is no genuine issue of material fact as to the third counterclaim for relief in the Counterclaim of Counterclaimant Dataway Inc. dba Dataway Designs (Docket No. 31) and, therefore, Counterdefendant AT&T Corp. is entitled to judgment as a matter of law.

The motion for partial summary judgment is made pursuant to <u>Federal Rules of Civil Procedure</u>, Rule 56 on the grounds that there is no genuine issue of material fact as to the fourth counterclaim for relief in the Counterclaim of Counterclaimant Dataway Inc. dba Dataway Designs (Docket No. 31) and, therefore, Counterdefendant AT&T Corp. is entitled to judgment as a matter of law.

The motion for partial summary judgment is made pursuant to <u>Federal Rules of Civil Procedure</u>, Rule 56 on the grounds that there is no genuine issue of material fact as to the fifth counterclaim for relief in the Counterclaim of Counterclaimant Dataway Inc. dba Dataway Designs (Docket No. 31) and, therefore, Counterdefendant AT&T Corp. is entitled to judgment as a matter of law.

If the Court determines that summary judgment or partial judgment would be improper on this record, the Court is requested, after examining the pleadings and evidence before it and by interrogating the attorneys, to enter an order specifying what facts are not genuinely at issue and what issues are without substantial controversy — including items of damages or other relief — pursuant to <u>Federal Rules of Civil Procedure</u>, Rule 56(d)(1), <u>Williams v. Sinclair</u>, 529 F.2d 1383 (9th Cir. 1975), and USDC, ND CA Local Rule 56-3.

///

///

///

///

///

1    The motion is based on this notice of motion, the memorandum of points and
2    authorities in support thereof, the accompanying request for judicial notice, the
3    accompanying declaration of James Lake, the accompanying declaration of Timothy Carl
4    Aires, and upon such oral argument as may be presented at the hearing of this motion.

5

6    DATED: July 1, 2008                    AIRES LAW FIRM

7

8                                          By:
9                                             Timothy Carl Aires, Esq.
                                            Attorney for Plaintiff and Counterdefendant,
                                            AT&T CORP.

<u>TABLE OF CONTENTS</u>

1.    STATEMENT OF UNCONTROVERTED FACTS. . . . . . . . . . . . . . . . . . . . . . . 1

2.    DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    (A)    THE APPLICABLE STANDARD OF REVIEW ON MOTIONS
    UNDER RULE 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    (B)    BECAUSE THE RELATIONSHIP BETWEEN AT&T AND
    DATAWAY IN THIS CONTEXT ARISES OUT OF DIRECT-DIAL
    SERVICES TO WHICH THE END-USER OBTAINED ACCESS BY
    DIALING THE CARRIER'S ACCESS CODE, THE "FILED RATE"
    DOCTRINE STILL APPLIES – THE STATE LAW COUNTERCLAIMS
    AND DEFENSES ARE PREEMPTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    (C)    IRRESPECTIVE OF THE FILED RATE DOCTRINE, ONE,
    SOME OR ALL OF THE CLAIMS IN THE COUNTERCLAIM
    LACK MERIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        (1)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM
        FOR BREACH OF EXPRESS CONTRACT CANNOT BE PROVED. . 6

        (2)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM
        FOR BREACH OF ORAL CONTRACT CANNOT BE PROVED . . . . . . 8

        (3)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM
        FOR FRAUDULENT INDUCEMENT OF CONTRACT CANNOT
        BE PROVED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        (4)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM
        FOR "SLAMMING" CANNOT BE PROVED . . . . . . . . . . . . . . . . . . 10

        (5)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM
        FOR "TORTIOUS INTERFERENCE" CANNOT BE PROVED . . . . . 11

    (C)    A TELEPHONE CUSTOMER IS LIABLE FOR *ALL*
    LONG-DISTANCE CALLS MADE FROM ITS ON-PREMISES
    SYSTEM, REGARDLESS OF WHETHER SUCH CALLS WERE
    AUTHORIZED OR FRAUDULENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    (D)    IF THIS MOTION IS DENIED, THIS COURT SHOULD ENTER
    AN ORDER SPECIFYING WHAT FACTS ARE NOT GENUINELY
    AT ISSUE AND WHAT ISSUES ARE WITHOUT SUBSTANTIAL
    CONTROVERSY — INCLUDING ITEMS OF DAMAGES OR
    OTHER RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

## TABLE OF AUTHORITIES

2

3 Decisions:

4 Acoustics, Inc. v. Trepte Constr. Co., 14 Cal.App.3d 887 (1971)  . . . . . . . . . . . . . . . 7, 8

5 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) . . . . . . . . . . . . . . . . . . . . . . . 3

6 Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503 (1994)  . . . . . . . . 11

7 AT&T v. Central Office Telephone Inc., 524 U.S. 214 (1998) . . . . . . . . . . . . . . . . . . . 4, 5

8 AT&T Corp. v. Community Health Group, 931 F.Supp. 719 (1995)  . . . . . . . . . 12, 13, 14

9 AT&T Corp. v. FCC, 323 F.3d 1081 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10 AT&T Corp. v. Fleming and Berkeley, 131 F.3d 145 (1997) . . . . . . . . . . . . . . . . . 12, 14

11 AT&T v. Intrend Ropes & Twines, Inc., 944 F.Supp 701 (1996) . . . . . . . . . . . . . . . 12, 14

12 AT&T v. Jiffy Lube International, Inc., 813 F.Supp 1164 (1993)  . . . . . . . . . . . . . . 12, 14

13 AT&T v. New York City Human Res. Admin., 833 F.Supp. 962 (1993) . . . . . . 12, 13, 14

14 Berge v. International Harvester Co., 142 Cal.App.3d 152 (1983).  . . . . . . . . . . . . . . . . 7

15 Bhan v. NME Hospitals, Inc., 929 F.2d 1404 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 4

16 Boomer v. AT & T Corporation, 309 F.3d 404 (7th Cir. 2002)  . . . . . . . . . . . . . . . . . . . 4

17 Celotex Corp. v. Catrett, 477 U.S. 317 (1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 City of Los Angeles v. Superior Court, 51 Cal.2d 423 (1959)  . . . . . . . . . . . . . . . . . . . 10

