1  **Matlock Law Group,** A Professional Corporation
2  Anne-Leith W. Matlock, SBN 244351
   1485 Treat Blvd., Suite 200
3  Walnut Creek, CA 94597
   Telephone: 925-944-7131
4  Facsimile: 925-944-7138
   e-mail: anne-leith@matlocklawgroup.com
5
   Attorneys for Defendant and Counterplaintiff,
6  DATAWAY.

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12 | AT&T CORP.                      | CASE NO. C07-02440 EDL
13 |         PLAINTIFF,              |
14 |    v.                           | RESPONSE TO PLAINTIFF'S AND
   |                                 | COUNTERDEFENDANT'S FIRST SET OF
15 |                                 | SPECIAL INTERROGATORIES
   | Dataway, Inc.                   | PROPOUNDED TO DEFENDANT AND
16 |                                 | COUNTERCLAIMANT DATAWAY
17 |         DEFENDANTS.             | [F.R.C.P. Rule 33]

18 | Dataway, Inc.
19 |         COUNTERCLAIMANT
20 |    v.
21 | AT&T Corp.
22 |         COUNTERDEFENDANT
23

24

25 PROPOUNDING PARTY:   AT&T CORPORATION

26 RESPONDING PARTY:    DATAWAY INC.

27 INTERROGATORY SET:   SET ONE

28

---

EXHIBIT C

Responding party, Dataway, the Defendant and Counterclaimant in the above case, makes the following response to AT&T's first set of interrogatories, served on responding party on March 13, 2008.

## GENERAL OBJECTIONS AND RESERVATIONS OF RIGHTS:

1. Responding party has not completed an investigation of the facts relating to this case, discovery or preparation for trial, and the following responses are given subject to this responding party's right to supplement its discovery responses should other information subsequently be discovered. It is anticipated that further fact and expert discovery, independent investigation, legal research and analysis will supply additional facts, add meaning to known facts, as well as establish entirely new factual conclusions and legal contentions, all of which will lead to substantial additions to, changes in, and variations from the contentions set forth herein.

2. Responding party objects to these interrogatories to the extent that they seek information that is neither relevant to the subject matter of, nor within the time period relevant to, these proceedings, nor reasonably calculated to lead to the discovery of admissible evidence.

3. Responding party objects to these interrogatories to the extent that they seek information, which has previously been given through disclosure and pleadings, related to this litigation.

4. Responding party objects to these interrogatories to the extent that they seek information that is privileged under the attorney-client privilege, the attorney-work product rule, or any other applicable privilege, or constitute trade secrets and other private information not subject to disclosure.

5. Responding Party objects to these interrogatories to the extent they seek information which is unreasonably cumulative and duplicative, obtainable from another source that is more convenient, less burdensome, or less expensive, or that the propounding party had ample opportunities to obtain.

6. Responding Party objects to these interrogatories to the extent they are overbroad, vague, ambiguous and unintelligible as to time and place.

7. Responding Party objects to these interrogatories to the extent they are premature and seek expert discovery.

8. Each response is subject to all objections as to competence, relevance, materiality, propriety, and admissibility. Each response is subject to any and all other objections on any grounds that would require the exclusion of any statements contained therein if such document requests were asked of, or statements contained therein were made by, a witness present and testifying in court. All of the above-stated objections and grounds therefore are expressly reserved and may be interposed at the time of trial.

Subject to Such General Objections and Reservation of Rights, Each of which is Specifically Incorporated into Each Response Set Forth Below, this Responding Party Submits the Following Responses:

## RESPONSES

**Interrogatory Number 1:**

State all facts which YOU (which means DATAWAY INC. AND DBA DATAWAY DESIGNS) contend supports or proves YOUR (which means DATAWAY INC. AND DBA DATAWAY DESIGNS) first claim for relief for breach of express contract.

