1      UNITED STATES DISTRICT COURT

2      NORTHERN DISTRICT OF CALIFORNIA

3      SAN FRANCISCO DIVISION

4      ---oOo---

5   AT&T CORPORATION,              )
                                   )
6            Plaintiff,            )
                                   )
7   vs.                           )    No. C07-02440-EDL
                                   )
8   DATAWAY INC. and dba DATAWAY )
    DESIGNS,                       )
9                                  )
             Defendants.           )
10  _____)
                                   )
11  DATAWAY, INC.,                 )
                                   )
12           Counterclaimant,      )
                                   )
13  vs.                           )
                                   )
14  AT&T CORPORATION,              )
                                   )
15           Counterdefendant.     )
    _____)

16

17

18      DEPOSITION OF SIMON LEWIS

19      April 15, 2008

20

21   Taken before JANE GROSSMAN, CSR No. 5225

22

23      JANE GROSSMAN REPORTING SERVICES
           Certified Shorthand Reporters
24       1939 Harrison Street, Suite 460
           Oakland, California 94612
25            (510) 444-4500

**CERTIFIED ORIGINAL**

JG Jane GROSSMAN
RS REPORTING Services

EXHIBIT

1
                  I N D E X

2
DEPOSITION OF SIMON LEWIS

3
TUESDAY, APRIL 15, 2008

4
                                        PAGE

5
EXAMINATION BY:    MR. AIRES               4, 46

6
                   MS. MATLOCK           32

7
                 ---oOo---

8
             E X H I B I T S

9
         (No exhibits introduced.)

10
                 ---oOo---

11
      Proceedings Commenced:  1:53 p.m.

12
      Proceedings Adjourned:  2:56 p.m.

13
                 ---oOo---

14

15

16

17

18

19

20

21

22

23

24

25

DEPOSITION OF SIMON LEWIS

2

EXHIBIT

DEPOSITION OF SIMON LEWIS

1

2

3        BE IT REMEMBERED that, pursuant to Notice of

4  Taking Deposition and on Tuesday, April 15, 2008,

5  commencing at the hour of 1:53 p.m., at the Law Offices

6  of KORNFIELD, PAUL, NYBERG & KUHNER, Lake Merritt Plaza,

7  1999 Harrison Street, Suite 2675, Oakland, California

8  94612, before me, JANE GROSSMAN, a Certified Shorthand

9  Reporter of the State of California, personally appeared

10 SIMON LEWIS, produced as a witness in said action, and

11 being by me first duly sworn, was thereupon examined as

12 a witness in said cause.

13                      ---oOo---

14                  A P P E A R A N C E S

15        TIMOTHY CARL AIRES, Attorney at Law, of the

16 AIRES LAW FIRM, 180 Newport Center Drive, Suite 260,

17 Newport Beach, California 92660, was present on behalf

18 of Plaintiff and Counterdefendant AT&T Corporation.

19

20        ANNE-LEITH MATLOCK, Attorney at Law, of the

21 MATLOCK LAW GROUP, PC, 1485 Treat Boulevard, Suite 200,

22 Walnut Creek, California 94597, was present on behalf of

23 Defendant and Counterclaimant Dataway, Inc. and dba

24 Dataway Designs.

25                      ---oOo---

DEPOSITION OF SIMON LEWIS

EXHIBIT

1  TUESDAY, APRIL 15, 2008                      1:53 P.M.

2                        SIMON LEWIS,

3              having been sworn as a witness by the

4                 Certified Shorthand Reporter,

5                     testified as follows:

6                          ---oOo---

7               EXAMINATION BY MR. AIRES

8          MR. AIRES:  Q.  Could you please state and

9  spell your name for the record?

10         A.   Simon Lewis, S-i-m-o-n L-e-w-i-s.

11         Q.   Are you currently employed?

12         A.   Yes.

13         Q.   By whom?

14         A.   Dataway, Incorporated.

15         Q.   How long have you been employed by Dataway?

16         A.   Since its inception.  I'm one of the founders.

17         Q.   When was it formed?

18         A.   1994, I believe.

19         Q.   What is your current title?

20         A.   CEO.

21         Q.   Has that been your title throughout your

22  tenure with Dataway?

23         A.   No -- yes.  I think, actually, as we

24  incorporated, I officially had the CEO title.

25              I referred to myself as "partner" for many

DEPOSITION OF SIMON LEWIS

EXHIBIT E

1    all day long.

2         Q.    Okay.

3         A.    And she said she can see them a mile away --

4         Q.    All right.

5         A.    -- and it happens all the time.

6         Q.    And she said that?

7         A.    Yes, she did.

8         Q.    Did you write that down at the time, or do you

9    just recall that from your independent recollection?

10        A.    I don't know whether I wrote it down or not,

11   but that's absolutely what she said.

12        Q.    All right.  And did she make any suggestions

13   or recommendations relative to your telephone service at

14   that time?

15        A.    Telephone service?  No, she didn't say

16   anything about our telephone service.

17        Q.    Did she say anything about your telephone

18   system?

19        A.    We discussed what type of system we had.

20        Q.    What did you tell her?

21        A.    I told her we had a Nortel, essentially a key

22   system, I guess.  I think it's called a "key system."

