1   Matlock Law Group, PC
    Anne Leith Matlock, SBN 244351
2   1485 Treat Blvd., Suite 200
3   Walnut Creek, CA 94597
    Office: 925-944-7131
4   Fax: 925-944-7138
    E-mail: anne-leith@matlocklawgroup.com
5
    Attorneys for Defendant/Counterclaimant
6   DATAWAY, INC.

7

8               **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10              **SAN FRANCISCO DIVISION**

11

12  AT&T Corp.                          **CASE NO. C07-02440 EDL**

13          PLAINTIFF,

14              v.                       **DEFENDANT DATWAY'S**
                                         **OPPOSITION TO PLAINTIFF AT&T'S**
15                                       **MOTION FOR SUMMARY**
    Dataway, Inc.                        **JUDGMENT OR PARTIAL SUMMARY**
16                                       **JUDGMENT**
            DEFENDANT.
17

18  _____
    Dataway, Inc.                        **Date: August 5, 2008**
19                                       **Time: 9:00 a.m.**
            COUNTERCLAIMANT              **Courtroom: E**
20
21              v.

22  AT&T Corp.

23          COUNTERDEFENDANT

24

25

26

27  //

28  //

Matlock Law
Group, PC.
DATAWAY'S OPPOSITION TO AT&T'S
MOTION FOR SUMMARY JUDGMENT                        CASE NO. C07-02440-EDL

1

## **TABLE OF CONTENTS**

2

page

3    I.    Introduction ……………………………………………………… .2

4    II.    Legal Standard………………………………………………………....2

5    III.    Allegedly undisputed and in fact disputed facts……………………………..3

6    A. Actual Undisputed Facts……….....……………………………………..3

7    B. Most Facts asserted by AT&T in its Motion for Summary Judgment

8    p. 1 1.5 – p. 3 l. 15 are in fact disputed, not proven by evidence on the

9    record, and/or proved contrary by the record……………………....……....…3

10    1. Dataway does not dispute Facts No. 1, 2 and 17……………………....3

11    2. AT&T states facts as allegedly undisputed that are either in controversy

12    or proven to be the contrary………………………………………………...4

13    3. The remaining "Facts" No. 7, 16, 18, 19 and 20 are not proven as

14    asserted by AT&T because AT&T stated them out of context or

15    mischaracterized them……………………………………………………..6

16    IV.    AT&T's claims are without merit and Plaintiff fails to state undisputed

17    facts supporting the elements of its causes of action…………………………8

18    A.  47 U.S.C. § 201 et. seq. does not impose liability on a customer like

19    Dataway and is not supported by any facts on record…………………....…8

20    B.  Quantum Meruit is not a Cause of Action in California …………………...…9

21    V.    Dataway's Counterclaims are supported by facts in evidence………………….10

22    A. The Filed Rate Doctrine Does not Apply…………………………….....……10

23    B. All Elements of Dataway's Five Counterclaims are supported by

24    Evidence on Record……………………………………………………....…11

25    1. Each Element of a Breach of Express Contract is Established by

26    Undisputed Facts..………………………………………………….....12

27    2. Each Element of Breach of Oral Contract is Established by

28

1          Undisputed Facts...............................................................................14

2        3. Each Element of Fraudulent Inducement to Contract is Established

3           by Undisputed Facts...................................................................15

4        4. Each Element of Slamming is Established by Undisputed Facts ..............17

5        5. Each Element of Tortious Interference with Contractual Relations

6           is Established by Undisputed Facts.......................................................19

7    VI.     Conclusion......................................................................................22

8

9                 **TABLE OF AUTHORITIES**

10                                                        Page

11 **Cases**

12 American Tel. and Tel. Co. v. Central Office Telephone, Inc., 524 U.S. 214 (1998)............11

13 Bank of N.Y. v. Fremont General Corp., 523 F.3d 902 (9th Cir. 2008)........................19, 20

14 Bradberry v. T-Mobile USA, Inc., 2007 U.S. Dist. LEXIS 34826 (N.D. Cal. Apr. 27, 2007)...9

15 Brandon & Tibbs v. George Kevorkian Accountancy Corp.,

16       226 Cal. App. 3d 442 (Ct. App. 1990)..........................................................13

17 Brown v. MCI Worldcom Network Servs., Inc., 277 F.3d 1166 (9th Cir. 2002)..................11

18 Engalla v. Permanente Medical Group, Inc., 64 Cal. Rptr. 2d 843 (Cal. 1997)...............15, 17

19 Givemepower Corp. v. Pace Compumetrics, Inc.,

20       2007 U.S. Dist. LEXIS 59371 (D. Cal. 2007)...................................................20

21 Glendale Fed. Sav. & Loan Ass'n v. Marina View Heights Dev. Co.,

22       66 Cal. App. 3d 101 (App. Ct. 1977)...........................................................13

23 In re Implementation of the Subscriber Carrier Selection et al., 23 F.C.C.R. 493............18, 19

24 Kasparian v. County of L.A., 45 Cal. Rptr. 2d (Cal. App. 2d Dist. 1995).........................20

25 Kern Sunset Oil Co. v. Good Roads Oil Co., 214 Cal. 435 (1931)................................14

26 Lazar v. Superior Court, 12 Cal. 4th 631 (Cal. 1996)..............................................16

27 Lovejoy v. At&T Corp., 92 Cal. App. 4th 85 (Cal. 3d Dist. 2001).......................10, 11

28

Martin v. U-Haul Co. of Fresno, 204 Cal. App. 3d 396 (Ct. App. 1988)...........................13

Melchior v. New Line Productions, Inc., 131 Cal. Rptr. 2d 347 (2003).............................9

Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.,

      423 F.3d 1056, 1064 (9th Cir. Wash. 2005).............................................................9

Qwest Communs. Corp. v. Herakles, 2008 U.S. Dist. LEXIS 22154 (D. Cal. 2008).............12

W. Reserve Life Assur. Co. v. Bratton, 2007 U.S. Dist. LEXIS 46351 (D. Iowa 2007).........14

**Statutes**

47 C.F.R. § 64.1120.................................................................................................18

47 U.S.C. 201......................................................................................................3, 8, 9

47 U.S.C. 203........................................................................................................10

47 U.S.C. 206..........................................................................................................8

47 U.S.C. 258...............................................................................2, 15, 16, 17, 18

Cal. Civ. Code § 1550..............................................................................................12

Cal. Civ. Code § 1565..............................................................................................12

Cal. Civ. Code § 1709..............................................................................................16

Cal. Civ. Code § 3300..............................................................................................13

Cal. Pub. Utilities Code § 2889.5............................................................................16

**Other Authorities**

Witkin, Summary of Cal. Law (9th ed. 1988) Torts............................................15, 16

1       Defendant Dataway hereby opposes Plaintiff AT&T's dispositive motion pursuant to

2   Fed. R. Civ. P. § 56 and Local Rule 56-1. As the record evidence does not support each element

3   of Plaintiff's complaint but is sufficient to establish each element of Counterplaintiff Dataway's

4   Countercomplaint, this Court should deny Plaintiff AT&T's Motion for Summary Judgment

5   (hereinafter "Mot. SJ") and only enter summary judgment pursuant to Fed. R. Civ. P. § 56(a) in

6   favor of Counterplaintiff Dataway.