19 Dreamscape Design, Inc. v. Affinity Network, Inc., 414 F.3d 665 (7th Cir. 2005)  . . . . . 4

20 FCC v. W.C.N. Listeners Guild, 450 U.S. 582 (1981)  . . . . . . . . . . . . . . . . . . . . . . . . . 13

21 Grady v. Easley, 45 Cal.App.2d 632 (1941)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22 Hill v. Wrather, 158 Cal.App.2d 818 (1958)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

23 Industrial Leasing v. GTE Northwest, 818 F.Supp 1371 (1992) . . . . . . . . . . . . . . . 12, 14

24 In the matter of  Chartways Tech. Inc . v . AT&T, 6 F.C.C.R. 2951 (1991)  . . . . . . . . . 12

25 Kern Sunset Oil Co. v. Good Roads Oil Co. 214 Cal. 435 (1931)  . . . . . . . . . . . . . . . . . 9

26 Leuter v. State of California, 94 Cal.App.4th 1285 (2002)  . . . . . . . . . . . . . . . . . . . . . . 8

27 Molko v. Holy Spirit, 46 Cal.3d 1092 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 Nagy v. Nagy, 210 Cal.App.3d 1262 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1  Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal.3d 1118 (1990) . . . . . . . . . . 11

2  Qwest Corp. v. AT&T Corp., 479 F.3d 1206 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . 4

3  Reichert v. General Insurance Co., 68 Cal.2d 822 (1968) . . . . . . . . . . . . . . . . . . . . . . 7, 8

4  Roesch v. De Mota, 24 Cal.2d 563 (1944). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5  Sanchez-Corea v. Bank of America, 38 Cal.3d 892 (1985) . . . . . . . . . . . . . . . . . . . . . . 7

6  S.C. Anderson Inc. v. Bank of America, 24 Cal.App.4th 529 (1994). . . . . . . . . . . . . . . 7

7  Ting v. AT & T, 319 F.3d 1126 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8  T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc., 809 F.2d 626 (9th Cir. 1987) . . . . 4

9  Union Telephone Co. v. Qwest Corporation, 495 F.3d 1187 (10th Cir. 2007) . . . . . . . . 4

10  White v. Southern California Edison Co., 25 Cal.App.4th 442 (1994) . . . . . . . . . . . . . 8

11  Williams v. Sinclair, 529 F.2d 1383 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12

13  Statutes:

14  28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15  28 U.S.C. §1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

16  28 U.S.C. §1337 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

17  28 U.S.C. §1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18  47 U.S.C. §160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

19  47 U.S.C. §203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20  47 U.S.C. §258 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21  California Civil Code §1549 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22  California Civil Code §1550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

23  California Civil Code §1572 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

24  California Civil Code §1708 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25  California Civil Code §1709 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

26  California Civil Code §3300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

27  ///

28  ///

2

1   Other Authorities:

2   47 C.F.R. §61.19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

3   CACI No. 335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4   CACI No. 336 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5   Federal Rules of Civil Procedure, Rule 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6   Federal Rules of Civil Procedure, Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 15

7   In re Motion of AT&T Corp. to be Reclassified as a Non-Dominant Carrier,

8         Order in FCC 95-427, para. 1 (Oct. 23, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

9   Schwarzer, Tashima & Wagstaffe, California Practice Guide:

10        Federal Civil Procedure Before Trial (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11  USDC, ND CA Local Rule 56-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3    1.    STATEMENT OF UNCONTROVERTED FACTS.

4

5    AT&T Corp. ("AT&T") is a corporation organized and existing under the laws of the

6    State of New York with its principal place of business located at 1 AT&T Way, Bedminster,

7    New Jersey and authorized to do business in the State of California and is a common carrier

8    providing telecommunications services under published tariffs. *[Uncontroverted Fact No.*

9    *1: Declaration of James Lake, p. 1:17-21, ¶3.]*

10    Dataway Inc. ("Dataway") is a corporation organized and existing under the laws of

11    the State of California with its principal place of business within this district and located at

12    180 Redwood Street, San Francisco, California 94102 and doing business as Dataway

13    Designs. *[Uncontroverted Fact No. 2: Answer to Complaint (Docket No. 31), p. 2:9-10, ¶2.]*

14    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1332 and

15    1337. *[Uncontroverted Fact No. 3: Complaint (Docket No. 1).]* Further, venue is proper

16    under Title 28 U.S.C. §1391(a)(2). *[Uncontroverted Fact No. 4: Answer to Complaint*

17    *(Docket No. 31), p. 2:9-10, ¶2.]*

18    AT&T Tariff 30, Section 5, "Casual Calling Services", permits callers who are not

19    pre-subscribed to AT&T to access AT&T's switched network for completion of their state-

20    to-state and international dial station calls by dialing carrier access code, 1010288.

21    *[Uncontroverted Fact No. 5: Declaration of James Lake, p. 1:23-26, ¶4.]* AT&T Tariff 30

22    is filed with the Federal Communications Commission (the "FCC") under 47 C.F.R. §61.19.

23    *[Uncontroverted Fact No. 6: Declaration of James Lake, p. 1:26-27, ¶4.]*

24    On July 24, 2006, the telephone system owned and operated by Dataway was allegedly

25    compromised by an unauthorized intervening third party accessing the AT&T network by

26    dialing carrier access code 1010288. *[Uncontroverted Fact No. 7: Declaration of James*

27    *Lake, p. 1:27-2:3, ¶4; Declaration of Timothy Carl Aires, p. 1:20-23, ¶5 (Exhibit E –*

28    *Deposition Transcript of Simon Lewis, pp. 8:17-11:23).]* No unauthorized changes to a

1

subscriber's telephone service were made by AT&T. *[Uncontroverted Fact No. 8: Declaration of James Lake, p. 2:3-5, ¶4.]* The calls made on July 24, 2006 were not the responsibility of AT&T, but rather a security failure on the part of Dataway if the calls were indeed unauthorized. *[Uncontroverted Fact No. 9: Declaration of James Lake, p. 2:5-7, ¶4.]* AT&T, did not contract to, or otherwise have a duty to, prevent access through the telephone system owned and operated by Dataway to AT&T by dialing carrier access code 1010288. *[Uncontroverted Fact No. 10: Declaration of James Lake, p. 2:7-9, ¶4.]*