**Response Number 1:**

Objection. Responding Party reserves the right to further supplement and/or amend its response to conform to proof. Responding party objects on the ground that this interrogatory seeks information, which has previously been given through disclosure and pleadings, related to this litigation. Without waiving said or any other objections, Dataway responds as follows:

In January 2003, Dataway consolidated all its business telecommunication services with SBC ("Letter of Agency") as its sole and exclusive telecommunication carrier.

Collateral to this agreement, SBC/AT&T committed itself to its Anti Slamming Agreement (Carrier Slamming Protection Form) that an unauthorized switching of carriers would be impermissible.

With the acquisition of SBC, AT&T assumed all existing agreements between SBC and its telecommunication customers. Since that time, AT&T has not presented any new conditions or attempted to change the original contract in any other manner.

Dataway has fully performed all obligations it was required to perform. In particular, Dataway made and still makes all payments for Dataway's authorized accounts with AT&T covering SBC/AT&T's contractual usage charges.

On July 24, 2006, AT&T violated its above stated contractual duties by failing to prevent hackers from illegally accessing the voice mail system Dataway maintained with SBC/AT&T using AT&T's Legacy T network and by opening a Legacy T account without Dataway's authorization. Hence, it did allow the creation of an account for Dataway without any authorization only because the routing number of the calls pointed to Dataway. The hackers were not prevented from executing five calls to the Philippines generating charges in the amount of $ 11,534.6. Regarding the hacked calls through MCI, AT&T informed Dataway that $ 12,345.97 had been removed.

When Dataway complained about the bill for the unauthorized account, AT&T sent a Disconnect Notice on November 3, 2006, threatening Dataway to disconnect its authorized accounts if payment for the unauthorized account was not made immediately.

This conduct led to damages as set forth in response to interrogatory Number 6.

**Interrogatory Number 2:**

State all facts which YOU contend supports or proves YOUR second claim for relief for breach of oral contract.

**Response Number 2:**

Objection. Responding Party has not completed its preparation for trial and, therefore, reserves the right to further supplement and/or amend its response to conform to proof. Responding party further objects on the ground that this interrogatory seeks information, which has previously been given through disclosure and pleadings, related to this litigation. Without waiving said or any other objections Dataway responds as follows:

AT&T/SBC's Letter of Agency (Service Agreement) and the Anti-Slamming Agreement in conjunction with oral assurances that AT&T would impose security means restricting unauthorized or illegal access by third parties. Such implied warranty is also prescribed by 47 U.S.C. § 258(a) and its implementing F.C.C. Regulations which shall prevent telecommunication carriers from making unauthorized changes to subscribers' telephone service. According to these rules AT&T was also obliged to arrange for protection against unauthorized changes to Dataway's telephone service. Dataway changed position by continuing to commit and consolidate all of its telecommunication with AT&T/SBC.

In July 2007 Dataway contacted AT&T's local managers regarding the charges on the unauthorized Legacy T account totaling $ 11,534,67. On September 20, 2007 Dataway contacted AT&T's local managers and requested the removal of the disputed charges from its accounts. AT&T provided a fraud form to Dataway and represented AT&T would waive its charges for the fraudulent calls once Dataway formally disputed them by submitting this form completed with the necessary information. Again, in mid October 2006, AT&T's Fraud Resolution Group reassured Dataway that steps on Dataway's part were not necessary and would slow AT&T's investigations. That it would take two to three billing cycles to come to resolution.

On November 10, 2006, Dataway submitted a written denial of the Legacy T charges and sent the duly completed fraud form to AT&T's Fraud Resolution Group with copies to AT&T.

Thereupon, AT&T assured Dataway that he AT&T Fraud Group was attempting to restore the matter that Dataway's account would not be jeopardized during this process, and that AT&T was in the process of recoursing the charges on Dataway's account. Furthermore, AT&T stated on the Legacy T service bill for November 2007 that a credit adjustment of $ 11,534.67 was applied and that the total balance due is hence $ 0.00.