23        Q.    Do you know what model number it was?

24        A.    I don't recall.

25               I still have it at my office.

DEPOSITION OF SIMON LEWIS

EXHIBIT E

1      Q.    You still have the system?

2      A.    Absolutely.  It's sitting on the wall.

3      Q.    Is it still in use today?

4      A.    No.  It was disconnected quite soon

5   afterwards, within a couple of weeks of all of this

6   stuff happening.

7      Q.    All right.  Did your company acquire the

8   system directly from Nortel?

9      A.    No.  We purchased it, I believe, through a

10  company that's long out of business.  I'm trying to

11  recall.  I think it began with a "W."

12          I can probably find that out, if it's

13  important.  But it was purchased whenever -- 10 or 11

14  years ago.

15     Q.    All right.  Was it new or used when it was

16  acquired?

17     A.    It was new.

18     Q.    Did you have any maintenance contracts with

19  Nortel in effect relative to that system in the calendar

20  year 2006?

21     A.    No.

22     Q.    As I understand it, based on your testimony,

23  you spoke with this representative of AT&T regarding the

24  fact that it was a Nortel key system; is that right?

25     A.    Correct, Nortel PBX key system.  Yeah.

DEPOSITION OF SIMON LEWIS

9

EXHIBIT

1    Q.    Did she -- it was a PBX system?

2    A.    It is a PBX, yeah.  A key system is PBX.  A

3    key system is a small PBX, basically.

4    Q.    Did she make any recommendations or

5    suggestions regarding the system?

6    A.    If I recall, we discussed how it could be that

7    somebody could make a call.

8         And she suggested that the way -- the only way

9    she knew was through the voice-mail system; in other

10   words, somebody dialing in remotely, like an employee

11   would dial in remotely to access their voice mail.

12   Q.    Did you --

13   A.    That is --

14   Q.    Go ahead.

15   A.    That is what she suggested was likely the

16   reason because, being in the, you know, Fraud

17   Department, or whatever department she was in, she sees

18   this stuff all day long.

19        And to paraphrase exactly what she said, these

20   calls stand out like a sore thumb.  She can see them

21   instantly in the system.  And alarms are going off all

22   day long.

23   Q.    And so, she indicated that it was -- it

24   appeared to her that it was accessed through the

25   voice-mail system?

DEPOSITION OF SIMON LEWIS

EXHIBIT E

1      A.    She suggested that that was the likely place

2   where it would be accessed through because it's,

3   basically, a very simple phone system.

4      Q.    Did Dataway undertake its own independent

5   investigation to determine how it happened?

6      A.    We don't know exactly how it happened, nor can

7   we say definitively how it happened.

8           We do know, because we suspect that it was

9   through the voice-mail system -- and one interesting

10  piece of information we gathered was a telephone number

11  that we believe was in Kansas by the area code -- our

12  caller ID picked it up, and it showed up on one of the

13  phones in the office.

14          We gave this to AT&T as the -- as potentially a

15  source of one of these calls that came in.

16     Q.    Did you ever learn that it was -- that the

17  method used in making the access was through a 10-10-288

18  calling-code access number?

19     A.    I don't know what you mean by that.

20     Q.    So, the answer is that nobody ever told you

21  that?

22     A.    I know what 10-10-288 is.  That's an outbound

23  access code.

24     Q.    Okay.

25     A.    You asked me about how the call came in.

DEPOSITION OF SIMON LEWIS

11

EXHIBIT E

1  recovering our contiguous hundred block.

2      We actually had a hundred block of numbers in

3  the 659-1700 range -- 659-1700 to -1799.  We've had that

4  block since maybe 2000, 2003, whatever.

5      We have the number block 882-8700 through

6  -8799.  That was the block that we were working with our

7  local AT&T people to reconstitute correctly, which meant

8  that we actually had to go through a process of porting

9  numbers from one switch to another switch.

10     Q.  But your company in July of 2006 had access to

11  exactly 100 lines?

12     A.  I don't know what that means, access to a

13  hundred lines.

14     Q.  You had 100 different telephone numbers?

15     A.  We had probably more than 100 exactly, but we

16  had somewhere on the order of -- we had a contiguous

17  block of a hundred.  We probably had 20 or 30 numbers in

18  the 882-8700 range that -- we were working to recover

19  all those numbers.

20         And then since then -- since, basically, the

21  middle of 2006, the original 659-1700 through -1799

22  number block we have given back to AT&T because we no

23  longer use it.

24     Q.  Was service ever terminated due to the failure

25  to pay the $11,534.67?

DEPOSITION OF SIMON LEWIS

EXHIBIT E

1      A.    No.

2      Q.    We had some discussion regarding these

3   negotiations with Ms. Cardswell.

4          Was an agreement ever reached relative to the

5   amount that would be paid by your company for these toll

6   charges?

7      A.    No, there was no opportunity for an agreement

8   to be raised because she would not budge -- or her

9   manager would not budge -- from, I believe, their best

10  offer of something around 5,000-and-some-odd dollars for

11  what is equivalent to $400 worth of service.

12     Q.    Thank you for your time.

13         THE REPORTER:  Off the record?

14         MR. AIRES:  We're done.

15         (Whereupon, the deposition was concluded at

16  2:56 p.m.)

17                    ---oOo---

18

19

20

21

22

23

24

25

DEPOSITION OF SIMON LEWIS

48

**EXHIBIT E**