7       **I.     INTRODUCTION**

8       This litigation began as a collection action in which Plaintiff AT&T alleges that Dataway

9   is responsible for certain charges for telephone calls made to the Philippines using AT&T

10  services and further alleges Dataway has refused to pay said charges. Dataway denies that it

11  incurred said charges but that the alleged charges were the result of the unauthorized,

12  intervening criminal conduct of third-party hackers from a remote location and not made using

13  the services contracted for by Dataway, but charged to an account neither opened, maintained,

14  nor authorized by Dataway.  Defendant asserts, moreover, that Plaintiff promised to set up

15  protections against both "slamming" (switching telecommunications services without direct

16  instructions from the customer) and also against fraudulent access by third parties, and that it

17  failed to do so, resulting in the charges which it now seeks to recover from Defendant.

18  Therefore, Dataway has counterclaimed against Plaintiff alleging various contract breaches,

19  fraud and violation of the "anti-slamming" law, 47 U.S.C. § 258.

20      **II. LEGAL STANDARD**

21      A Motion for Summary Adjudication pursuant to Fed. R. Civ. P. § 56(a) shall be entered

22  if there is no issue for trial, if no rational, reasonable jury would return a verdict in the

23  nonmoving party's favor. Fed. R. Civ. P. § 56(c) states that that the pleadings, dispositions,

24  answers to interrogatories and admissions on file, together with the affidavits have to show that

25  there is no genuine issue as to any material fact. Supporting and opposing affidavits "…shall set

26  forth such facts as would be admissible in evidence and shall show affirmatively that the affiant

27  is competent to testify. Fed. R. Civ. P. § 56(e). Based on the specific facts on record and the

28  undisputed, background, and contextual facts, this Court should not grant Plaintiff's Motion for

*Matlock Law
Group, PC.*

1   Summary Judgment in AT&T's favor upon its Complaint for Damages but enter summary

2   judgment in Dataway's favor upon its Counterclaims.

3   **II.  ALLEGEDLY UNDISPUTED AND IN FACT UNDISPUTED FACTS**

4       On page 1-3 of Plaintiff's Motion for Summary Judgment, AT&T states facts and

5   wrongfully alleges that these facts are undisputed.

6       **A. Actual Undisputed Facts**

7       AT&T fails to mention that (1) there are undisputed facts that support Dataway's

8   assertions and (2) AT&T's so-called undisputed facts are unsupported by the record. These are

9   all facts and allegations stated in Dataway's Answer and in its Counterclaims. AT&T never

10  responded to these pleadings. A failure to respond to a pleading to which a response is required

11  results in an admission of the averment to which no response is made. Fed. R. Civ. P. 8(b)(6).

12  Pursuant to Fed. R. Civ. P. 12(a)(1)(C) a party "…must serve a reply to an answer within 20

13  days after being served with an order to reply, unless the order specifies a different time." Fed.

14  R. Civ. P. 12(a)(1)(C). The responsive pleading to a counterclaim is a reply. A reply to a

15  counterclaim must be designated as such (Fed. R. Civ. P. 7(a)) and must be served 20 days after

16  service of the answer. Fed. R. Civ. P. 12(a)(1)(A). None of these responsive pleadings were

17  filed and/or served by AT&T. Instead, AT&T only filed a motion to dismiss. This motion

18  merely extends Plaintiff's time to answer but does not constitute a responsive pleading. Hence,

19  all facts and allegations in Dataway's Answer and Counterclaim are admitted pursuant to Fed.

20  R. Civ. P. 8(b)(6).

21      **B. Most Facts asserted by AT&T in its Motion for Summary Judgment p. 1 l.5 – p.**

22      **3 l. 15 are in fact disputed, not proven by evidence on the record, and/or proved**

23      **contrary by the record**

24      On pages 1-3 of Plaintiff's Motion for Summary Judgment, AT&T states "facts" and in

25  almost each allegation wrongfully represents that these "facts" are undisputed.

26      1.  Dataway does not dispute Facts No. 1, 2 and 17

27      Defendant merely agrees that the following is undisputed, that (1) Plaintiff AT&T is a

28  New York corporation, doing business in the State of California (¶ 1 of Defendant's Answer

1    that was admitted by AT&T as explained supra (hereinafter " Adm. Answ.")), (2) that

2    Defendant Dataway is a California corporation with its principal place of business in San

3    Francisco, California (¶ 2 of the Adm. Answ.), and (3) that AT&T made demand for charges

4    amounting to $ 11,534.67 and a  billing dispute ensued (see Mot. SJ. p.2 l.26-27).  Hence, only

5    the facts that Plaintiff numbered # 1, 2 and 17 are undisputed.

6         2. AT&T's so-called "undisputed facts" are either still in controversy or run contrary to

7         the contract

8         All other purported facts allegedly supporting AT&T's asserted claims are in dispute

9    and were not proven by any evidence that was properly produced. Unlike alleged in

10    Defendant's Motion for Summary Judgment, Defendant challenged Plaintiff's facts # 3 and 4,

11    the Subject Matter Jurisdiction of this Court and Venue. See ¶¶ 5 and 6 of the Adm. Answ.

12         The "facts" # 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, are solely supported by the affidavit of

13    Mr. Lakes which is insufficient for three reasons. First, Mr. James Lake is a person so far not

14    involved in the dispute and unknown to Defendant. This is particularly remarkable as Plaintiff

15    had several chances to produce Mr. Lakes but failed to do so. In particular, Dataway requested

16    to conduct a deposition of the most knowledgeable officer, director, managing agent, employee

17    and/or agent of the Fraud Resolution Group (Investigative Management), responsible for AT&T

18    customers in the San Francisco area, who worked for AT&T and/or can testify on events or

19    surrounding circumstances relating to fraud resolution and shortfall investigation between May

20    2006 and May 2007, and who are most qualified to testify on its behalf regarding the

21    appropriate areas of examination. See Notice of Deposition, Exhibit A. Mr. Lake appears to be

22    the actual person most knowledgeable on the foregoing matters but AT&T failed to disclose or

23    produce Mr. Lake throughout the proper discovery period effectively running contrary to the

24    courts discovery rules and orders. Hence, Mr. Lake's statements should be disregarded because

25    Defendant did not have a chance to cross-examine Mr. Lakes. Producing Mr. Lakes at this late

26    stage of the proceeding creates serious issues of material fact and denies Dataway's discovery

27    rights.

28

Matlock Law
Group, PC.

DATAWAY'S OPPOSITION TO AT&T'S
MOTION FOR SUMMARY JUDGMENT                    CASE NO. C07-02440-EDL

1    Second, in ¶ 5 of his declaration, Mr. Lake states that he can and does merely testify to

2    the identity of AT&T's records and documents. See Declaration of James Lake, p. 2 1.15-23.