Dataway was billed for the charges incurred when its telephone system was allegedly compromised on July 24, 2006 by a written invoice. *[Uncontroverted Fact No. 11: Declaration of James Lake, p. 3:12-14, ¶6.]* AT&T provided telecommunications services to Dataway pursuant to AT&T Tariff F.C.C. No. 30 which makes Dataway liable for the payment of charges for calls placed using its system through AT&T by dialing carrier access code 1010288. *[Uncontroverted Fact No. 12: Declaration of James Lake, p. 3:14-17, ¶6.]* These charges amount to $11,534.67 and were included on an invoice presented to Dataway due September 25, 2006. *[Uncontroverted Fact No. 13: Declaration of James Lake, p. 3:17-19, ¶6.]* Pursuant to AT&T Tariff F.C.C. No. 30, payment was due upon presentation of the invoice. *[Uncontroverted Fact No. 14: Declaration of James Lake, p. 3:18-19, ¶6.]* There is now due and owing from Dataway to AT&T the sum of $11,534.67, together with prejudgment interest of $5.69 per day from September 25, 2006 using the rate of 18% per annum pursuant to AT&T Tariff F.C.C. No. 30, Section 3.5.4. *[Uncontroverted Fact No. 15: Declaration of James Lake, p. 3:23-4:2, ¶7.]* There is no evidence that AT&T waived its claim involving the charges amounting to $11,534.67. *[Uncontroverted Fact No. 16: Declaration of Timothy Carl Aires, p. 1:15-23, ¶4 (Exhibit D – Deposition Transcript of Francisco J. Molieri, pp. 58:6-59:14) and ¶5 (Exhibit E – Deposition Transcript of Simon Lewis, p. 48:4-11).]*

AT&T made demand for the charges amounting to $11,534.67 and a billing dispute ensued. *[Uncontroverted Fact No. 17: Declaration of Timothy Carl Aires, pp. 1:15-18, ¶4 (Exhibit D – Deposition Transcript of Francisco J. Molieri, pp. 16:17-20:9).]* Telephone

1   service to Dataway was never terminated. *[Uncontroverted Fact No. 18: Declaration of*

2   *Timothy Carl Aires, p. 1:15-23, ¶4 (Exhibit D – Deposition Transcript of Francisco J.*

3   *Molieri, p. 26:8-11, 18-21) and ¶5 (Exhibit E – Deposition Transcript of Simon Lewis, pp.*

4   *47:24-48:1).]* The "damages" suffered by Dataway are claimed to be[1] "time expenditure",

5   i.e., an estimate of the value of the time committed by employees of Dataway in the search

6   for a resolution of the billing dispute with AT&T *[Uncontroverted Fact No. 19: Declaration*

7   *of Timothy Carl Aires, p. 1:12-18, ¶3 (Exhibit C – Responses of Dataway Inc. to Special*

8   *Interrogatories, Set No. One, Interrogatory No. 6, p. 11:10-12:9) and ¶4 (Exhibit D –*

9   *Deposition Transcript of Francisco J. Molieri, p. 26:22-35:11)]*, and "business interruption",

10  i.e., an estimate, based upon a mere assumption, of the gross revenue which allegedly could

11  have been generated from Dataway's business activities had employees of Dataway not been

12  allocating time to seeking a resolution of the billing dispute with AT&T *[Uncontroverted*

13  *Fact No. 20: Declaration of Timothy Carl Aires, p. 1:12-18, ¶3 (Exhibit C – Responses of*

14  *Dataway Inc. to Special Interrogatories, Set No. One, Interrogatory No. 6, p. 11:10-12:9)*

15  *and ¶4 (Exhibit D – Deposition Transcript of Francisco J. Molieri, p. 35:15-21)].*

16

17  2.      DISCUSSION

18

19          (A)     THE APPLICABLE STANDARD OF REVIEW ON MOTIONS UNDER

20          RULE 56.

21

22          Summary judgment is granted when no genuine issue exists as to any material fact and

23  the moving party is entitled to judgment as a matter of law. *[Federal Rules of Civil*

24  *Procedure, Rule 56; see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).]*

25

26  [1]Interrogatory No. 6 refers to the sum of $1,238.75 being the subject of some overcharge,

27  however, this "fact" is irrelevant since the counterclaim does not seek recovery of any such
    overcharge. *[Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil*

28  *Procedure Before Trial (2007) "Summary Judgment" ¶14:27.1.]*

                                              3

1  Partial summary judgment is available when summary judgment is proper as to one or more,

2  but not all claims for relief. *[Federal Rules of Civil Procedure, Rule 56.]* The moving party

3  for partial summary judgment has the initial burden to show that no genuine issue of material

4  fact exists. *[See Bhan v. NME Hospitals, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991) citing*

5  *T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 632 (9th Cir. 1987).]* If

6  the moving party satisfies this burden, the opposing party must go beyond the pleadings and

7  by its own affidavits, depositions, answers to interrogatories, and admissions on file,

8  designate specific facts showing that there is a genuine issue of material fact for trial. *[See*

9  *Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).]*

10

11      (B)    BECAUSE THE RELATIONSHIP BETWEEN AT&T AND DATA WAY IN

12      THIS CONTEXT ARISES OUT OF SERVICES TO WHICH THE END-USER

13      OBTAINED ACCESS BY DIALING THE CARRIER'S ACCESS CODE, THE

14      FILED   RATE   DOCTRINE   STILL   APPLIES   –   THE   STATE   LAW

15      COUNTERCLAIMS AND DEFENSES ARE PREEMPTED.

16

17      Even assuming that one, some or all of the claims in the counterclaim are well-

18  pleaded, have evidentiary proof, and support a claim for damages compensable under

19  applicable law, state law counterclaims and defenses are barred by the Filed Rate Doctrine.[2/]

20      As noted by the Supreme Court in *AT&T v. Central Office Telephone Inc., 524 U.S.*

21  *214 (1998)*:

22  ///

23  ///

24

25  [2/]To paraphrase Mark Twain, the reports of the death of the Filed Rate Doctrine are greatly

26  exaggerated. The Filed Rate Doctrine remains viable in a variety of contexts after passage of the
   1996 Telecommunications Act. *[See, e.g., Union Telephone Co. v. Qwest Corporation, 495 F.3d*

27  *1187 (10th Cir. 2007); Qwest Corp. v. AT&T Corp., 479 F.3d 1206 (10th Cir. 2007);*
   *Dreamscape Design, Inc. v. Affinity Network, Inc., 414 F.3d 665 (7th Cir. 2005); Boomer v.*

28  *AT&T Corporation, 309 F.3d 404 (7th Cir. 2002).]*

4

"Section 203(a) of the Communications Act[3/] requires every common carrier to file with the FCC "schedules," i.e., tariffs, "showing all charges" and "showing the classifications, practices, and regulations affecting such charges." 47 U.S.C. §203(a). Section 203(c) makes it unlawful for a carrier to "extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule." §203(c). These provisions are modeled after similar provisions of the Interstate Commerce Act (ICA) and share its goal of preventing unreasonable and discriminatory charges. MCI Telecommunications Corp. v. American Telephone & Telegraph Co., 512 U.S. 218, 229—230 (1994). Accordingly, the century-old "filed-rate doctrine" associated with the ICA tariff provisions applies to the Communications Act as well."