Despite these repeated assurances by AT&T, Dataway was informed in December 2006 that Dataway is allegedly fully liable for the disputed Legacy T charges. Dataway filed an informal complaint on F.C.C. on December 8, 2006 in which he was told that AT&T will be served and would have 30 to 40 days to reply. An insufficient settlement offer of a 35% discount of the total unauthorized Legacy T account was submitted by phone in November 2006 and increased to 50% on December 14, 2007. On or before early January 2007, F.C.C. informed Dataway that its informal complaint was referred to C.P.U.C. In mid January 2007, Dataway was informed that AT&T referred the dispute to an attorney for collection, and on January 29, 2007, the collection attorney demanded payment within 5 days or threatened judicial enforcement of its alleged claims otherwise. Moreover, on February 1, 2007 Dataway called an F.C.C. agent and was informed that once AT&T had offered discount to settle the dispute, it disabled F.C.C. from further involvement and barred Dataway's remedy.

This conduct led to damages as set forth in response to interrogatory Number 6.

**Interrogatory Number 3:**

State all facts which YOU contend supports or proves YOUR third claim for relief for fraudulent inducement to contract.

**Response Number 3:**

Objection. Responding Party has not completed its preparation for trial and, therefore, reserves the right to further supplement and/or amend its response to conform to proof. Responding party further objects on the ground that this interrogatory seeks information, which

has previously been given through disclosure and pleadings, related to this litigation. Without waiving said or any other objections Dataway responds as follows:

In January 2003, Dataway consolidated all its business telecommunication services with SBC as its sole and exclusive telecommunication carrier. In the service contract the parties furthermore agreed that AT&T will charge a contractual long distance plan rate of $ 0.30 per minute.

Collateral to this agreement, SBC/AT&T executed a Carrier Slamming Protection Agreement which prohibited an unauthorized switching of carriers. SBC/AT&T made the affirmative representation that Dataway would be only responsible for charges in accordance with these agreements and accruing pursuant to its contractual rates.

In mid October 2006, AT&T's Fraud Resolution Group reassured Dataway that steps on Dataway's part were not necessary and would slow AT&T's investigations. That it would take two to three billing cycles to come to resolution.

Moreover, Dataway had conversations with AT&T personnel in which they advised that they were aware of a pattern of fraudulent calls and that such incidents were epidemic. Despite this knowledge SBC/AT&T made such representations and reassured Dataway that its contracts will be continued by AT&T after it acquired SBC and that anti-slamming protection would continue. This was done with the intent to induce Plaintiff to remain a customer of SBC/AT&T.

Dataway relied on SBC/AT&T's representations as well as on AT&T's faithful assumption of SBC's business and its obligations, in particular the express and/or implied agreement as contracted for in the Anti-Slamming Agreement. Furthermore, Dataway relied on AT&T's representation that Dataway would not be charged anything but its contractual rate for the services authorized. Due to a lack of prior negative incidents it had no reason to doubt AT&T's representations and was justified in relying on them because of AT&T's prior treatment of reversing charges from non-contractual carriers. On Dataway's summary bill of its authorized accounts which was submitted in two separate statements with closing date August and September 7, 2007, AT&T charged Dataway for different calls not subject to the dispute at

hand which were executed through different carriers and hence, were also a result of the inefficient anti-slamming protection by AT&T. AT&T inconsistently waived the charges for only the two main carriers MCI and Sprint in an amount of $ 12,345.57 but sustained charges for the minor carriers in an amount of $ 1,238.75. Dataway has paid the charges for the smaller carriers.