3    These documents are out of court statements that were not made by the affiant and are now

4    offered for evidence to prove the truth of the matter asserted. Mr. Lake's statements are

5    inadmissible hearsay and do not satisfy FED. R. CIV. P. § 56(e) because Mr. Lake does not

6    base his affidavit on facts that would be permissible in evidence. His declaration cannot be used

7    as a supporting affidavit.

8    Third, almost all of "facts" No. 5, 6, 8, 9, 10, 11, 12, 13, 14, 15, which are solely

9    supported by Mr. Lake's affidavit were (1) previously disputed by Defendant, (2) no other

10   evidence was produced that would prove AT&T's allegations and/or (3) the facts, stated in the

11   contrary, were admitted by AT&T due to its failure to respond to Dataway's Answer and its

12   Counterclaim (hereinafter "Adm. CC"). "Fact" No. 5: At no point was it established how the

13   unauthorized Legacy T account was established. Neither Simon Lewis nor Francisco Molieri

14   knew that the hacker might have used AT&T's "Casual Calling Services." See Deposition of

15   Francisco Molieri, p. 18 l. 12-23, p. 59 l.18, Declaration of Simon Lewis, p. 11 l.16 – p.12 l.3,

16   Adm. CC. ¶ 10. Expert discovery will be necessary to determine what method the hackers used

17   and how they conducted the calls to the Philippines. "Fact" No.6: It is not established why

18   Tariff 30 is relevant to the dispute at hand and Dataway argues that the tariff is not applicable

19   because it never authorized the calls and should not be charged for them in the first place. There

20   is no evidence on record that Tariff 30 governs Legacy S accounts and/or unauthorized Legacy

21   T accounts. Adm. CC. ¶ 35. "Fact" No.8: Dataway alleged in all its pleadings and confirmed

22   through discovery that the changes that were made to its telephone service were made without

23   its authorization and that the calls were not executed by Dataway. Adm. CC. ¶¶ 8, 10, 34. On p.

24   2 l.4 of the Mot. SJ. AT&T even concedes that it is likely/possible that the calls were not

25   authorized. "Fact" No. 9: Dataway asserts that the calls made on July 24, 2006 were the

26   responsibility of AT&T because it failed to impose sufficient security means. Adm. CC. ¶¶ 32-

27   33. "Fact" No. 10: Again, it is not in evidence how the calls to the Philippines were executed

28   (see supra) and pursuant to the Telecommunication Act. AT&T is obliged to impose security

*Matlock Law*
*Group, PC.*

DATAWAY'S OPPOSITION TO AT&T'S
MOTION FOR SUMMARY JUDGMENT                    CASE NO. C07-02440-EDL

1  means sufficient to verify the authorization of the service change (see supra). "<u>Fact</u>" No. 11 and

2  <u>12</u>: Dataway did receive a bill for the unauthorized calls. However, Mr. Lake's declaration

3  states this bill was for the provided telecommunication services to Dataway, for the calls that

4  were "placed using [Dataway's] system through the AT&T network by dialing carrier access

5  code 1010288." This is entirely inaccurate. AT&T admitted that the hackers compromised the

6  voicemail system Dataway maintained with AT&T. Adm. CC. ¶¶ 8, 18, Deposition Francisco

7  Molieri p. 8 1.2-7, Bate-Stamp DW 003. For this reason the charges were not on Dataway's

8  long-distance corporate bill but on a summary billing account. The type of connection was not a

9  regular call but a "nailed-up connection" that was also detected as irregular by AT&T.

10 Deposition of Simon Lewis p. 45 1. 13-25. Hence, Dataway's system was not only allegedly

11 compromised but both "facts" as stated by AT&T are not in evidence. "<u>Fact</u>" No. 13: The

12 charges for the unauthorized calls that were admittedly executed by hackers (see supra)

13 amounted to $ 11,534.67 and were wrongfully presented to Dataway on a bill due September

14 25, 2006. "<u>Fact</u>" No. 14: Tariff F.C.C. No. 30 does state that payment is due upon presentation

15 of an invoice. Dataway's payment upon this invoice was not due because AT&T waived its

16 charges. Adm. CC. ¶¶ 11, 21, 23. "<u>Fact</u>" No. 15: AT&T admitted that hackers executed the

17 calls to the Philippines (see supra), that the charges should be waived (see supra), and that it

18 was AT&T's liability to avoid a switching of services by unauthorized third party conduct (see

19 surpa). For these reasons, Dataway does not owe AT&T a sum of $ 11,534.67 nor any related

20 interest.

21     Therefore, Plaintiff's assertion that the material "Facts" No. 5, 6, 8, 9, 10, 11, 12, 13, 14,

22 15 are not in controversy is wrong. The facts are either in dispute or proven to the contrary.

23     For the aforementioned three reasons it appears that Mr. Lakes affidavit was submitted

24 in bad faith and this Court should sanction Plaintiff pursuant to FED. R. CIV. P. § 56(g).

25     <u>3. The remaining "Facts" No. 7, 16, 18, 19 and 20 are not proven as asserted by AT&T</u>

26 <u>because AT&T stated them out of context or mischaracterized them</u>

27     Despite AT&T's assertions, "Facts" No. 7, 16, 18, 19 and 20 are and remain disputed or

28 were proven to the contrary by Dataway.

1     Plaintiff alleges in "Fact" No. 7 that "the telephone system owned and operated by

2  Dataway was allegedly compromised by an unauthorized intervening party accessing the

3  AT&T network by dialing carrier access code 1010288." Mot. SJ. p.1 l. 24-26. This statement

4  is materially different from Dataway's statement in its counterclaim stating that "[o]n July 24,

5  2006 fraudulent calls were made through Dataway's existing voice mail system using AT&T's

6  Legacy T network, a service Dataway never subscribed to and an account that was never authorized

7  by the Defendant." See Adm. CC. ¶ 13. Dataway alleged that hackers unlawfully compromised

8  the voicemail system Dataway maintained with AT&T. See ¶ 18 Adm. CC.; Bate-Stamp AT&T

9  167, Deposition of Francisco Molieri p. 7 l.18-20. Therefore, "Fact" No.7 is not proven as

10 asserted by AT&T but as alleged in Dataway's Counterclaim.

11     Further, AT&T asserts that there is no evidence that AT&T waived its claim involving

12 the charges amounting to $ 11,534.67. See Mot. SJ. p.2 l.21-22. In fact, AT&T admitted that

13 "the parties conferred, and AT&T assured Dataway that AT&T would waive the charges for the

14 fraudulent calls once Dataway disputed them, because this pattern of illegal usage recently had

15 occurred frequently." See Adm. CC. p.15 l.20-22.  Hence, there is evidence on record that negates

16 AT&T's allegation while supporting Dataway's allegation.

17     "Fact" No. 18, stating that the Telephone service was never terminated, is a fact

18 mischaracterized and taken out of context. Proper context demonstrates that on November 3,

19 2006, and even after commencement of the present litigation, on April 3, 2008, AT&T sent

20 Notices of Disconnect (see infra p. 10 l. 25 – p. 11 l.2 and p.18 l.19-22) and immediately

21 threatened to disconnect services to Dataway. Only Dataway's actions, its communication with

22 AT&T California and AT&T Corp., its requests to AT&T California and AT&T Corp., its

23 informal complaints to AT&T Corp. and various telecommunication agencies, and the

24 commencement of this suit avoided the final cut off of services.