[*AT&T v. Central Office Telephone Inc.*, 524 U.S. 214, 221-222 (1998).]

The 1996 Telecommunications Act merely gives the FCC the authority to forbear from regulatory measures determined to be unnecessary to protect consumers. [*47 U.S.C. §160(a)*; *Ting v. AT & T*, 319 F.3d 1126, 1131-1132 (9th Cir.2003)[4/].]

Notwithstanding the statutory authority under the 1996 Telecommunications Act to stand down from requiring tariffs, the FCC has determined that it is in the public interest to

---

[3/]47 U.S.C. §203(a) has never been repealed.

[4/]*Ting v. AT & T*, 319 F.3d 1126 (9th Cir.2003) deals with detariffing generally, but does not address the unusual situation involving dial-around 1+ services for the obvious reason that there usually is not a formal negotiated agreement between the customer and the carrier since the customer becomes a "customer" by simply dialing the carrier's carrier access code and accessing the carrier's network. The terms and conditions of such use must by necessity and circumstance be found in tariffs filed with the FCC.

continue to require the filing of tariffs by nondominant carriers with respect to the provision of international and domestic, interstate, interexchange services through dial-around 1+ services.  In this regard, 47 C.F.R. §61.19(b) provides:

> Carriers that are nondominant in the provision of international and domestic, interstate, interexchange services are permitted to file tariffs for dial-around 1+ services. For the purposes of this paragraph, dial-around 1+ calls are those calls made by accessing the interexchange carrier through the use of that carrier's carrier access code.

*[47 C.F.R. §61.19(b).]*

By order of the FCC, AT&T is a non-dominant carrier.  *[In re Motion of AT&T Corp. to be Reclassified as a Non-Dominant Carrier, Order in FCC 95-427, para. 1 (Oct. 23, 1995).]* As such, AT&T is permitted to file tariffs governing the provision of international and domestic, interstate, interexchange services for dial-around 1+ services. AT&T has filed such a tariff in the form of Tariff No. 30 which governs calls placed through the AT&T network by dialing carrier access code 1010288.  The filing of Tariff No. 30 invokes the Filed Rate Doctrine with respect to any state law claim or defense, whether sounding in tort or in contract, arising out of international and domestic, interstate, interexchange direct-dial services to which the end-user obtained access by dialing the carrier's access code.  Hence, notwithstanding Dataway's suggestion to the contrary, the Filed Rate Doctrine still applies to the relationship at issue here.  As such, any state law counterclaims and defenses in the context of this case are preempted.

(C)   IRRESPECTIVE OF THE FILED RATE DOCTRINE, ONE, SOME OR ALL OF THE COUNTERCLAIMS FOR RELIEF LACK MERIT.

(1)   ONE OR MORE ELEMENTS OF THE COUNTERCLAIM FOR BREACH OF EXPRESS CONTRACT CANNOT BE PROVED.

6

1    The first counterclaim for relief is entitled, Breach of Express Contract, and contains

2  no allegation that any damages flowed from the alleged breach. *[Counterclaim (Docket No.*

3  *31), pp. 16:20-17:14, ¶¶15–19.]*

4    In order to prevail in an action for breach of contract, the plaintiff must establish: (1)

5  the existence of an enforceable agreement obligating the defendant to act or to forebear from

6  acting; (2) the plaintiff's performance of all obligations required on its part by the agreement,

7  except those excused by the defendant's breach; (3) the defendant's breach of the agreement

8  by an inexcusable failure to act or failure to forebear from acting; and (4) damages to the

9  plaintiff caused by the defendant's breach of the agreement. *[Reichert v. General Insurance*

10  *Co., 68 Cal.2d 822, 830 (1968); Acoustics, Inc. v. Trepte Constr. Co., 14 Cal.App.3d 887,*

11  *913 (1971).]*

12    AT&T did not contract to, or otherwise have a duty to, prevent access through the

13  telephone system owned and operated by Dataway to the AT&T network by dialing carrier

14  access code 1010288. No damages for which the law provides relief have been alleged. No

15  evidence exists that any damages for which the law provides relief have been suffered.

16    The type of damage complained of which is characterized by Dataway as "time

17  expenditure" is an estimate of the value of the time committed by employees of Dataway in

18  the search for a resolution of the billing dispute with AT&T. California contract law does

19  not compensate a party for the time its employees spend investigating and addressing a

20  billing dispute. *[California Civil Code §3300.]*

21    The type of damage complained of which is characterized as "business interruption"

22  is, in reality, an estimate, based upon a mere assumption, of the gross revenue[5] which

23

24

25  [5]There is no indication that the amount sought for "business interruption" is net of expenses, i.e.,
    lost net profits. *[See Berge v. International Harvester Co., 142 Cal.App.3d 152, 161-162*

26  *(1983).]*  Indeed, the figure appears to be a gross calculation of the estimated time multiplied by a
    seemingly conjured up hourly rate. *[See Sanchez-Corea v. Bank of America, 38 Cal.3d 892, 907*

27  *(1985) (Evidence of lost profits must be unspeculative ...")*; *see also S.C. Anderson Inc. v. Bank*
    *of America, 24 Cal.App.4th 529, 536 (1994) (The plaintiff has the burden to produce the best*

28  *evidence available in the circumstances to attempt to establish a claim for lost profits.").]*

7

1    allegedly could have been generated from Dataway's business activities had employees of

2    Dataway not been allocating time to seeking a resolution of the billing dispute with AT&T.

3    There is no evidence here that telephone service was ever actually interrupted.[6/] California

4    contract law does not compensate a party for lost revenue occasioned by the diversion of

5    employee efforts from one activity to another, i.e. investigating and addressing a billing

6    dispute. *[California Civil Code §3300.]*

7           In the absence of some damage claim cognizable under the applicable law, and

8    supported by some evidence, judgment on the first counterclaim for relief in favor of the

9    moving party is proper.