Additionally, AT&T barred Dataway from pursuing its informal remedy. Dataway filed an informal complaint on F.C.C. on December 8, 2006 in which he was told that AT&T will be served and would have 30 to 40 days to reply. AT&T submitted an insufficient settlement offer of a 35% discount of the total unauthorized Legacy T account by phone in November 2006 and increased it to 50% on December 14, 2007. On or before early January 2007, F.C.C. informed Dataway that its informal complaint was referred to C.P.U.C. In mid January 2007, Dataway was informed that AT&T referred the dispute to an attorney for collection, and on January 29, 2007, the collection attorney demanded payment within 5 days or threatened judicial enforcement of its alleged claims otherwise. Moreover, on February 1, 2007 Dataway called an F.C.C. agent and was informed that once AT&T had offered discount to settle the dispute, it disabled F.C.C. from further involvement and barred Dataway's remedy.

This conduct led to damages as set forth in response to interrogatory Number 6.

**Interrogatory Number 4:**

State all facts which YOU contend supports or proves YOUR fourth claim for relief for violation of the Telecommunication Act (Slamming).

**Response Number 4:**

Objection. Responding Party has not completed its preparation for trial and, therefore, reserves the right to further supplement and/or amend its response to conform to proof. Responding party further objects on the ground that this interrogatory seeks information which has previously been given through disclosure and pleadings, related to this litigation. Without waiving said or any other objections Dataway responds as follows:

The parties entered into an Anti-Slamming agreement. On July 24, 2006 hackers compromised Dataway's voice mail system and generated international calls which AT&T billed on a new, unauthorized account without Dataway's knowledge or consent.

On Dataway's summary bill of its authorized accounts which was submitted in two separate statements with closing date August and September 7, 2007, AT&T charged Dataway for different calls not subject to the dispute at hand which were executed through different carriers and hence, also a result of the inefficient anti-slamming protection by AT&T. AT&T inconsistently waived the charges for only the two main carriers MCI and Sprint in an amount of $ 12,345.57 but sustained charges for the minor carriers in an amount of $ 1,238.75. Dataway has paid the charges for the smaller carriers.

Due to repeated incidents, complaints and published articles, AT&T had knowledge that this pattern of illegal usage of voice mail systems by unauthorized third parties had occurred frequently and that its automated computer system was an insufficient means to protect its customers from this third party interference. The system was used to contact customers and determine whether they were willing to accept charges for long distance telephone calls placed from a telephone other than the customer's telephone. However, it failed to recognize prerecorded responses and, therefore, did not recognize when it was communicating with another machine and not a human or, in particular, the authorized account holder. Despite this knowledge, AT&T failed to provide for adequate means to protecting customers, in particular Dataway, from fraudulent calls.

Dataway never gave permission for the creation of an account on the Legacy T network and, in fact, did not have knowledge of the execution of these calls until it received AT&T's bill in which AT&T claimed charges calculated pursuant to the Legacy T network tariff. Dataway had never contracted for this rate and it was not part of its tariff.

AT&T failed to notify Dataway of a service change and did not undertake any adequate resolution or verification procedures as prescribed by the F.C.C.

This conduct led to damages as set forth in response to interrogatory Number 6.

1 **Interrogatory Number 5:**

2 State all facts which YOU contend supports or proves YOUR fifth claim for relief for
3 tortuous interference with contractual relations.

4 **Response Number 5:**

5 Objection. Responding Party has not completed its preparation for trial and, therefore,
6 reserves the right to further supplement and/or amend its response to conform to proof.
7 Responding party further objects on the ground that this interrogatory seeks information, which
8 has previously been given through disclosure and pleadings, related to this litigation. Without
9 waiving said or any other objections Dataway responds as follows:

10 Dataway hereby incorporates by reference the above stated facts representing that
11 SBC/AT&T was Dataway's sole and exclusive business telecommunication carrier.

12 On July 24, 2006 hackers illegally accessed the voice mail system Dataway maintained
13 with SBC/AT&T using AT&T's Legacy T network.

14 AT&T had superior authority and control over the account Dataway maintained with
15 AT&T and had the exclusive ability to track and prevent unauthorized access and usage. AT&T
16 recklessly failed to provide sufficient means to impede or prevent such illegal activity.