25     "Facts" No. 19 and 20 as asserted by AT&T also misstate the damages suffered by

26 Dataway. In its Counterclaim, Dataway states compensatory and non-compensatory damages

27 according to proof at trial for each cause of action. This satisfies the notice pleading

28 requirements of the Federal Rules of Civil Procedure. Dataway made a short and plain

*Matlock Law Group, PC.*

DATAWAY'S OPPOSITION TO AT&T'S
MOTION FOR SUMMARY JUDGMENT                                    CASE NO. C07-02440-EDL

1  statement of each claim, showing that the Counterplaintiff is entitled to relief, and made a

2  demand for judgment for the relief the counterplaintiff seeks. Fed. R. Civ. P. 8(a). In its

3  Response to AT&T's Special Interrogatories, Dataway stated that damages include, but are not

4  limited to, expenditures of time, an interruption of its business, and other expenses while

5  attempting to resolve the dispute in an amount of $ 57,200.00.

6       AT&T's assertion of so-called undisputed facts are, besides Facts No. 1, 2 and 17, either

7  (1) inadmissible, (2) remain in controversy and were disputed by Dataway's or (3) were

8  admitted in the contrary by AT&T due to its failure to respond (see supra).

9  ## IV. AT&T'CLAIMS ARE WITHOUT MERIT AND PLAINTIFF FAILS TO STATE

10  ## UNDISPUTED FACTS SUPPORTING THE ELEMENTS OF ITS CAUSES OF

11  ## ACTION

12       The pleadings and discovery has shown that Plaintiff's Complaint is without merit.

13  Plaintiff's first counts, liability under 47 U.S.C. § 201 et. seq., is not actionable and therefore,

14  its second count, Unjust Enrichment, lacks a sufficient basis for disgorgement. In any case, all

15  or at least one of the elements of Dataway's causes of action cannot be established by facts on

16  record. Hence, there are no genuine factual issues that properly can be resolved only by a finder

17  of fact because both counts may reasonably be resolved only in Dataway's favor.

18  ### A. 47 U.S.C. § 201 et. seq. does not impose liability on a customer like Dataway and

19  ### is not supported by any facts on record

20       Plaintiff's cause of action is without merit because 47 U.S.C. § 201 et. seq. does not

21  create a claim for a telecommunication carrier against a customer. The Communications Act,

22  which encompasses the Telecommunications Act of 1996, contains several sections outlining

23  rules for telecommunications companies to abide by and the course of action when such rules

24  are broken. Section 201(b) requires common carriers to furnish service, stating that "all charges,

25  practices, classifications, and regulations for and in connection with such service, shall be just

26  and reasonable, and any such charge, practice, classification, or regulation that is unjust or

27  unreasonable is declared to be unlawful." 47 U.S.C. § 201. Pursuant to section 206 of the

28  Communications Act a common carrier shall be liable to the person injured if the carrier does,

*Matlock Law Group, PC.*

DATAWAY'S OPPOSITION TO AT&T'S
MOTION FOR SUMMARY JUDGMENT                    CASE NO. C07-02440-EDL

1    or permits to be done, any act, matter, or thing prohibited or declared to be unlawful it shall be

2    liable to the person injured for the full amount of damages sustained. The highly discussed issue

3    if the Telecommunication Act creates private rights and if a failure to compensate for dial-

4    around calls, is a violation falling within Section 201. However, as explicitly stated in

5    Metrophones Telecommunication, this concerns merely the carrier's claims against a common

6    carrier [Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc., 423 F.3d 1056,

7    1064 (9th Cir. Wash. 2005)] or a customer against a carrier. Bradberry v. T-Mobile USA, Inc.,

8    2007 U.S. Dist. LEXIS 34826 (N.D. Cal. Apr. 27, 2007). Dataway is not a telecommunication

9    carrier that furnished unjust or unreasonable services. Dataway is a California Corporation (see

10   Dataway's Answer, p. 2 l.9-10) providing managed services to clients and consulting services

11   in the computer/network and network-security. See Deposition of Simon Lewis, p. 5 l. 18-20).

12   It is merely a telecommunication customer. 47 U.S.C. § 201 et. seq. however, do not provide

13   for a cause of action of a telecommunication carrier against its customer.

14        As none of the elements of Plaintiff's First Cause of Action are met, this Court should

15   enter summary judgment in favor of Dataway.

16        **B.  Quantum Meruit is not a Cause of Action in California**

17        Plaintiff's second count is without merit. Unjust enrichment is "merely a theory of

18   recovery." "There is no cause of action in California for unjust enrichment." Melchior v. New

19   Line Productions, Inc., 106 Cal. App. 4th 779, 794, 131 Cal. Rptr. 2d 347 (2003). Accordingly,

20   as a matter of law, AT&T's unjust enrichment claim fails as a cause of action.

21        As Plaintiff's claim under 47 U.S.C. § 201 et. seq. is without merit AT&T did not prove

22   that it is entitled to restitution under the theory of quantum meruit. To the extent that this court

23   should hold that AT&T proved it is entitled to restitution on any prevailing claim, it is not

24   entitled to recover under this theory because the elements of quantum meruit are not supported

25   by the record. Plaintiff's claim to disgorge profits is without merit because it does not satisfy

26   the two elements of unjust enrichment: (1) Defendant must have received a benefit and (2)

27   unjustly retained the benefit at the expense of another. At various times, AT&T agreed to

28   Dataway's allegations that hackers accessed Dataway's voicemail system and conducted the

*Matlock Law*
*Group, PC.*

DATAWAY'S OPPOSITION TO AT&T'S
MOTION FOR SUMMARY JUDGMENT                                   CASE NO. C07-02440-EDL

1    calls from a remote location. Adm. CC. ¶ 8, 18, Deposition Francisco Molieri p. 8 1.2-7, Bate-

2    Stamp DW 003. Hence, AT&T did not render any services to Dataway and Dataway did not

3    enjoy the alleged services. In fact, Defendant was not even aware that Plaintiff performed the

4    questioned services let alone that AT&T expected to be paid for services rendered to a third

5    party.  Moreover, any allegation to the contrary is unsupported by the record. Additionally,

6    Plaintiff's requested damages are highly excessive. If this court should hold that a benefit has

7    been conferred on Dataway in expectation of payment, and Dataway was thereby unjustly

8    enriched, the measure of recovery cannot exceed the value of the benefit AT&T has conferred

9    upon Dataway. Plaintiff did not submit any evidence that could justify why a rate of $ 5.78 per

10   minute is the value of the calls illegally carried out by unknown third person even though

11   Dataway's contractual long distance plan rate for calls to the Philippines is $ 0.30 cents per minute.

12          Therefore, the evidence is clear that and that the elements for Quantum Meruit are not

13   satisfied either. Judgment on AT&T's second cause of action in favor of AT&T should be

14   denied and judgment in favor of Dataway is proper.