10

11           (2)    <u>ONE OR MORE ELEMENTS OF THE COUNTERCLAIM FOR</u>

12                  <u>BREACH OF ORAL CONTRACT CANNOT BE PROVED</u>

13

14           Damages are an essential element of a claim for breach of contract.[7/] *[Reichert v.*

15    *General Insurance Co., 68 Cal.2d 822, 830 (1968); Acoustics, Inc. v. Trepte Constr. Co., 14*

16    *Cal.App.3d 887, 913 (1971).]* The second counterclaim for relief is entitled, Breach of Oral

17    Contract, and contains no allegation that any damages flowed from the alleged breach.

18    *[Counterclaim (Docket No. 31), pp. 17:18-18:4, ¶¶20-23.]*

19

20    _____

      [6/]*Compare White v. Southern California Edison Co., 25 Cal.App.4th 442, 448 (1994) ("In the*
21    *absence of a contract between the utility and the consumer expressly providing for the furnishing*
      *of a service for a specific purpose, a public utility owes no duty to a person injured as a result of*
22    *an interruption of service or a failure to provide service. ... The mere fact that the utility has*
      *contracted with the consumer to provide a service for general purposes, e.g., water or electricity,*
23    *is not sufficient to create a duty.").]*
24
      [7/]For the breach of an obligation arising from contract, the measure of damages ... is the amount
25    which will compensate the party aggrieved for all the detriment proximately caused thereby, or
      which, in the ordinary course of things, would be likely to result therefrom." *[California Civil*
26    *Code §3300.]* "Whatever the proper measure of damages may be, in a given case, the recovery
27    therefor is still subject to the fundamental rule that damages which are speculative, remote,
      imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *[Leuter v.*
28    *State of California, 94 Cal.App.4th 1285, 1302 (2002).]*

                                                    8

1    The second counterclaim for relief simply alleges "waiver". Waiver is the intentional

2    relinquishment of a known right after knowledge of the facts. *[Roesch v. De Mota, 24 Cal.2d*

3    *563, 572 (1944).]* A "waiver" may be an affirmative defense under the right set of facts, but

4    an allegation of "waiver" does not constitute a claim for affirmative relief. *[Kern Sunset Oil*

5    *Co. v. Good Roads Oil Co., 214 Cal. 435, 440-441 (1931); see also CACI No. 336.]*

6    Therefore, it is not surprising that the counterclaim for relief entitled, Breach of Oral

7    Contract, contains no allegation that any damages flowed from the alleged breach.

8    Moreover, the evidence is undisputed that Dataway has never believed that AT&T had

9    waived its claim involving the charges amounting to $11,534.67.

10    For the same reasons stated with respect to the first counterclaim for relief, in the

11    absence of some damage claim cognizable under the applicable law, and supported by some

12    evidence, judgment on the second counterclaim for relief in favor of the moving party is

13    proper.

14

15    (3)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM FOR

16    FRAUDULENT INDUCEMENT OF CONTRACT CANNOT BE PROVED.

17

18    The third counterclaim for relief for fraudulent inducement of contract is incoherent.

19    At best, like the second counterclaim for relief, it merely sets up an affirmative defense.

20    *[California Civil Code §1572; Grady v. Easley, 45 Cal.App.2d 632, 634 (1941); see also*

21    *CACI No. 335.]* Fraud exists in two forms: (1) As an action for damages based upon fraud

22    and deceit[8]; and, alternatively, (2) As a defense to the enforcement of a contract. *[California*

23

24    [8]The necessary elements of a claim for fraud are: (1) misrepresentation (false representation,
      concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud, i.e., to

25    induce reliance; (4) justifiable reliance; and (5) resulting damage. *[Molko v. Holy Spirit, 46*
      *Cal.3d 1092, 1108 (1988).]* Every element of a claim for fraud must be alleged in full, factually

26    and specifically. *[Federal Rules of Civil Procedure, Rule 9(b).]* Damages allegedly resulting
      from fraud must also be pleaded with particularity. *[Nagy v. Nagy, 210 Cal.App.3d 1262, 1268-*

27    *1269 (1989) ("An allegation of a definite amount of damage is essential to stating a cause of*

28    *action [for fraud].").]*

9

1  *Civil Code §§1572 and 1709.]*[9/]  Fraud is a defense where its presence vitiates consent.

2  *[California Civil Code §§1550 and 1572.]*  No damages for which the law provides relief

3  have been alleged.  No evidence exists that any damages for which the law provides relief

4  have been suffered.[10/]  In the absence of some damage claim cognizable under the applicable

5  law, and supported by some evidence, judgment on the third claim for relief in favor of the

6  moving party is proper.

7

8         (4)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM FOR

9                "SLAMMING" CANNOT BE PROVED

10

11         In order to prevent telecommunications carriers from making unauthorized changes

12  to subscribers' telephone service — a practice known as "slamming" — the

13  Telecommunications Act of 1996 (the "1996 Telecommunications Act") makes it unlawful

14  for telecommunications carriers to "submit or execute a change in a subscriber's selection of

15  a provider of telephone exchange service or telephone toll service except in accordance with

16  such verification procedures as the Commission shall prescribe." *[47 U.S.C. §258(a); AT&T*

17  *Corp. v. FCC 323 F.3d 1081, 1082 (D.C. Cir. 2003).]*

18         The evidence shows that on July 24, 2006, the telephone system owned and operated

19  by Dataway was allegedly compromised by an unauthorized intervening third party accessing

20  the AT&T network by dialing carrier access code 1010288.  No unauthorized changes to a

21  subscriber's telephone service were made by AT&T.  The calls made on July 24, 2006 were

22

23  ────────────────

24  [9/]Part 2 of Division 3 of the California Civil Code, commencing with §1549, describes the nature
     of a contract — The defense of fraud can be found here.  Part 3 of Division 3 of the California

25  Civil Code, commencing with §1708, describes obligations imposed by law — The action for
     fraud and deceit can be found here.