17 Moreover AT&T's creation and billing of Legacy T network services was an intentional
18 interference with the existing relationship Dataway had with SBC/AT&T.

19 In January 2003, Dataway and SBC/AT&T entered into a service contract. Ms.
20 Carswell's e-mails show that AT&T knew of this business relationship and also due to its
21 regular business activities it should have known of this contract.

22 Nevertheless, AT&T created an account without Dataway's knowledge let alone its
23 authorization because an unknown third person or persons illegally accessed the voice mail
24 system Dataway maintained with AT&T using AT&T's Legacy T network to make calls to the
25 Philippines. AT&T sent a bill to Dataway with charges well in excess of its actual contractual
26 rate for Dataway's original service contract.

27
28

Upon Dataway's dispute of the charges AT&T sent a disconnect notice threatening the termination of the service that Dataway had contracted for its business telecommunication, the original SBC/AT&T account.

Additionally, the threatening to disconnect Dataway's authorized telecommunication account on two separate occasions distracted Dataway from primary duties owed to its existing contractual clients and threatened to totally disrupt Dataway's ability to comply with its contractual obligations to its clients.

This conduct led to damages as set forth in response to interrogatory Number 6.

**Interrogatory Number 6:**

Itemize by nature, source and extent the damages YOU claim YOU have suffered as the result of a breach of legal duty owed to YOU by AT&T Corporation.

**Response Number 6:**

Objection. Responding party objects on the ground that this interrogatory seeks information, which has previously been given through disclosure and pleadings, related to this litigation. Responding Party further objects to this interrogatory to the extent they are premature and seek expert discovery. Responding Party further objects on the grounds that this interrogatory seeks information that is privileged under the attorney-client privilege, the attorney-work product rule, or any other applicable privilege, or constitute trade secrets and other private information not subject to disclosure. Without waiving said or any other objection, Dataway responds as follows:

AT&T's willful and deliberate actions led to non-contractual and excessive unauthorized service charges in the amount of $ 11,534.67 and $ 1,238.75 wrongfully demanded from Dataway.

Dataway does not yet have a complete estimate of the damages sustained but asserts as an tentative estimate that its damages include additionally, but are not limited to,

1 expenditures of time, an interruption of its business, and other expenses while attempting to
2 resolve the dispute amicably in the amount of $ 57,200.00 as follows:
3     a. $ 7,200.00 for 144 hrs time expenditure of Francisco Molieri with an hourly
4        rate of $ 50.00,
5     b. $ 10,000.00 for 40 hrs time expenditure of Simon Lewis with an hourly rate of
6        $ 250.00, and
7     c. $ 40,000.00 business interruption
8     Whatever Dataway's damages are proven to be, 47 U.S.C. § 258 provides for
9 treble damages, together with interest, costs and attorney fees.
10
11 **Interrogatory Number 7:**
12     State all facts which support YOUR contention that "In January 2003 [YOU]
13 consolidated all its business telecommunication services with SBC/AT&T which in turn set up a
14 slamming protection, a means to prevent the switching of telecommunication services in
15 accordance with the Telecommunication Act and the F.C.C. Anti-Slamming Regulations. See
16 Letter of Agency and Carrier Slamming Protection Form..."
17 **Response Number 7:**
18     Objections and responses regarding this issue have been given already.
19 See Response Number 1, 2 and 4.
20
21
22 **Interrogatory Number 8:**
23     State all facts which support YOUR contention that "On July 24, 2006 fraudulent calls
24 were made through [YOUR] existing voice mail system using AT&T's Legacy T network, a
25 service [YOU] never subscribed to and an account that was never authorized by [YOU]."
26 **Response Number 8:**
27     Objections and responses regarding this issue have been given already.
28

EXHIBIT C

See Response Number 1 through 5.

**Interrogatory Number 9:**

State all facts which support YOUR contention that "Agents and Employees of AT&T found that only the unauthorized calls' routing number pointed to Dataway, but that [YOU] did not execute the calls."