15   **V.  DATAWAY'S COUNTERCLAIMS ARE SUPPORTED BY FACTS IN**

16       **EVIDENCE**

17       **A.     The Filed Rate Doctrine Does not Apply**

18          Dataway's claims are not barred because they do not challenge the terms of a tariff. In

19   Lovejoy AT&T also unsuccessfully claimed that "there is no fraud exception to the filed rate

20   doctrine." Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 102 (Cal. App. 3d Dist. 2001). The

21   court acknowledged that AT&T's assertion is generally true but irrelevant unless a carrier

22   intentionally misrepresents its rate and a customer relies on the misrepresentation. In that case

23   the carrier cannot be held to the promised rate if it conflicts with the published tariff. The

24   maxim that there is no "fraud" exception to the filed rate doctrine merely means that courts will

25   not intrude into the FCC's jurisdiction by enforcing promises to charge rates or provide services

26   which vary from the filed tariff, regardless of the promisor's intent." Id., at 102. However, "…it

27   does *not* mean that all fraudulent conduct committed by a carrier is immune from remedy." Id.,

28   at 102. Dataway does not challenge the terms of a tariff. Dataway does not seek rate preferences

*Matlock Law
Group, PC.*

1   not accorded to AT&T's other customers and Dataway does not seek to enforce "side

2   agreements" which vary from published tariffs. Rather, Dataway wants to enforce the

3   contracted rate pursuant to the tariff. Moreover, rates have meaning only when one knows the

4   services to which they are attached. Any claim for excessive rates can be couched as a claim for

5   inadequate services and vice versa. The Communications Act recognizes this in the §§ 203(a)

6   and (c). <u>American Tel. and Tel. Co. v. Central Office Telephone, Inc.</u>, 524 U.S. 214, 215.

7          In the case at hand, there was not authorization by Dataway to open the disputed Legacy

8   T account or to charge a fee related to the second line of service which Dataway neither had

9   knowledge of or requested. Similar to <u>Brown</u>, where the court held that a claim is not precluded

10  by the filed-rate doctrine if (1) the Plaintiff alleges that there is no authorization in the tariff to

11  charge a certain fee, and (2) that the fee therefore violated the tariff. <u>Brown v. MCI Worldcom</u>

12  <u>Network Servs., Inc.</u>, 277 F.3d 1166, 1172 (9th Cir. 2002). Compensating the plaintiff for the

13  tortious conduct pleaded does not contravene the filed rate doctrine. <u>Lovejoy</u>, at 101. Dataway

14  is not seeking rate preferences not accorded to AT&T's other customers, or to enforce "side

15  agreements" which vary from published tariffs. Rather, Dataway only seeks enforcement of the

16  rate it contracted for pursuant to the tariff. Hence, Dataway merely seeks to enforce the tariff.

17  Consequently, Dataway's claims are not barred by the File Rate Doctrine.

18          **B. All Elements of Dataway's Five Counterclaims are Supported by Undisputed**

19          **Evidence on Record**

20          Counterplaintiff's claims are supported by sufficient undisputed facts and are admitted

21  by AT&T. As discussed above, Dataway merely filed a motion to dismiss after being served

22  with Dataway's Answer and its Counterclaims. As previously mentioned, a motion to

23  dismiss cannot be regarded as a responsive pleading though. Therefore, all facts and allegations

24  asserted in Dataway's Answer and Counterclaims are admitted and are in evidence pursuant to

25  Fed. R. Civ. P. 8(b)(6). These facts sufficiently support Dataway's five causes of action against

26  AT&T. For this reason, summary judgment in favor of the moving party AT&T should be

27  denied. Instead, summary judgment in favor of Dataway is proper and should be granted.

28

*Matlock Law*
*Group, PC.*

DATAWAY'S OPPOSITION TO AT&T'S
MOTION FOR SUMMARY JUDGMENT                                    CASE NO. C07-02440-EDL

1    **1. Each Element of Breach of Express Contract is Proven**

2    Each element of Dataway's First Cause of Action are supported by undisputed facts

3    which only permits a reasonable jury to decide in Dataway's favor.

4    To prove a breach of contract claim, the plaintiff must show 1) a contract; 2) plaintiff's

5    performance or excuse for nonperformance; 3) defendant's breach; and 4) resulting damage to

6    the Plaintiff. Qwest Communs. Corp. v. Herakles, 2008 U.S. Dist. LEXIS 22154, 18 (D. Cal.

7    2008).

8    Two written instruments lie at the heart: (1) the telecommunication service agreement

9    between Dataway and SBC/AT&T and (2) the Anti-Slamming Agreement. Both constitute

10   legally binding, enforceable and reasonable contracts between SBC's successor AT&T and

11   Dataway. California law requires four elements to form a valid contract: (1) parties capable of

12   contracting; (2) their mutual consent; (3) a lawful object; and (4) sufficient consideration. Cal.

13   Civ. Code §§ 1550, 1565. These four elements are obviously met by the service contract and

14   the Anti-Slamming agreement. The aforementioned two agreements are valid and enforceable

15   contracts and contemplate an implied warranty to impose security means restricting access by

16   third parties. Furthermore, Dataway duly performed all its contractual obligations. It made and

17   still makes payments covering AT&T's charges for Dataway's authorized account usage.

18   However, AT&T's conduct was arbitrary and unreasonable. Adm. CC. ¶¶ 19. On July 24, 2006,

19   hackers illegally accessed the voice mail system Dataway maintained with AT&T. The hacker

20   used AT&T's Legacy T network to conduct calls to the Philippines. Deposition Francisco

21   Molieri p. 8 l.2-7. AT&T billed these calls at a rate of $ 5.78 per minute. According to the

22   contractual long distance plan rate, calls to the Philippines cost $ 0.30 cents per minute.

23   However, the arbitrary $5.67 rate used to calculate the unauthorized calls is 1,920% higher than

24   Defendant's contracted rate. Hence, AT&T (1) switched to a non-contractual rate, and (2)

25   created an account for Dataway without Dataway's authorization. This switch and unauthorized

26   account creation only occurred because the routing number of the calls pointed to Dataway.

27   AT&T allowed a switching of services without applying sufficient verification procedures and

28   failed to avoid an unwanted switching as required under AT&T's contractual obligation.

1    Furthermore, on November 3, 2006 and April 3, 2008 (after commencement of the present

2    litigation) AT&T sent a Disconnect Notice to Dataway, threatening Dataway to disconnect its

3    authorized account despite Dataway's continued payments throughout. This non-performance

4    constitutes a contractual breach of AT&T's duties and warranties warranty obligations.

5          The Civil Code states that "[f]or the breach of an obligation arising from contract, the

6    measure of damages, except where otherwise expressly provided by this code, is the amount

7    which will compensate the party aggrieved for all the detriment proximately caused thereby, or

8    which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code  §

9    3300. Therefore, despite AT&T's claims, Cal. Civ. Code § 3300 does not limit the types of

10   available damages. Instead § 3300 limits an award of contract damages to those damages that

11   arise naturally from a breach of the contract or those that would reasonably be foreseen by the

12   parties as arising from a breach of the contract. Glendale Fed. Sav. & Loan Ass'n v. Marina

13   View Heights Dev. Co., 66 Cal. App. 3d 101, 125 (App. Ct. 1977). The damages sought by

14   Dataway for AT&T's breach of contract compromise of damages that naturally arise from and

15   would be reasonably foreseen by the parties as arising from a breach of the contract. Business

16   interruption and expenditure of time naturally arise from AT&T's breach of its contract.