26
     [10/]Fraud and deceit does not exist in a vacuum. *[City of Los Angeles v. Superior Court , 51 Cal.2d*

27  *423, 433 (1959); Hill v. Wrather , 158 Cal.App.2d 818, 825 (1958) ("[F]raud without damage or*
     *injury is not remediable. Deception which does not cause loss is not a fraud in the legal*

28  *sense.").]*

1   not the responsibility of AT&T, but rather a security failure on the part of Dataway.
2   Insufficient evidence exists which supports the "slamming" claim. In the absence of some
3   evidence that unauthorized changes were made by AT&T to Dataway's telephone service,
4   and not the work of some unknown third party, judgment on the fourth counterclaim for
5   relief in favor of the moving party is proper.

7       (5)    ONE OR MORE ELEMENTS OF THE COUNTERCLAIM FOR
8              "TORTIOUS INTERFERENCE" CANNOT BE PROVED

10      The tort cause of action for interference with a contract[11] does not lie against a party
11  to the contract. *[Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 7 Cal.4th 503, 514*
12  *(1994).]* The fifth counterclaim for relief fails to state a claim upon which relief can be
13  granted inasmuch as the only contractual relationship alleged throughout the counterclaim
14  is between AT&T, on the one hand, and Dataway, on the other hand. Moreover, the fifth
15  counterclaim for relief does not plead resulting damages. In the absence of some damage
16  claim cognizable under the applicable law, and supported by some evidence, judgment on
17  the fifth counterclaim for relief in favor of the moving party is proper.

19      (C)    A TELEPHONE CUSTOMER IS LIABLE FOR *ALL* LONG-DISTANCE
20             CALLS MADE FROM ITS ON-PREMISES SYSTEM, REGARDLESS OF
21             WHETHER SUCH CALLS WERE AUTHORIZED OR FRAUDULENT.

22  ///
23  ///

---

25  [11]"The elements which a plaintiff must plead to state the cause of action for intentional
26  interference with contractual relations are (1) a valid contract between plaintiff and a third party;
    (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a
27  breach or disruption of the contractual relationship; (4) actual breach or disruption of the
    contractual relationship; and (5) resulting damage." *[Pacific Gas & Electric Co. v. Bear Stearns*
28  *& Co., 50 Cal.3d 1118, 1126 (1990).]*

1    Through the complaint in this action, AT&T seeks to recover $11,534.67, together

2    with prejudgment interest of $5.69 per day from September 25, 2006 using the rate of 18%

3    per annum pursuant to AT&T Tariff F.C.C. No. 30, Section 3.5.4, for calls placed through

4    the telephone system owned and operated by Dataway by dialing AT&T's carrier access code

5    1010288.

6    A telephone customer is liable for *all* long-distance calls made from its on-premises

7    system[12], regardless of whether such calls were authorized or fraudulent. *[AT & T Corp. v.*

8    *Community Health Group, 931 F. Supp. 719, 723 (S.D.Cal. 1995) (Emphasis in original.).]*

9    The presence of a remote access mechanism, including an off premises computer, does not

10   affect the "origination" determination; calls still "originate" from a customer's system even

11   if access to the system was gained from a remote location. *[AT & T Corp. v. Community*

12   *Health Group, 931 F. Supp. 719, 723 (S.D.Cal. 1995).]*

13   The FCC has held that a party may become an AT&T customer by ordering services

14   in both the more traditionally understood manner or by unauthorized usage involving

15   incoming 800 service calls or LDMTS[13] calls and/or services that originate at the customer's

16   numbers. *[See, e.g. In the matter of Chartways Tech., Inc. v. AT&T, 6 F.C.C.R. 2951, 2954*

17   *(1991) (FCC ruled that a customer was responsible for all of the charges originating at its*

18   *number or numbers, regardless of claims that those charges may or may not have been*

19   *unauthorized.).][14]*

20

21   [12]A PBX system is "a customer-provided private switching system used to facilitate the
     transmission of telephone calls to, from, and within a place of business. It is equipment added to
22   the public telephone network by a customer ... the use of which requires neither the knowledge
23   nor approval of AT & T." *[AT&T v. Jiffy Lube Int'l, Inc. (D. Md. 1993) 813 F. Supp. 1164, 1165,*
     *fn. 1.]*
24

25   [13]LDMTS stands for "long distance message telecommunication service". *[AT&T v. New York*
     *City Human Resource Administration, 736 F.Supp. 496, 497 (1990).]*
26

27   [14]The rule that all calls, fraudulent or not, originating from a number and utilizing AT&T's
     LDMTS calls and/or services makes that party a customer and obligates them to pay those
     charges has been applied in numerous cases, including *AT&T Corp. v. Fleming and Berkeley,*
28   *131 F.3d 145 (1997), AT&T v. Intrend Ropes & Twines. Inc., 944 F.Supp 701 (1996), AT&T*

1    In the case of *FCC v. W.C.N. Listeners Guild*, *450 U.S. 582 (1981)*, the Supreme

2    Court followed its previously enunciated rule that "the construction of a statute by those

3    charged with its execution should be followed unless there are compelling indications that

4    it is wrong...." *[FCC v. W.C.N. Listeners Guild*, *450 U.S. 582, 598 (1981).]* Therefore, this

5    court must therefore give deference to the rule enunciated by the FCC that a customer is

6    responsible for all of the charges originating at its telephone number or numbers, regardless

7    of whether that party claims that those charges were not authorized. In fact, other courts

8    when presented with this identical situation have followed this rule.

9    For example, in *AT&T v. New York City Human Resource Administration*, *833*

10   *F.Supp. 962 (1993)*, the court was asked to rule on AT&T's motion for summary judgment

11   seeking payment of LDMTS services which the New York City Human Resources

12   Administration and the City of New York claimed should not be paid because they were the

13   result of unauthorized third party toll fraud. The court concluded that the defendants were

14   in fact customers of AT&T notwithstanding that the toll calls were fraudulent and held that

15   AT&T was entitled to summary judgment. *[AT&T v. New York City Human Resource*

16   *Administration*, *833 F.Supp. 962, 973 (1993).]*

17   In *AT & T Corp. v. Community Health Group*, *931 F. Supp. 719 (S.D.Cal. 1995)*, the

18   court was faced with a situation almost identical to that presented here. In that case, the court

19   granted AT&T's motion for summary judgment, finding that Community Health Group was

20   liable for payment of LDMTS charges, even though those charges were the result of

21   unauthorized and fraudulent usage of their telephone system. The court noted that

22   Community Health Group was a "customer" even though it did not affirmatively order

23   AT&T LDMTS and had pre-subscribed for long distance service with an entirely different

24   carrier. The court concluded that all of the applicable authority clearly supported AT&T's

25   ///

26   

27   *Corp. v. Community Health Group*, *F.Supp 719 (1995)*, *AT&T v. Jiffy Lube International, Inc.*,

28   *813 F.Supp 1164 (1993)* and *Industrial Leasing Corporation v. GTE Northwest. Incorporated*, *818 F.Supp 1371 (1992)*.