**Response Number 9:**

Objections and responses regarding this issue have been given already. See Response Number 1 through 5.

**Interrogatory Number 10:**

State all facts which support YOUR contention that "The parties conferred, and AT&T assured [YOU] that AT&T would waive the charges for the fraudulent calls once [YOU] disputed them, because this pattern of illegal usage recently had occurred frequently."

**Response Number 10:**

Objections and responses regarding this issue have been given already. See Response Number 2 through 5.

**Interrogatory Number 11:**

State all facts which support YOUR contention that "The Letter of Agency and the Carrier Slamming Protection constitute legally binding, enforceable and reasonable contracts between SBC, and its successor AT&T, and [YOU]."

**Response Number 11:**

Objections and responses regarding this issue have been given already. See Response Number 1 through 5.

1  **Interrogatory Number 12:**
2      State all facts which support YOUR contention that "On July 24, 2006, hacker [sic]
3  illegally accessed the voice mail system [YOU] maintained with AT&T using AT&T's Legacy
4  T network."
5  **Response Number 12:**
6      Objections and responses regarding this issue have been given already.
7  See Response Number 1 through 5.
8
9  **Interrogatory Number 13:**
10     State all facts which support YOUR contention that "In August 2006, AT&T billed
11 [YOU] for the five calls made by these hackers to the Philippines from another, external
12 account but with [YOUR] routing number."
13 **Response Number 13:**
14     Objections and responses regarding this issue have been given already.
15 See Response Number 1 through 5.
16
17 **Interrogatory Number 14:**
18     State all facts which support YOUR contention that "After [YOU] contacted AT&T's
19 local managers on September 20, 2006, and requested the removal of the disputed charges from
20 [YOUR] accounts, AT&T represented to [YOU] that AT&T would waive its charges for the
21 fraudulent calls once [YOU] formally disputed them."
22 **Response Number 14:**
23     Objections and responses regarding this issue have been given already.
24 See Response Number 1 through 5.

1  **Interrogatory Number 15:**
2      State all facts which support YOUR contention that "Even though the threatened
3  disconnection was suspended [YOU were], once again, reassured that AT&T would drop all
4  charges, [YOU] was notified in January 2007, that AT&T referred the dispute to an attorney for
5  collection and would judicially enforce its alleged claims."
6  **Response Number 15:**
7      Objections and responses regarding this issue have been given already.
8  See Response Number 1 through 5.
9

10 **Interrogatory Number 16:**
11     State all facts which support YOUR contention that "SBC/AT&T confirmed in its
12 Carrier Slamming Protection Agreement that a switching of carriers would be impermissible
13 and that [YOU] would be responsible only for charges for which [YOU] had contracted."
14 **Response Number 16:**
15     Objections and responses regarding this issue have been given already.
16 See Response Number 1 through 5.
17

18 **Interrogatory Number 17:**
19     State all facts which support YOUR contention that "SBC/AT&T included this
20 protection in accordance with 47 U.S.C. § 258(a) and its implementing F.C.C. Regulations
21 preventing telecommunication carriers from making unauthorized changes to subscribers'
22 telephone service."
23 **Response Number 17:**
24     Objections and responses regarding this issue have been given already.
25 See Response Number 1 through 5.
26
27
28

Matlock Law Group, PC.

RESPONSE TO AT&T'S SPECIAL INTERROGATORIES

15

CASE NO. C07-02440 EDL

EXHIBIT C

**Interrogatory Number 18:**

State all facts which support YOUR contention that "SBC/AT&T knew or should have known at all times relevant to this dispute that such a slamming device was not an appropriate means, in particular with regard to the imminent acquisition of SBC by AT&T."

**Response Number 18:**

Objections and responses regarding this issue have been given already. See Response Number 1 through 5.