17   Damages for breach of contract are intended to give the injured party the benefit of his or her

18   bargain. Martin v. U-Haul Co. of Fresno, 204 Cal. App. 3d 396, 409 (Ct. App. 1988). The aim

19   is to put the injured party in as good a position as he or she would have been if performance had

20   been rendered as promised. Brandon & Tibbs v. George Kevorkian Accountancy Corp., 226

21   Cal. App. 3d 442, 468 (Ct. App. 1990). Had AT&T not breached the contract, Dataway would

22   not have had to expend time resolving the improper billing and would not have experienced

23   business interruption. An award of damages to compensate Dataway for this business

24   interruption and its expenditure of time is necessary to put Dataway in as good a position as it

25   would have been in had AT&T not breached the contract. These damages amount to $

26   57,200.00 as calculated in Dataway's Response to AT&T's Special Interrogatories.

27          Judgment on Dataway's first counterclaim in favor of AT&T is not proper. Dataway has

28   properly established by use of undisputed facts all of the elements of a claim for breach of

1    contract including the amount of allowable damages. Hence, summary judgment Dataway's

2    favor is proper and should be granted.

3    **2. Each Element of a Breach of Oral Contract is Established by Undisputed Facts**

4    AT&T's mischaracterization of Dataway's second counterclaim as "simply alleg[ing]

5    'waiver'" is patently false. See Mot. SJ. p.9 l.1. Dataway is correct in stating that "an allegation

6    of 'waiver' does not constitute a claim for affirmative relief." *Id.* at l.4. Dataway does not allege

7    waiver. Rather, Dataway alleges breach of oral contract. A brief explanation of AT&T's cited

8    case Kern Sunset Oil Co. demonstrates the difference between waiver and the breach of oral

9    contract as alleged by Dataway. Kern Sunset Oil Co. v. Good Roads Oil Co., 214 Cal. 435

10    (1931). In Kern, the plaintiff landlord sued for breach of a lease. However, the landlord had

11    accepted rent from the lessee after the breach occurred without objecting to the breach.

12    Therefore, the court found that the landlord had waived his ability to bring a claim for breach of

13    the lease. Dataway is not attempting to bring an affirmative claim for waiver. Rather, Dataway

14    is bringing a claim for breach of oral contract. The fact that the counterclaim describes AT&T

15    agreeing to "waive its charges for the fraudulent calls" does not transform the properly alleged

16    breach of oral contract claim into an affirmative claim of waiver as AT&T alleges. See Adm.

17    CC. ¶ 21.

18    To prove the existence of an oral contract, a Plaintiff must prove the following

19    elements: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that

20    plaintiff performed all the terms and conditions required under the contract; (4) defendant's

21    breach of the contract in some particular way; and (5) that plaintiff suffered damages as a result

22    of the breach. W. Reserve Life Assur. Co. v. Bratton, 2007 U.S. Dist. LEXIS 46351 (D. Iowa

23    2007)

24    After Dataway contacted AT&T's local managers on September 20, 2006 (see DW

25    001), and requested the removal of the disputed charges from its accounts, an oral agreement

26    was reached in which AT&T agrees to waive its charges for the fraudulent calls once Dataway

27    formally disputed them. See Bate-Stamps DW 003, 006, AT&T 82, Deposition of Francisco

28    Molieri p. 13 l.1-7. On November 10, 2006, Dataway performed its contractual duties.

1   Consequently, Defendant submitted a written denial and sent a duly completed form to AT&T's

2   Fraud Resolution Group with copies to AT&T. See Bate-Stamps 003, AT&T 122-124, AT&T

3   5-6, AT&T 153. However, AT&T failed to perform its contractual obligations. Even though (1)

4   the threatened disconnection was suspended, (2) Dataway was once again reassured that AT&T

5   would drop all charges and (3) AT&T sent a November 2007 account statement stating that

6   Dataway's account was balanced. See Bate-Stamp AT&T141. It was not until January 2007

7   that Dataway was notified of AT&T's referral of the dispute to a collection attorney for

8   litigation proceeding. At that point, Dataway realized that AT&T did not intend to honor its oral

9   contract with Dataway.

10          Dataway has suffered damages in an amount of $ 57,200.00 as a result of AT&T's

11  breach. The damages sought by Dataway for AT&T's breach of contract both naturally arise

12  from and are foreseeable by the parties as arising from a breach of the oral contract. Business

13  interruption and expenditure of time naturally arise from AT&T's breach of its contract. Had

14  AT&T not breached the contract, Dataway would not have had to expend time resolving the

15  improper billing and would not have experienced business interruption. An award of damages

16  to compensate Dataway for this business interruption and its expenditure of time is necessary to

17  put Dataway in as good a position as it would have been had AT&T not breached the contract.

18  See supra, p. 13 l. 5-26.

19          Judgment on Dataway's Second Counterclaim in favor of AT&T is not proper. Dataway

20  has properly established by use of undisputed facts all of the elements of a claim for breach of

21  oral contract including the amount of allowable damages. Hence, summary judgment

22  Dataway's favor is proper and should be granted.

23          **3. Each Element of Fraudulent Inducement to Contract is Proven**

24          Fraudulent inducement to contract is a recognized cause of action. In essence, it is a

25  claim of promissory fraud. Engalla v. Permanente Medical Group, Inc., 64 Cal. Rptr. 2d 843,

26  857 (Cal. 1997). Its elements are (a) a misrepresentation (false representation, concealment, or

27  nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce

28  reliance; (d) justifiable reliance; and (e) resulting damage." Witkin, Summary of Cal. Law (9th

1   ed. 1988) Torts, § 676, p. 778; <u>Civ. Code, § 1709</u>. "An action for promissory fraud may lie

2   where a defendant fraudulently induces the plaintiff to enter into a contract." <u>Lazar v. Superior</u>

3   <u>Court</u>, 12 Cal. 4th 631, 638 (Cal. 1996). In January 2003 AT&T affirmatively misrepresented to

4   Dataway that pursuant to the express terms of the parties' Carrier Slamming Protection

5   agreement, AT&T would be the exclusive long-distance telecommunication carrier and a

6   switching to other services would be impermissible; Dataway would be only responsible for

7   charges for which it had contracted. See Letter of Agency and Carrier Slamming Protection

8   Agreement. SBC/AT&T included this protection in accordance with 47 U.S.C § 258(a), its

9   implementing F.C.C. Regulations and the Public Utilities Code section 2889.5, preventing

10  telecommunication carriers from making unauthorized changes to subscribers' telephone

11  service. In November 2005, AT&T and SBC merged. AT&T assured former SBC customers

12  that their contractual relations will be continued without any changes and under the same

13  conditions. AT&T knew or should have known that its representations were false because other