13

1 | position that it was entitled to summary judgment. *[AT & T Corp. v. Community Health*
2 | *Group, 931 F. Supp. 719, 722-725 (S.D.Cal. 1995).]*

3 |     Since there is no dispute that the calls originated from Dataway's system and account
4 | numbers, the fact that Dataway alleges that they were unauthorized and fraudulent is simply
5 | irrelevant to the disposition of this claim. Although the use of those numbers may have in
6 | fact been unauthorized, the law is clear that the Dataway is and was, for the purposes of this
7 | matter, a customer of AT&T and is required to pay the charges. *[See e.g., AT&T Corp v.*
8 | *Fleming and Berkeley, 131 F.3d 145 (1997), AT&T v. Intrend Ropes & Twines , Inc., 944*
9 | *F.Supp. 701 (1996), AT&T Corp. v. Community Health Group, 931 F.Supp. 719 (1995),*
10 | *AT&T v. Jiffy Lube International, Inc, 813 F.Supp 1164 (1993), Industrial Leasing*
11 | *Corporation v. GTE Northwest.Inc., 818 F.Supp. 1372 (1992) and AT&T v. New York City*
12 | *Human Resources Administration, 833 F.Supp 962 (1993).]*

13 |     "[T]he repeated occurrence of remote access fraud does not create a general duty on
14 | AT&T's part to warn its LDMTS customers the possibility of unauthorized access to their
15 | PBX because the applicable tariff does not impose such a duty." *[AT&T v. New York City*
16 | *Human Resources Administration, 833 F.Supp 962, 977 (1993).]* There is no evidence that
17 | can be offered by Dataway that AT&T was responsible for the installation and maintenance
18 | of Dataway's telephone system. In fact, exactly the opposite is true. Therefore, there is no
19 | duty owed by AT&T to Dataway to prevent the toll fraud alleged by Dataway.

20 |     For the foregoing reasons, AT&T is entitled to summary judgment on the complaint
21 | or partial summary judgment as to the first and/or second claims for relief.

22 |

23 |     (D)    IF THIS MOTION IS DENIED, THIS COURT SHOULD ENTER AN
24 |     ORDER SPECIFYING WHAT FACTS ARE NOT GENUINELY AT ISSUE AND
25 |     WHAT ISSUES ARE WITHOUT SUBSTANTIAL CONTROVERSY —
26 |     INCLUDING ITEMS OF DAMAGES OR OTHER RELIEF.

27 | ///
28 | ///

1    If the Court determines that summary judgment or partial judgment would be

2  improper on this record, the Court is requested, after examining the pleadings and evidence

3  before it and by interrogating the attorneys, to enter an order specifying what facts are not

4  genuinely at issue and what issues are without substantial controversy — including items of

5  damages or other relief — pursuant to <u>Federal Rules of Civil Procedure</u>, Rule 56(d)(1),

6  <u>Williams v. Sinclair</u>, 529 F.2d 1383 (9th Cir. 1975), and USDC, ND CA Local Rule 56-3.

7

8  3.    <u>CONCLUSION</u>

9

10    For the foregoing reasons, this Court should enter an order granting summary

11  judgment or partial summary judgment in favor of Plaintiff AT&T Corp. on the complaint,

12  and/or the counterclaim, or one or more of the claims stated therein, or alternatively, grant

13  any other relief the circumstances require under <u>Federal Rules of Civil Procedure</u>, Rule

14  56(d)(1).

15

16  DATED: July 1, 2008                AIRES LAW FIRM

17

18                                        By: _____
                                        Timothy Carl Aires, Esq.
19                                        Attorney for Plaintiff and Counterdefendant,
                                        AT&T CORP.
20

21

22

23

24

25

26

27

28

## REQUEST FOR JUDICIAL NOTICE

REQUEST IS HEREBY MADE pursuant to <u>Federal Rules of Evidence</u>, Rule 201 that this Court take judicial notice of the following:

1.      The Complaint of Plaintiff AT&T Corp. (Docket No. 1).

2.      The Answer of Defendant Dataway Inc. dba Dataway Designs (Docket No. 31).

3.      The Counterclaim of Counterclaimant Dataway Inc. dba Dataway Designs (Docket No. 31).

4.      The Declaration of Anne-Leith Matlock in Support of Answer to Complaint Filed by AT&T and Counterclaim (Docket No. 32).

5.      The Declaration of Simon Lewis in Support of Answer to Complaint Filed by AT&T Corp. and Counterclaim (Docket No. 32-4).

6.      The Declaration of Anne-Leith Matlock in Support of Motion to Dismiss Complaint Filed by AT&T Corp. (Docket No. 56).

7.      The Declaration of Simon Lewis in Support of Motion to Dismiss Complaint Filed by AT&T Corp. (Docket No. 56-4).

8.      47 C.F.R. §61.19.

///

///

///

1     9.     In re Motion of AT&T Corp. to be Reclassified as a Non-Dominant Carrier,

2   Order in FCC 95-427, para. 1 (Oct. 23, 1995).

3

4     10.     AT&T Tariff No. 30.

5

6   DATED: July 1, 2008                    AIRES LAW FIRM

7

8                                          By:_____

9                                             Timothy Carl Aires, Esq.
                                              Attorney for Plaintiff and Counterdefendant,
                                              AT&T CORP.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DECLARATION OF JAMES LAKE</u>

I, JAMES LAKE, declare as follows:

1.    The following facts are of my own personal, first-hand knowledge, and if called and sworn to testify thereto, I could and would competently do so.