**Interrogatory Number 19:**

State all facts which support YOUR contention that "This supports that SBC/AT&T knew and did not intend to protect [YOU] from switching between different services as required by 47 U.S.C. § 258(a)."

**Response Number 19:**

Objections and responses regarding this issue have been given already. See Response Number 1 through 5.

**Interrogatory Number 20:**

State all facts which support YOUR contention that "Due a lack of protection against unauthorized calls, hackers were able to access Dataway's voice mail system on July 24, 2007."

**Response Number 20:**

Objections and responses regarding this issue have been given already. See Response Number 1 through 5.

**Interrogatory Number 21:**

State all facts which support YOUR contention that "According to the strict liability standard imposed by the anti-slamming rules AT&T is liable for any charges from the resulting unauthorized calls."

**Response Number 21:**

Objections and responses regarding this issue have been given already. See Response Number 1 through 5.

**Interrogatory Number 22:**

State all facts which support YOUR contention that "In violation of 47 U.S.C. § 258(a) AT&T did not provide adequate means for protecting [YOU] from these calls that were made to the Philippines using a service [YOU] never authorized nor subscribed for, namely the Legacy T Network."

**Response Number 22:**

Objections and responses regarding this issue have been given already. See Response Number 1 through 5.

**Interrogatory Number 23:**

State all facts which support YOUR contention that "The hackers purposefully chose a voice mail system set up with AT&T."

**Response Number 23:**

Objections and responses regarding this issue have been given already. See Response Number 1 through 5.

**Interrogatory Number 24:**

State all facts which support YOUR contention that "This system was accessed in an unauthorized manner with the intention to misuse it for the hackers' unlawful purpose."

**Response Number 24:**

Objections and responses regarding this issue have been given already. See Response Number 1 through 5.

1  Verification
2  I, Francisco Molieri, am authorized to verify this response on behalf of Dataway, the Defendant
3  and Counterplaintiff in the above cause of action. I am Comptroller and managing agent in the
4  absence of Simon Lewis, President of Dataway. I have read the first Set of Interrogatories
5  propounded to Dataway and the Response to the Interrogatories. I am familiar with the contents
6  of both. I declare under penalty of perjury that the foregoing is true and correct.
7
8  DATED: April 10, 2008
9                                          Francisco Molieri
                                            Comptroller, Dataway
10
11
12
13
14  DATED: April 10, 2008                   MATLOCK LAW GROUP
15
16                                          By: _____
                                            Anne-Leith W. Matlock
17                                          Attorneys for Dataway
18
19
20
21
22
23
24
25
26
27
28

Matlock Law
Group, PC.

RESPONSE TO AT&T'S SPECIAL INTERROGATORIES                    CASE NO. C07-02440 EDL


EXHIBIT C

# CERTIFICATE OF SERVICE

I, Victoria X. Griswold, declare:

I am a citizen of the United States and am employed in the County of Contra Costa, State of California. I am over the age of 18 years and am not a party to the within action. My business address is Matlock Law Group, A Professional Corporation, 1485 Treat Blvd., Suite 200, Walnut Creek, CA 94597. I am personally familiar with the business practice of Matlock Law Group, A Professional Corporation.

On April 14, 2008, following ordinary business practice, I caused service of the following documents:

**RESPONSE TO PLAINTIFF'S AND COUNTERDEFENDANT'S FIRST SET OF SPECIAL INTERROGATORIES PROPOUNDED TO DEFENDANT AND COUNTERCLAIMANT DATAWAY**

to be completed by:
by U.S. First Class Mail and by Fax upon:

Timothy Carl Aires
Aires Law Firm
180 Newport Center Drive, Suite 260
Newport Beach, CA 92660
949 718-2021
tca@arlawyers.com

I declare under penalty of perjury under the laws of the United States that the above is true and correct and that this declaration was executed at Walnut Creek, California.

DATED: April 14, 2008

Victoria Griswold

CERTIFICATE OF SERVICE
CASE NO. C07-02440EDL

EXHIBIT C