14  incidents have shown that such a slamming device was not an appropriate means, in particular

15  with regard to the imminent acquisition of SBC by AT&T. See Bate-Stamps 11-23. The narrow

16  wording of the Anti-Slamming Agreement would be useless if not applied to AT&T's

17  sprawling corporate structure. As such, SBC/AT&T knew and did not intend to protect

18  Dataway from switching between different services as required by 47 U.S.C. § 258(a).

19  Nevertheless, AT&T assumed all of SBC's liabilities when it acquired SBC. Moreover, it knew

20  that a switching was possible because the pattern of illegal usage had occurred frequently prior

21  to the disputed incident. See Bate-Stamps 11-23. The technical team based in New Jersey stated

22  in phone conferences with Dataway that it was familiar with the type of phone hacking

23  Dataway had experienced and that such incidents were epidemic. Deposition of Francisco

24  Molieri p. 58 l. 25 – p. 59. l 2, Deposition of Simon Lewis p.45 l.13-25. Despite this

25  knowledge, SBC/AT&T made the aforementioned representations and reassured Dataway that

26  its contracts will be continued by AT&T after it acquired SBC. This was obviously done with

27  the intent to induce Dataway to remain a customer of SBC/AT&T. Justifiable reliance is an

28  essential element of the claim. Such reliance exists when, absent the misrepresentation, the

1 | allegedly defrauded party would *not* have entered into the bargain. "False representations made

2 | recklessly and without regard for their truth in order to induce action by another are the

3 | equivalent of misrepresentations knowingly and intentionally uttered." Engalla, at 857.

4 | Dataway relied on Counterdefendant's representations that Dataway would only be charged for

5 | the contracted rate, and for only authorized services. Dataway also relied on AT&T's

6 | representation that AT&T faithfully assumes SBC's business and obligations. Due to a lack of

7 | prior negative incidents it had no reason to doubt AT&T's representations and was justified in

8 | relying on them. Based on SBC/AT&T's representations regarding its telecommunication

9 | services and its Anti-Slamming protection, Dataway entered into the telecommunication service

10 | contract. Dataway believed AT&T would provide the protection sought for Dataway's business

11 | telecommunication.

12 | An award of damages to compensate Dataway for this business interruption and its

13 | expenditure of time is necessary to put Dataway in as good a position it would have been in had

14 | AT&T not breached the contract. These damages are in evidence as shown supra.

15 | Judgment on Dataway's Third Counterclaim in favor of AT&T is not proper. Dataway

16 | has properly established by use of undisputed facts all of the elements of a claim for Fraudulent

17 | Inducement to Contract including the amount of allowable damages. Hence, summary judgment

18 | Dataway's favor is proper and should be granted.

19 | **4. Each Element of Slamming is Established by Undisputed Facts**

20 | The Telecommunication Act makes it unlawful for telecommunication carriers to

21 | "submit or Execute a change in a subscriber's selection of a provider of telephone exchange

22 | service or telephone toll service except in accordance with such verification procedures as the

23 | Commission shall prescribe." 47 U.S.C. § 258(a).

24 | The facts asserted by AT&T to support its allegation that all changes were authorized

25 | are not in evidence and are not sufficient to eliminate Plaintiff's Fourth Counterclaim.

26 | As discussed above, Dataway asserted in its Counterclaim that hackers illegally accessed the

27 | voice mail system Dataway maintained with AT&T using AT&T's Legacy T Network. See

28 | supra. The assertion that it was Dataway's obligation to prevent hacking is unsupported by the

1    evidence. Dataway had security means in place (see supra). Further, AT&T, not Dataway was

2    in the position to prevent the hacking and resulting phone calls.

3         In his deposition, Simon Lewis states that Dataway has the strongest physical security

4    means in place. The company buildings are secured by biometric fingerprint readers on the

5    front doors (See Deposition of Simon Lewis, p. 35 1.24-25), Medeco locks (Id., p. 36 l.1-5), and

6    card readers (Id., p. 36, l.6). Dataway's voicemail system was secured by a password that was

7    frequently changed (See Deposition of Francisco Molieri, p.12 l.15 to p.15 l. 22). These

8    security means could not have prevented the unauthorized access by third parties because the

9    hackers accessed the voicemail system (see Bate-Stamp AT&T 167) from a remote location

10   outside Dataway's premises. In fact, the fraudulent calls originated from Kansas (Id., p.18 l.15-

11   18) as identified by the caller ID. Deposition of Simon Lewis, p. 11, l.9-13.  This means, only a

12   telecommunication specialist could have avoided an intrusion of the telephone circuit/wire

13   itself. This is also supported by the fact that AT&T informed AT&T of the monitored hacking

14   (See Declaration of Francisco Molieri, p. 8) and that AT&T can easily recognize these calls.

15   See Declaration Simon Lewis, p. 45 l. 18-20.

16        Moreover, the Telecommunications Act makes it unlawful for telecommunications

17   carriers to "...submit or execute a change in a subscriber's selection of a provider of telephone

18   exchange service or telephone toll service except in accordance with such verification

19   procedures as the Commission shall prescribe." 47 U.S.C. § 258(a). In its rules implementing

20   section 258 and conforming its pre-existing anti-slamming regulations to the new statute the

21   Commission established various procedures that carriers must use to verify the subscriber's

22   authorization to submit the preferred carrier change order. These procedures, which vary

23   depending on how the carrier chooses to market its services, include obtaining both "(i)

24   Authorization from the subscriber, and (ii) Verification of that authorization in accordance with

25   the procedures prescribed in this section." 47 C.F.R. § 64.1120(a)(1). "[A]ppropriate

26   verification data..." can be the subscriber's date of birth or his social security number. 47

27   C.F.R. § 64.1120(a)(1), (c)(1), (c)(3)). The court in In Re Matter of Implementation of the

28   Subscriber Carrier Selection held that "...in the course of verifying the subscriber's intention to

1  change his or her long distance service, a submitting carrier's independent, third party verifier is

2  required to elicit confirmation that the person contacted is authorized to make the change.

3  Additionally, the Public Utilities Code Section 2889.5 also contains certain mandatory

4  disclosure requirements for a carrier to follow when making any change in the provider of

5  telephone service. Included among them is to "thoroughly inform the subscriber of the nature

6  and extent of the service being offered…" (Pub. Util. Code, section 2889.5 (a)(1)), verifying

7  whether "…the subscriber intends to make any change in his or her telephone service provider,

8  and explain any charges associated with that change." Pub. Util. Code, section 2889.5(a)(2) In

9  re Implementation of the Subscriber Carrier Selection et al., 23 F.C.C.R. 493.

10      AT&T merely uses an automated computer to identify the caller's authority. This

11  computer cannot distinguish if it is communicating properly with an authorized human or

12  improperly with another machine or computer. These facts establish, that AT&T did not

13  comply with any of the imposed requirements. Therefore, AT employed procedures that clearly

14  violated the Telecommunication Act.

15      Due to this illegal conduct, Dataway has been, and will continue to be injured. An award

16  of damages to compensate Dataway for this business interruption and its expenditure of time is

17  necessary to put Dataway in as good a position it would have been in had AT&T not breached

18  the contract. These damages are in evidence as shown supra.