2.    I am employed by AT&T in the capacity of AT&T Area Manager.  I am responsible for management of the Fraud Resolution Group (FRG), Shortfall Termination Analysis Team (STAT) and the Customer Refund Investigations Team.  I handle results reporting, escalations from internal and external customers, adjustment approvals, serve as a liaison between Sales, Legal and CFO, and supervise a team of eighteen management and non management employees.  In this capacity, I am familiar with the operations of AT&T and the nature, source and extent of relationships between AT&T and its "customers" as well as the tariffs governing those relationships.

3.    AT&T is a corporation organized and existing under the laws of the State of New York with its principal place of business located at 1 AT&T Way, Bedminster, New Jersey and, therefore, a citizen of the State of New Jersey, authorized to do business in the State of California and is a common carrier providing telecommunications services under published tariffs.

4.    AT&T Tariff 30, Section 5, "Casual Calling Services", a true and correct copy of which is attached hereto as Exhibit "A", permits callers who are not pre-subscribed to AT&T to access AT&T's switched network for completion of their state-to-state and international dial station calls by dialing carrier access code, 1010288.  AT&T Tariff 30 is filed with the Federal Communications Commission under 47 C.F.R. §61.19.  My investigation indicates that on July 24, 2006, the telephone system owned and operated by

1

1   Dataway Inc. dba Dataway Designs ("Dataway") was allegedly compromised by an

2   unauthorized intervening third party accessing the AT&T network by dialing carrier access

3   code 1010288 which created an entirely new account for Dataway. Our investigation

4   determined that no unauthorized changes to a subscriber's telephone service were made by

5   AT&T. Our investigation determined that the calls made on July 24, 2006 were not the

6   responsibility of AT&T, but rather a security failure on the part of Dataway if the calls were

7   indeed unauthorized. AT&T did not contract to, or otherwise had a duty to, prevent access

8   through the telephone system owned and operated by Dataway to the AT&T network by

9   dialing carrier access code 1010288.

10

11      5.      In my employment capacity, I am familiar with the methods used in making

12  database entries and maintaining the records of the accounts receivables and other documents

13  reflecting of agreements and contracts of my employer which are made or entered into in the

14  regular course of business, and are made at or near the time of the occurrence of the

15  transactions which are recorded or otherwise documented. I can, and do, as an employee of

16  my employer, testify to the identity of said records and documents and their mode of

17  preparation and maintenance. The records and documents accompanying this declaration

18  were created, executed and/or received by employees of my employer in the regular course

19  of business and are maintained in the files of my employer. My employer periodically

20  generates invoices for telecommunications services provided by my employer for our various

21  customers. As a result of my employment duties, I am familiar with the mode of preparation

22  of my employer's invoices and other accounting records and the maintenance of those

23  records after invoices are generated and sent to our customers. Through the assignment of

24  a customer account number, data integrity is maintained throughout our billing process to

25  insure that a particular customer is only billed for telecommunications services rendered to

26  it. With respect to Dataway's access to the AT&T network by dialing carrier access code

27  1010288, the customer account number 0517883374001 has been assigned. After

28  telecommunications services are provided by my employer to our various customers, the data

2

1    concerning the telecommunications services provided is transmitted to the accounting

2    department. The accounting department then use the data concerning work performed in

3    generating invoices for each customer through our computerized accounting system. Once

4    the invoices are generated, the invoices are placed in addressed, sealed envelopes, postage

5    prepaid, and then mailed to the various customers. Copies of the invoices are then

6    maintained in our records in either hard-copy of electronic form, as the case may be. Those

7    copies are stored in our accounting files. Once generated, the information contained on the

8    invoices is then memorialized on a statement or statements of account as part of my

9    employer's accounts receivable computer data base. The statement of account reflects the

10   debits and credits to the account of Dataway.

11

12   6.    Dataway was billed for the charges incurred when its telephone system was

13   allegedly compromised on July 24, 2006 by a written invoice, a true and correct copy of

14   which is attached hereto as Exhibit "B". AT&T provided telecommunications services to

15   Dataway pursuant to AT&T Tariff F.C.C. No. 30 which makes Dataway liable for the

16   payment of charges for calls placed using its system through the AT&T network by dialing

17   carrier access code 1010288. These charges amount to $11,534.67 and were included on an

18   invoice presented to Dataway. Pursuant to AT&T Tariff F.C.C. No. 30, payment was due

19   upon presentation of the invoice.

20

21   7.    The records of AT&T show that neither the whole nor any part of the amount

22   due has been paid by Dataway, although demand therefor has been made by AT&T through

23   invoicing and other collection efforts. The records of AT&T show that there is now due and

24   owing from Dataway to AT&T the sum of $11,534.67, together with prejudgment interest

25   ///

26   ///

27   ///

28   ///

1  of $5.69 per day from September 25, 2006 using the rate of 18% per annum pursuant to

2  AT&T Tariff F.C.C. No. 30, Section 3.5.4.

3

4      I declare under penalty of perjury under the laws of the State of California and the

5  United States of America that the foregoing is true and correct and that this Declaration was

6  executed on this 30 th day of June , 2008 at Bedminster, New Jersey.

7

8                         James C. Lake
                          JAMES LAKE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

## DECLARATION OF TIMOTHY CARL AIRES

I, TIMOTHY CARL AIRES, hereby declare and state as follows:

1.      The following facts are of my own personal, first-hand knowledge, and if called and sworn to testify thereto, I could and would competently do so.

2.      I am an attorney at law, duly licensed to practice before all courts of the State of California as well as this Court and am a member of the Aires Law Firm, counsel for Plaintiff and Counterdefendant AT&T Corp.

3.      Attached hereto as Exhibit "C" is a true and correct copy of Responses of Dataway Inc. to Special Interrogatories, Set No. One.

4.      On April 15, 2008, I took the deposition of Francisco J. Molieri pursuant to Federal Rules of Civil Procedure, Rule 30 before a certified court reporter licensed to administer oaths in the State of California.  Attached hereto as Exhibit "D" are true and correct copies of the following pages: 1-4,16-20, 26-35, 58-59

5.      On April 15, 2008, I took the deposition of Simon Lewis pursuant to Federal Rules of Civil Procedure, Rule 30 before a certified court reporter licensed to administer oaths in the State of California.  Attached hereto as Exhibit "E" are true and correct copies of the following pages: 1-4, 8-11, 47-48

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this 1st day of July, 2008, in Newport Beach, California.

TIMOTHY CARL AIRES

1