19      Judgment on Dataway's Fourth Counterclaim in favor of AT&T is not proper. Dataway

20  has properly established by use of undisputed facts all of the elements of a claim for Violation

21  of the Telecommunication Act including the amount of allowable damages. Hence, summary

22  judgment Dataway's favor is proper and should be granted.

23      **5.  Each Element of Tortious Interference with Contractual Relations is Proven**

24      In order to prevail on a claim for tortious interference with contract, plaintiff must show

25  (1) the existence of a valid contract with a third party; (2) defendants' knowledge of that

26  contract; (3) defendants' intentional acts designed to disrupt or induce a breach of the

27  contractual relationship, (4) actual disruption or breach of the contractual relationship, and (5)

28  resulting damage proximately caused by the acts of the defendant. Bank of N.Y. v. Fremont

Matlock Law
Group, PC.

DATAWAY'S OPPOSITION TO AT&T'S
MOTION FOR SUMMARY JUDGMENT                    CASE NO. C07-02440-EDL

1    General Corp., F.3d, 2008 WL 269458 (9th Cir. 2008); Givemepower Corp. v. Pace

2    Compumetrics, Inc., 2007 U.S. Dist. LEXIS 59371 (D. Cal. 2007), 17. Claims for tortious

3    interference with contract do not require pleading that defendants' conduct was independently

4    wrongful because "intentionally interfering with a contract is a wrong in and of itself." Id. at

5    1158.

6         Dataway maintained an economic relationship with SBC/AT&T by using SBC/AT&T

7    as its only business telecommunication carrier. Plaintiff alleges that the hacker knew and

8    purposefully chose to access a voicemail system set up with AT&T. AT&T had superior

9    authority and control over the Dataway's account, yet recklessly did not provide sufficient

10   security to impede or prevent hackers from accessing Dataway's voice mail system. The only

11   available security Dataway could employ itself was to protect its voicemail system using a

12   password which it periodically changed. Deposition of Francisco Molieri p.12 l.15 to p.15 l. 22

13        AT&T's intentional failure to properly secure Dataway's SBC/AT&T account led to

14   abnormal and excessive charges that brought about the current dispute between Dataway and

15   AT&T.

16        Dataway has been, and will continue to be irreparably injured by the hacker's reckless

17   impairment of its contractual relationship, specifically AT&T's failure to prevent fraudulent use

18   of the Legacy S services for which Dataway and SBC originally contracted.

19        Moreover, AT&T's creation of a Legacy T account and its billing for Legacy T network

20   services were intentional interferences with the existing relationship Dataway had with

21   SBC/AT&T, its Legacy S account. AT&T accurately states that the tort of intentional

22   interference may be asserted only against "outsiders" where "outsiders" merely means parties

23   that have no legitimate social or economic interest in the contractual relationship. Kasparian v.

24   County of L.A., 45 Cal. Rptr. 2d 90, 100 (Cal. App. 2d Dist. 1995). Here, the original

25   contracting parties were Dataway and SBC with whom Dataway maintained a Legacy S

26   account. The interference complained of, was the creation of an AT&T long distance Legacy T

27   account. While AT&T, due to its merger with SBC, is technically a party the Court should treat

28   AT&T as an "outsider." AT&T still distinguishes between Legacy S (under the SBC contracts)

1    and Legacy T (under the AT&T contracts). AT&T had no legitimate interest in the Legacy S

2    contract because it never negotiated the Legacy S service rates and conditions and in fact

3    desired to adapt Dataway's account to AT&T standards.

4         Public policy considerations dictate that the Court should recognize AT&T's tortuous

5    interference with the contract originally negotiated between Dataway and SBC. AT&T is an

6    international corporation of significant power, one of only 30 companies to be deemed

7    important to be listed on the Dow Jones Industrial Average. Such a corporation is capable of

8    exerting significant pressure on its customers, particularly small business customers that depend

9    on the services provided by AT&T for the existence of their business. While losing a customer

10   is a detriment to AT&T's business, AT&T is clearly in a position of strength when dealing with

11   its small business customers.

12        AT&T has engaged in tortuous behavior that caused detriment to Dataway. AT&T's

13   behavior directly interfered with the contract for services negotiated and entered into between

14   Dataway and SBC. Had AT&T not recklessly failed to safeguard its system, there would have

15   been no interference with the Dataway/SBC contract. Failure by the Court to hold AT&T liable

16   for this behavior would allow AT&T, the proverbial Goliath, to tortuously interfere with

17   Dataway, the proverbial David, and face no consequence.

18        The remaining elements of this cause of action are supported by undisputed facts as

19   well. See Dataway's Counterclaim, p. 15 1.5-p. 16 1. 16 and p. 20 1. 9-25; Bate-Stamp AT&T5

20   and AT&T6, In January 2003, Dataway and SBC/AT&T entered into a service contract. Ms.

21   Carswell's e-mails, the bills and the deposition show that AT&T knew of this business

22   relationship due to AT&T's regular business activities it should have known of the contract

23   between Dataway and the SBC/AT&T.  Nevertheless, AT&T created an account without

24   Dataway's knowledge or authorization improperly on the basis that an unknown third person or

25   persons illegally accessed the voice mail system Dataway maintained with AT&T and used

26   AT&T's Legacy T network to conduct calls to the Philippines. See Deposition of Francisco

27   Molieri, p. 8. By reason of the resulting charges AT&T sent a bill to Dataway knowing it was

28   exceeding contracted rate ultimately encouraging a dispute over Dataway's original service

1  contract. See Bates-Stamps AT&T2. On November 3, 2006 and April 3, 2008 (after

2  commencement of the present litigation), AT&T sent a disconnect notice threatening the

3  termination of the service that Dataway had contracted for its business telecommunication.

4  Dataway, worried about an interruption of its services and searching for alternative carriers

5  contacted AT&T's local managers trying to resolve the problem.

6       Due to both interferences by AT&T, Dataway has been, and will continue to be injured.

7  An award of damages to compensate Dataway for this business interruption and its expenditure

8  of time is necessary to put Dataway in as good a position it would have been in had AT&T not

9  breached the contract. These damages are in evidence as shown supra.

10       Judgment on Dataway's Fifth Counterclaim in favor of AT&T is not proper. Dataway

11  has properly established by use of undisputed facts all of the elements of a claim for Tortious

12  Interference with Contractual Relations including the amount of allowable damages. Hence,

13  summary judgment Dataway's favor is proper and should be granted.

14  **VI. <u>CONCLUSION</u>**

15       For the foregoing reasons, Defendant Dataway respectfully requests that this Court enter

16  summary judgment in Dataway's favor on all counts of its Countercomplaint and denies

17  Plaintiff's Motion for Summary Judgment on AT&T's Complaint for Damages.

18

19       Dated: July 15, 2008             MATLOCK LAW GROUP

20

21

22  By: _____

23

24  Anne-Leith Matlock, Esq.
                           Attorneys for Defendant/ Counterclaimant

25                             Dataway, Inc.

26

27

28