1  Matlock Law Group, PC
   Anne Leith Matlock, SBN 244351
2  1485 Treat Blvd., Suite 200
3  Walnut Creek, CA 94597
   Office: 925-944-7131
4  Fax: 925-944-7138
   E-mail: anne-leith@matlocklawgroup.com
5
   Attorneys for Defendant,
6  Dataway, Inc.

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  AT&T Corp.                          **CASE NO. C07-02440 EDL**

13          PLAINTIFF,

14      v.                              **DECLARATION OF ANNE-LEITH
                                        MATLOCK  IN SUPPORT OF
15                                      DEFENDANT'S OPPOSITION TO
                                        PLAINTIFF'S MOTION FOR
    Dataway, Inc.                       SUMMARY JUDGMENT**
16

17          DEFENDANT.                  **Date: August 5, 2008**
                                        **Time: 9:00 a.m.**
18                                      **Courtroom: E**

19  Dataway, Inc.

20          COUNTERCLAIMANT

21      v.

22  AT&T Corp.

23          COUNTERDEFENDANT

24

25

26          I, ANNE-LEITH MATLOCK, declare:

27

28                              1

Matlock Law
Group, PC.

1      1.      I am an attorney at law licensed to practice before all Courts of the State

2    of California and before the Courts of the Eastern and Northern District of California.  I

3    am a partner of the law firm Matlock Law Group, attorneys of record for Defendant and

4    Counter-Claimant Dataway, Inc. (hereinafter "Dataway").

5      2.      Attached as Exhibit A is a copy of the Notice of Deposition for the most

6    knowledgeable officer, director, managing agent, employee and/or agent of the Fraud

7    Resolution Group (Investigative Management), responsible for AT&T customers in the

8    San Francisco area, who worked for AT&T and/or can testify on events or surrounding

9    circumstances relating to fraud resolution and shortfall investigation between May 2006

10   and May 2007, and who are most qualified to testify on its behalf regarding the

11   following areas of examination.

12     3.      Attached as Exhibit B is a copy of the Disconnect Notice received by

13   Dataway from AT&T dated November 3, 2006.

14     4.      Attached as Exhibit C is a copy of the Disconnect Notice received by

15   Dataway from AT&T dated April 3, 2008.

16     5.      Attached as Exhibit D is a copy of the Answer and Counterclaim filed

17   by Dataway in this matter on October 17, 2007.

18     6.      These exhibits are true and accurate representations of the original

19   documents.

20        I declare under penalty of perjury under the laws of the United States that the

21   foregoing is true and correct.  I could and would competently testify thereto, if called

22   upon as a witness.

23        This Declaration is executed this 15th day of July, 2008, at Walnut Creek,

24   California.

25

26                                Anne-Leith Matlock, Esq.
                                  Attorney for Dataway, Inc.
27

28

Matlock Law
Group, PC.

DECLARATION OF ANNE-LEITH MATLOCK IN
SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                    Case No. C07-02440 – EDL

# EXHIBIT A

**Matlock Law Group,** A Professional Corporation
Anne-Leith W. Matlock, SBN 244351
1485 Treat Blvd., Suite 200
Walnut Creek, CA 94597
Telephone: 925-944-7131
Facsimile: 925-944-7138
e-mail: anne-leith@matlocklawgroup.com

Attorneys for Defendant and Counterplaintiff,
DATAWAY.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AT&T CORP.<br><br>        PLAINTIFF,<br><br>    v.<br><br>Dataway, Inc.<br><br>        DEFENDANTS. | **CASE NO.  C07-02440 EDL**<br><br>**REVISED NOTICE OF DEPOSITION** |
| Dataway, Inc.<br><br>        COUNTERCLAIMANT<br><br>    v.<br><br>AT&T Corp.<br><br>        COUNTERDEFENDANT | |

///

Matlock Law
Group, PC.

REVISED NOTICE OF DEPOSITION

1

CASE NO. C07-02440 EDL

1      PLEASE TAKE NOTICE that Defendant and Counterplaintiff Dataway, pursuant

2  to Federal Rules of Civil Procedure, Rule 30 and the Meet and Confer conducted on

3  April 25, 2008, pursuant to NDCA Local Rules 30-1, will take the oral deposition of

4  Plaintiff and Counterclaimant AT&T at 12:00 p.m. on April 29, 2008, at the office of

5  Matlock Law Group, 1485 Treat Blvd., Suite 200, Walnut Creek, CA 94597, 925-944-

6  7131, before a certified court reporter authorized to administer oaths in the State of

7  California who is present at the specified time and place. The deposition will last 1 day

8  up to 7 hours pursuant to Federal Rules of Civil Procedure, Rule 30(d)(1).

9

10      PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rules of Civil

11  Procedure, Rule 30, the Deponent shall designate and produce at the deposition

12  officers, directors, managing agents, employees and/or agents of the Fraud Resolution

13  Group (Investigative Management), responsible for AT&T customers in the San

14  Francisco area, who worked for AT&T and/or can testify on events or surrounding

15  circumstances relating to fraud resolution and shortfall investigation between May 2006

16  and May 2007, and who are most qualified to testify on its behalf regarding the

17  following areas of examination:

18

19      (1) The policies and procedures regarding fraud resolution and shortfall

20  investigation.

21

22      (2) The events and circumstances surrounding the report of the fraudulent calls by

23  Dataway and the fraud complaint filed with you.

24

25      (3) The course of action and procedure of the Fraud Resolution Group upon

26  discovery of the disputed calls.

27

28

Matlock Law
Group, PC.

1        (4) The events and circumstances surrounding the course of action and procedure

2    of the Fraud Resolution Group upon discovery of the disputed calls.

3

4        (5) The Communications between the Fraud Resolution Group and AT&T's local

5    managers or other officers, directors, or employees of AT&T.

6

7        (6) The communications between the Fraud Resolution Group and Francisco

8    Molieri, Simon Lewis and/or other officers, directors or employees of Dataway.

9

10       (7) Information reflecting or concerning AT&T's policies, procedures and

11   protocol for resolving fraud complaints.

12

13

14       PLEASE TAKE FURTHER NOTICE that, pursuant to Federal Rules of Civil

15   Procedure, Rule 34, the Deponent shall designate and produce at the deposition all

16   documentation supporting the above named areas of examination deposition as well as

17   documentation pursuant to Attachment A.

18

19

20   DATED: April 25, 2008              MATLOCK LAW GROUP

21

22                         By: _____

23                              Anne-Leith W. Matlock
                                Attorneys for Dataway

24

25

26

27

28

3

**Attachment A:**

Pursuant to Federal Rules of Civil Procedure, Rule 30, Defendant and Counterplaintiff Dataway requests that Deponent shall produce all pertinent documentation at the noticed oral deposition   The requested documents, electronic data, and electronic media contains in particular document regarding the report of the fraudulent calls by Dataway, the course of action and procedures taken by the Fraud Resolution Group upon discovery of the disputed calls, and its communication with AT&T's local managers, Francisco Molieri, Simon Lewis.as and any other third person regarding any and all of Dataway's telecommunication services and issues with AT&T. This is a more specific continued request as previously served on AT&T January 17, 2008 in Dataway's Request for Production of Documents Set One (Attachment B), request no. 3, 4, 5, 6, 9, 10, 11, 12, 13 and 14 pursuant to Federal Rules of Civil Procedure Rule 34.

Matlock Law
Group, PC.

REVISED NOTICE OF DEPOSITION                                    CASE NO. C07-02440 EDL

1

## CERTIFICATE OF SERVICE

2    I, Lesley Mejia, declare:

3    I am a citizen of the United States and am employed in the County of Contra

4    Costa, State of California. I am over the age of 18 years and am not a party to the

5    within action. My business address is Matlock Law Group, A Professional Corporation,

6    1485 Treat Blvd., Suite 200, Walnut Creek, CA 94597. I am personally familiar with

7    the business practice of Matlock Law Group, A Professional Corporation.

8    On  April 25, 2008, following ordinary business practice, I caused service of the

9    following documents:

10

11    **REVISED NOTICE OF DEPOSITION**

12    to be completed by:
     U.S. First Class Mail and facsimile to

13    Timothy Carl Aires
14    Aires Law Firm
     180 Newport Center Drive, Suite 260
15    Newport Beach, CA 92660
     949 718-2021
16    tca@arlawyers.com

17    I declare under penalty of perjury under the laws of the United States that the

18    above is true and correct and that this declaration was executed at Walnut Creek,

19    California.

20

21

22    DATED: April 25, 2008

23                                    Lesley Mejia

24

25

26

27

28

# EXHIBIT B

at&t

Attachment #4

00000603 01 MB  0.326 01  FMC
||l||l||l||ll||ll|l|l||l||l|l||l||ll||
DATAWAY DESIGNS
180 REDWOOD ST
SAN FRANCISCO CA 94102-3280

# ***DISCONNECT NOTICE***

November 3, 2006

Account Number: 0517883374001                Total Due $  11534.67

Dear Valued Customer:

We are concerned about your account.  Our records indicate that you
have an unpaid AT&T bill in the amount of $  11534.67, of which
$  11534.67 is past due.

If you have already mailed your payment, thank you, and please
disregard this letter.  If you have not yet sent your payment, please
do so now.

Please remit your payment immediately to:

                    AT&T
          1820 E. Sky Harbor Circle South
             Phoenix, AZ 85034-9700
                800-542-2232

If AT&T does not receive your payment of $  11534.67 by 4:00 PM CST on
11/13/06, AT&T may immediately, or thereafter, exercise its right to
suspend or disconnect your local and/or toll services, as permitted by
law, and/or require a deposit.  We must inform you that once
disconnected, you must pay all past due amounts in full to
re-establish your service.  In addition, you must place a new order to
re-establish your service and may be subject to paying full connection
charges and a security deposit.  Service will resume after a
reconnection interval.  If disconnection is necessary and your balance
remains unpaid, your account may be referred to an Outside Collection
Agency for handling.  Your account may be subject to referred to a
Credit Bureau.  We hope this action will not be required.

at&t

YOUR RIGHTS: In some states, your local service cannot be disconnected for nonpayment of nonregulated charges. Please call the number above to advise if your unpaid balance is for nonregulated charges only. If your questions are not resolved after you have called AT&T, customers may contact your state public utilities commission.

CA customers: The California Public Utilities Commission (PUC) requires that AT&T make available to you the list of telephone numbers associated with this account and subject to this notice. If you would like a list of the telephone numbers residing on this account, please call 800-542-2232. The California PUC contact information is as follows: 505 Van Ness Ave, San Francisco, CA 94102, or 800-649-7570. You may qualify to pay your bills in installments and avoid shut-off, but you must contact the local exchange carrier's business office by the close of business on the last day to pay printed on this notice and ask for a delayed arrangement.

NM customers: You may be eligible for a temporary waiver of disconnection in the event of an emergency or serious illness.

If you have questions regarding your account, please call 800-542-2232. AT&T's working hours are from 7:00AM to 7:00PM Central time. You can also pay your bills online by logging into your AT&T BusinessDirect account at:

        http://www.att.com/smallbusinesslogin

and accessing the "Pay Your Bills" option.

Thank you for your immediate attention.

AT&T

# EXHIBIT C

at&t

6846.1.15.5326 1 AB 0.360

DATAWAY DESIGNS
180 REDWOOD ST
SAN FRANCISCO CA  94102-3280

# ***DISCONNECT NOTICE***

April 3, 2008

Account Number: 0517883374001                    Total Due $  11534.67

Dear Valued Customer:

We are concerned about your account.  Our records indicate that you
have an unpaid AT&T bill in the amount of $  11534.67, of which
$  11534.67 is past due.

If you have already mailed your payment, thank you, and please
disregard this letter.  If you have not yet sent your payment, please
do so now.

Please remit your payment immediately to:

               AT&T
       1820 E. Sky Harbor Circle South
           Phoenix, AZ 85034-9700
               800-542-2232

If AT&T does not receive your payment of $  11534.67 by 4:00 PM CST on
04/12/08, AT&T may immediately, or thereafter, exercise its right to
suspend or disconnect your local and/or toll services, as permitted by
law, and/or require a deposit.  We must inform you that once
disconnected, you must pay all past due amounts in full to
re-establish your service.  In addition, you must place a new order to
re-establish your service and may be subject to paying full connection
charges and a security deposit.  Service will resume after a
reconnection interval.  If disconnection is necessary and your balance
remains unpaid, your account may be referred to an Outside Collection
Agency for handling.  Your account may be subject to referred to a
Credit Bureau.  We hope this action will not be required.

000011660



YOUR RIGHTS: In some states, your local service cannot be disconnected for nonpayment of nonregulated charges. Please call the number above to advise if your unpaid balance is for nonregulated charges only. If your questions are not resolved after you have called AT&T, customers may contact your state public utilities commission.

CA customers: The California Public Utilities Commission (PUC) requires that AT&T make available to you the list of telephone numbers associated with this account and subject to this notice. If you would like a list of the telephone numbers residing on this account, please call 800-542-2232. The California PUC contact information is as follows: 505 Van Ness Ave, San Francisco, CA 94102, or 800-649-7570. You may qualify to pay your bills in installments and avoid shut-off, but you must contact the local exchange carrier's business office by the close of business on the last day to pay printed on this notice and ask for a delayed arrangement.

NM customers: You may be eligible for a temporary waiver of disconnection in the event of an emergency or serious illness.

If you have questions regarding your account, please call 800-542-2232. AT&T's working hours are from 7:00AM to 7:00PM Central time. You can also pay your bills online by logging into your AT&T BusinessDirect account at:

http://www.att.com/smallbusinesslogin

and accessing the "Pay Your Bills" option.

Thank you for your immediate attention.

AT&T

# EXHIBIT D

**Matlock Law Group,** A Professional Corporation
Anne-Leith W. Matlock, SBN 244351
961 Ygnacio Valley Road
Walnut Creek, CA 94596
Office: 925-944-7131
Fax: 925-938-4625
e-mail: anne-leith@matlocklawgroup.com

Attorney for Defendant/Counterclaimant.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AT&T Corp. <br><br> PLAINTIFF, <br><br> v. <br><br> Dataway, Inc. <br><br> DEFENDANT. <br><br>––––––––––––––– <br><br> Dataway, Inc. <br><br> COUNTERCLAIMANT <br><br> v. <br><br> AT&T Corp. <br><br> COUNTERDEFENDANT | **CASE NO. C07-02440 MMC** <br><br><br> **DEFENDANT DATAWAY, INC.'S ANSWER AND COUNTERCLAIM TO COMPLAINT FILED BY AT&T CORPORATION** |

1

TABLE OF CONTENTS

Parties, Jurisdiction and Venue - including lack of jurisdiction over the subject

matter and improper venue ........................................................................ 2

First Claim for Relief ................................................................................ 4

Second Claim for Relief ............................................................................ 4

AFFIRMATIVE DEFENSES ...................................................................... 5

Insufficiency of Process ............................................................................ 5

Insufficiency of Service of Process ............................................................ 5

Failure to State Claim upon which Relief can be Granted ........................... 7

Third Party Conduct ................................................................................. 8

Waiver ..................................................................................................... 9

Failure to Mitigate ................................................................................. 10

Unclean Hands ...................................................................................... 10

Unjust Enrichment ................................................................................ 11

Failure to Exhaust Administrative Remedies ........................................... 12

Usury .................................................................................................... 12

PRAYER FOR RELIEF .......................................................................... 13

COUNTERCLAIM .................................................................................. 14

PARTIES, JURISIDICTION AND VENUE ............................................... 14

BACKGROUND .................................................................................... 15

BREACH OF EXPRESS CONTRACT ...................................................... 16

BREACH OF ORAL CONTRACT ............................................................ 17

FRAUDULENT INDUCEMENT TO CONTRACT ..................................... 18

VIOLATION OF THE TELECOMMUNICATION ACT – SLAMMING ......... 19

TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS ........... 20

PRAYER FOR RELIEF .......................................................................... 21

i

TABLE OF AUTHORITIES

**Cases**

Louisville & Nashville Railroad Co. v. Mottley, 211 U.S. 149, 152 (1908)......................3

Pessler v. Metcalf, 2007 WL 1696996, 9...........................................................................8

Posern v. Prudential Securities, Inc., Not Reported in F.Supp.2d, 2004 WL 771399

    (N.D.Cal.)...................................................................................................................11

**Statutes**

28 U.S.C. § 1331 ..............................................................................................................4

29 U.S.C. § 1391 ..............................................................................................................5

29 U.S.C. § 1391(a) .........................................................................................................5

47 CFR 64.1110 .............................................................................................................16

47 U.S.C  § 258 ..............................................................................................................20

47 U.S.C § 258 ...............................................................................................................20

47 U.S.C. § 201 et. seq...................................................................................................9

47 U.S.C. § 258 ...........................................................................................12, 16, 21

47 U.S.C. §§ 201 et seq..................................................................................................4

AT&T Tariff F.C.C. No. 30 .............................................................................................6

AT&T Tariff F.C.C. No.1 ...............................................................................................6

FRCP § 4..........................................................................................................................7

FRCP § 12........................................................................................................................7

ii

**ANSWER**

Pursuant to Federal Rule of Civil Procedure 12(a)(1),  Defendant Dataway, Inc. (hereinafter "Dataway" or "Defendant") hereby answers the unverified Complaint of Plaintiff AT&T Corporation (hereinafter "AT&T") as follows:

**Parties, Jurisdiction and Venue**

1.    In answer to paragraph one of the Complaint, Defendant admits that Plaintiff AT&T is a New York corporation, doing business in the State of California.

2.    Defendant Dataway admits that Dataway is a California corporation with its principal place of business in San Francisco, California.

3.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3 of the complaint, and therefore denies such allegation. Furthermore, Dataway denies any alleged joint responsibility with unknown Defendants.

4.    Defendant Dataway denies all of the allegations of paragraph 4. The unknown Defendants were not agents or employees of Dataway, were not acting within the course and scope of the agency, and did not act with Dataway's express or tacit permission or consent.

**Lack of Jurisdiction over the Subject Matter**

5.    In answer to paragraph 5 Defendant denies that this court has subject matter jurisdiction. Federal Courts have limited subject matter jurisdiction, only have the authority to hear a claim if the parties are diverse or if the issue at bar deals with a federal question within the meaning of 28 U.S.C. § 1331. Diversity, even though it was not claimed by the defendant, would not provide for proper subject matter jurisdiction because AT&T is doing business in California and the matter in controversy does not meet the minimum threshold of $ 75,000. A federal question

2

1    pursuant to 28 U.S.C. § 1331 is not presented either, because any potential rights

2    arising out of 47 U.S.C. §§ 201 et seq., as argued by Plaintiff, do not implicate federal

3    issues on laws. In order to establish federal question jurisdiction that is not original

4    jurisdiction, a right or immunity created by the law of the United States must be an

5    essential element of the plaintiff's cause of action. According to the well-pleaded

6    complaint rule the Plaintiff must allege the federal question in his complaint, which

7    means that either federal law creates the cause of action for the plaintiff or the

8    plaintiff's complaint requires resolution of a substantial question of federal law. An

9    anticipated federal question defense, however, will not raise federal question subject

10   matter jurisdiction. <u>Louisville & Nashville Railroad Co. v. Mottley</u>, 211 U.S. 149,

11   152 (1908). Allegedly, the controversy-crucial sections concern a utility company's

12   ability to, through interstate commerce, collect for its services. However, this is not

13   an issue here. The issue is whether the client owes money, and if so how much. Thus,

14   this is a collection case. The law, however, does not allow collections to be heard

15   exclusively in Federal Court. It does allow for damages and remedies to be heard in

16   Federal Court as to rights and services and actions through interstate commerce

17   activity contained in a statute, but such is not the matter before this court. Therefore,

18   AT&T has failed to demonstrate any federal subject matter jurisdiction.

19                                    **Improper Venue**

20       6.      Defendant Dataway denies that this court is the proper court for this

21   action pursuant to Title 29 U.S.C. § 1391(a)(2). Section 1391(a) does not have a

22   subdivision 2 and, thus, cannot establish what appears to be venue. Besides, 29

23   U.S.C. § 1391 is a statute dealing with labor, governing the methods for computing

24   withdrawal liability. This does not establish this court as a proper court for trail. For

25   these two reasons, 29 U.S.C. § 1391 does not support Plaintiff's venue claim.

26

27

28

---

3

**First Claim for Relief**

7.     In response to paragraph 7 of the complaint Defendant Dataway refers to and incorporates its responses set forth above to each and every allegation in paragraphs 1 through 6 as if fully set forth herein.

8.     Defendant Dataway admits the allegations set forth in paragraph 8 of the complaint. Dataway consolidated all its telecommunication services with SBC/AT&T.

9.     In response to paragraph 9 Defendant Dataway admits that the disputed amount was included on invoices presented to Dataway and that, generally, payments are due upon presentation of the invoices. Dataway admits, that it was billed for charges in the amount of $ 17,856.30 when its system was compromised. Defendant Dataway, however, denies based on lack of information or knowledge if the payment was due pursuant to AT&T Tariff F.C.C. No.1, Section 2.5 or, alternatively, AT&T Tariff F.C.C. No. 30.

10.     Defendant Dataway admits that it neither paid the whole nor any part of the amount due although demand therefore has been made, but otherwise denies that it owed the sum of $ 11,534.67 to Plaintiff together with prejudgment interest of $ 5.69 per day deployed since September 25, 2006, pursuant to AT&T Tariff F.C.C. No.1, Section 2.5.4.

**Second Claim for Relief**

11.     Defendant Dataway refers to and incorporates its responses set forth above to each and every allegation in paragraphs 1 through 10 as if fully set forth herein.

12.     In response to paragraph twelve, Defendant Dataway denies that it has become indebted to Plaintiff. The services were not rendered to Defendant Dataway at their special instance and request, and Defendant Dataway never agreed to pay the

4

1    sum of $ 11,534.67 for the services. Furthermore, Defendant Dataway disputes that

2    this sum is the reasonable value of the services.

3        13.    Defendant Dataway admits that it did not pay all or any part of the

4    disputed amount of $ 11,534.67 together with prejudgment interest from September

5    25, 2006.

6

7    ### AFFIRMATIVE DEFENSES

8    #### First Defense

9    #### Insufficiency of Process

10        14.    Dataway alleges that Plaintiff's process was insufficient.

11        15.    Pursuant to Fed. R. Civ. P. § 4 the Plaintiff is responsible for service of

12    summons and complaint. Thereby, the summons has to be proper according to Fed. R.

13    Civ. P. § 4(a). The documents that were dropped off on the premises of Dataway,

14    however, were not complete. Missing was the reassignment order and the new case

15    management schedule.

16        16.    This incompleteness of the documents served renders the process

17    insufficient.

18

19    #### Second Defense

20    #### Insufficiency of Service of Process

21        17.    Defendant Dataway alleges that the mode of service of process was

22    insufficient pursuant to Fed. R. Civ. P. § 12(b)(5).

23        18.    According to Fed. R. Civ. P. § 4(h)(1) the summons upon a

24    corporation in a judicial district of the United States are served "…in the manner

25    prescribed for individuals by subdivision (e)(1), or by delivering a copy of the

26    summons and of the complaint to an officer, a managing or general agent, or to any

27

28

1    other agent authorized by appointment or by law to receive service of process and, if

2    the agent is one authorized by statute to receive service and the statute so requires, by

3    also mailing a copy to the defendant... ."

4        19.    The plaintiff alleges that Defendant was, at first, served in person, and

5    then, secondly, by service upon the company's agent for service, both on July 10,

6    2007. However, personal service upon Dataway is not possible because no officer

7    was present, and Simon Lewis, Dataway's agent for service, was, at first, out of the

8    country and then out of the state and did not return to Dataway's office until July 16,

9    2007.

10        20.    The process server, in fact, entered the company's premises, and when

11    all employees refused to accept the documents, he merely placed the summons and

12    the complaint on the counter.

13        21.    Furthermore, this alleged service of process did not take place on July

14    10, 2007  but on July 11, 2007. See Paragraph 11, Declaration of Simon Lewis

15    attached hereto as Exhibit C.

16        22.    The court docket documents No. 9 and 10 (palpably by mistake titled

17    No. 11) also support this unsoundness in regard of the date and kind of service. Both

18    documents are dated July 12, even though the second proof of service is supposed to

19    be a subsequent correction of a retroactively produced proof of service. Yet, the

20    actually rendered service cannot be changed subsequently. Rather, the amendment

21    was merely a formal correction.

22        23.    All this together impairs the document's authenticity and supports

23    Defendant's claim that Dataway was not served properly.

24

25

26

27

28

### Third Defense

### Failure to State Claim upon which Relief can be Granted

24.    Defendant alleges that AT&T failed to state a claim upon which relief can be granted.

25.    Plaintiff fails to state facts that could support the elements of a claim under 47 U.S.C. § 201 et. seq as set forth in count one.

26.    The claimed sections of 47 U.S.C. concern a utility company's liability to establish tariffs that are just and reasonable. According to these statutes, long-distance carriers are required to file a "tariff" that contains their rates, terms and conditions. The purpose of the Communications Act provisions creating a cause of action for recovery of the damages for which a common carrier may be liable under the provisions of the Act's wire and radio communications chapter is to allow persons injured by violations of the Act's "just and reasonable" section to bring actions for damages.

27.    Thus, the overall application allows for the institution of private civil causes of actions for violations of the Telecommunications Act for any act of an interstate carrier that may be "unlawful." However, the Communications Act does not allow for claims of a service provider against the user and does not govern other issues, such as contract formation and breach of contract, that arise in a detariffed environment.

28.    Thus, the alleged sections do not provide for a cause of action upon which relief can be granted.

29.    Plaintiff also fails to state facts which could establish the elements of a quantum meruit claim, AT&T's second count.

30.    Quantum Meruit is imposed to avoid the unjust enrichment of one party at the expense of another. This doctrine by which "…the law implies a promise

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM                         CASE NO. C07-02440 MMC

1   to pay for services performed under circumstances disclosing that they were not

2   gratituously rendered." Pessler v. Metcalf, 2007 WL 1696996, 9. "To recover in

3   Quantum Meruit, a party need not prove the existence of a contract, but it must show

4   the circumstances were such that 'the services were rendered under some

5   understanding or expectation of both parties that compensation therefore was to be

6   made.'" Pessler, at 9. In the case at hand, there was no understanding of any kind that

7   compensation was to be made, in particular, because Dataway did not receive any

8   services. It is established that an unauthorized intervening third party used AT&T's

9   services by accessing Dataway's voice mail system. Defendant also reported these

10   unauthorized acts to the California Public Utility Commission (C.P.U.C.) and the

11   Federal Communication Commission (F.C.C.) asserting that an unauthorized party

12   herein referred to as a "hacker" accessed the "Dataway" account and misused it. Such

13   criminal conduct by a third party does not trigger the doctrine of Quantum Meruit as

14   alleged by Plaintiff. Quantum Meruit rather would require that a recipient use

15   services that were obviously not free and, therefore, recipient should have expected to

16   pay for such services and, in fact, is obliged to do so.

17        31.    Thus, Plaintiff fails to state facts that could support the elements of a

18   Quantum Meruit claim.

19

20                              **Fourth Defense**

21                            **Third Party Conduct**

22        32.    Defendant alleges that some or all of AT&T's claims are barred

23   because Defendant Dataway's actions were not, or rather Dataway did not carry out

24   any actions that were the actual or proximate cause of any damages to AT&T.

25        33.    Dataway neither carried out, nor did it authorize calls through AT&T's

26   Legacy T network to the Philippines on July 24, 2006. In fact, Dataway never

27

28

<hr>

                                    8

1   subscribed to this AT&T service. Merely the calls routing number pointed to

2   Dataway's voice mail system on an existing Dataway account but Defendant did not

3   place the disputed phone calls. Rather, the calls were made by an unauthorized,

4   unknown intervening third party actor, hackers. This constitutes intervening criminal

5   activity that was carried out by an unknown third party.

6       34.    Therefore, Dataway cannot be held liable for the alleged claims.

7   AT&T's claims are barred for this reason.

8

9                        **Fifth Defense**

10                          **Waiver**

11      35.    Defendant alleges that some or all of AT&T's claims are barred by the

12   doctrine of waiver.

13      36.    AT&T promised Dataway that it would waive the charges for the

14   fraudulent calls once Dataway disputed them because such hacker incidents recently

15   occurred frequently.

16      37.    Dataway reasonably relied on this promise, submitted the required

17   request and multiple correspondence with different AT&T subsidiaries and

18   departments.

19      38.    Despite this agreement, AT&T sent a Past Due Reminder stating that

20   the balance was still open and, shortly after, a notice of disconnect for the actual

21   Dataway account.

22      39.    The waiver agreement and Defendant's reliance thereon, bars some or

23   all of Plaintiff's claims.

24

25

26

27

28

                               9

**Sixth Defense**

**Failure to Mitigate**

40.    Plaintiff's claims are barred because AT&T failed to prevent the damages even though it was contractually obliged to do so.

41.    Dataway consolidated all its telecommunication services with SBC/AT&T which in turn set up a slamming protection, a means to prevent a switching of telecommunication services. The F.C.C. also imposed rules implementing 47 U.S.C. § 258 to combat slamming, requiring verification on carrier freezes in which the local company agrees not to change the customer's service without direct instructions from the customer.

42.    Despite this security means, the hackers were able to access Dataway's voice mail system to use AT&T's Legacy T network, a service Dataway never subscribed to, and an account that was never authorized by Defendant.

43.    Thus, Plaintiff's claims are barred because AT&T did not mitigate its alleged damages.

**Seventh Defense**

**Unclean Hands**

44.    Defendant alleges that some or all of Plaintiff's claims are barred by the doctrine of unclean hands.

45.    AT&T was contractually and statutorily obliged to set up protections against fraudulent access of client accounts by third parties and against slamming. It entered into an Anti-Slamming Agreement with Dataway and was bound by the F.C.C. Anti-Slamming Rules that prohibit customer's service changes without direct instructions from the customer.

---

10

46.     Due to AT&T's failure to fulfill its contractual and statutory

obligations, the hackers were able to access and misuse Dataway's voice mail system.

This criminal conduct created the outrageous charges Plaintiff claims now.

47.     Therefore, all or some of Plaintiff's claims are barred because plaintiff

caused or contributed to the damages claimed in the Complaint.

### Eighth Defense

### Unjust Enrichment

48.     Defendant alleges that some or all of AT&T's claims for payment are

barred by the doctrine of unjust enrichment.

49.     Even if the disputed phone calls were to be attributed to Dataway even

though they were not authorized by Dataway, Plaintiff would be unjustly enriched if

Dataway should be forced to pay the claimed amount. The elements that must be

established to prove unjust enrichment are (1) receipt of a benefit and (2) unjustified

retention of that benefit at another's expense. Posern v. Prudential Securities, Inc., Not

Reported in F.Supp.2d, 2004 WL 771399 (N.D.Cal.). If the disputed calls were

charged to "Dataway's" number and, thus, were made under the existing SBC/AT&T

contract, Defendant, at most, should be charged the rate determined in the contract.

According to the contractual long distance plan rate, calls to the Philippines would

cost $ 0.30 cents per minute. The arbitrary $5.67 rate used to calculate the

unauthorized calls, however, is 1,920% higher than Defendant contracted for had the

calls been authorized. At the contracted rates the cost of these 1,628 minutes of

unauthorized calls would be merely $ 488.80, plus corresponding related connectivity

charges and taxes. Thus, any demand to pay a sum above the contractual amount

would constitute a breach of contract and further facilitate the unjust enrichment of

plaintiff.

---

11

50.     Additionally, under the above analysis, any payment by defendant of plaintiff's previously proposed settlement offer would also constitute unjust enrichment because at best, the settlement offer was a 50% discount on the unconscionable rate used to calculate Plaintiff's demands for payment.

51.     Thus, any payment by Defendant would unjustly enrich Plaintiff.

### Ninth Defense

### Failure to Exhaust Administrative Remedies

52.     Plaintiff failed to pursue the available administrative avenues.

53.     To resolve the dispute, Defendant Dataway filed a complaint with the F.C.C. and also informed the C.P.U.C., the Utility Consumers' Action Network (U.C.A.N.) and The Utility Reform Network (T.U.R.N.). AT&T was served with this complaint by the F.C.C. on January 17, 2007. Also in January, Dataway was notified that its case was referred to C.P.U.C. because the F.C.C. was disqualified from further involvement due to AT&T's unacceptable settlement offer. Defendant's following request to opposing counsel for extension of time was refused and, instead, a Complaint for Relief was filed by AT&T with this court.

54.     Opposing counsel's refusal cut off Dataway efforts and terminated all on-going administrative proceedings. Thus, Plaintiff deliberately failed to exhaust all available administrative remedies. This conduct bars Plaintiff's actions.

### Tenth Defense

### Usury

55.     Defendant alleges that some or all of AT&T's claims are barred by the doctrine of usury.

12

1    56.    The rate of interest upon the loan or forbearance of any money, goods,

2    or things in action, or on accounts after demand, shall be 10 percent per annum

3    pursuant to Article 15 California Constitution.

4    57.    Additionally to the charges for the disputed calls AT&T claims a

5    prejudgment interest of $ 5.69 per day from September 25, 2006. This equals a rate of

6    18% per annum. This rate clearly exceeds current usury laws.

7    58.    Thus, some or all of Plaintiff's claims are barred by the usury doctrine.

8

9    ### PRAYER FOR RELIEF

10    THEREFORE, this answering Defendant prays as follows:

11    1.    That Plaintiff take nothing by its Complaint herein and that the Complaint

12    be dismissed in its entirety with prejudice;

13    2.    That in the event Defendant is held liable, Plaintiff can only claim a sum

14    computed on the basis of the contractually determined rate for Defendant's authorized

15    account;

16    3.    For restitution and disgorgement of all ill-gotten gains unjustly obtained

17    and retained by Defendant through the acts complained of here;

18    4.    That Defendant be awarded actual attorney fees incurred herein;

19    5.    That the Court award Dataway all costs and expenses it incurs in this

20    action; and

21    6.    That the Court award Dataway such other and further relief that it deems

22    just and proper.

23

24

25

26

27

28

13

## COUNTERCLAIM

In support of its Counterclaim against AT&T Corp., Dataway alleges as follows:

### PARTIES, JURISIDICTION AND VENUE

1.   At all times herein mentioned, Counterclaimant Dataway (hereinafter "Dataway") was, and is, a corporation organized and existing under the laws of the State of California with its principal place of business in San Francisco, California.

2.   AT&T is a New York corporation, does business in the State of California and maintains a systematic and continuous commercial relationship with its customers in the State of California.

3.   One or more other parties unknown to Counterclaimant (hereinafter "DOES 1-10" or "hackers") have acted either alone, or in concert with one another, without the Counterclaimant's knowledge, permission or express or tacit consent to commit the illegal acts alleged in Plaintiff's Complaint against Dataway.

4.   This action arises out of, among other things, AT&T's breach of its telecommunication service contract with Dataway which is a state contract claim. There is no federal question and no diversity of the parties presented.

5.   Neither does the action arising out of the violation of the slamming prohibition present a federal question. The F.C.C. slamming rules implement the Federal Telecommunication Act (47 U.S.C. § 258) and give each state the option to act as the adjudicator of slamming complaints. According to 47 CFR 64.1110 California has opted to do this. Hence, this court does not have subject matter jurisdiction. Rather, this action should be tried in State Court.

6.   Dataway's principal place of business is in San Francisco, and AT&T engaged and still engages in commercial transactions within the County of San

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM                    CASE NO. C07-02440 MMC

1   Francisco. Thus, venue is proper in San Francisco County, in the Superior Court of

2   the State of California.

3

4                                   **BACKGROUND**

5       7.      In January 2003 Dataway consolidated all its business

6   telecommunication services with SBC/AT&T which in turn set up a slamming

7   protection, a means to prevent the switching of telecommunication services in

8   accordance with the Telecommunication Act and the F.C.C. Anti-Slamming

9   Regulations. See Letter of Agency and Carrier Slamming Protection Form attached

10  hereto as Exhibit A.

11      8.      On July 24, 2006 fraudulent calls were made through Dataway's

12  existing voice mail system using AT&T's Legacy T network, a service Dataway

13  never subscribed to and an account that was never authorized by the Defendant.

14      9.      At the end of September 2006, Dataway received a bill from AT&T

15  for $ 11,534.67 for the unauthorized calls. See Service Bill attached hereto as Exhibit

16  B.

17      10.     Agents and Employees of AT&T found that only the unauthorized

18  calls' routing number pointed to Dataway, but that Defendant did not execute the

19  calls.

20      11.     The parties conferred, and AT&T assured Dataway that AT&T would

21  waive the charges for the fraudulent calls once Dataway disputed them, because this

22  pattern of illegal usage recently had occurred frequently. See Paragraph 6,

23  Declaration of Simon Lewis attached hereto as Exhibit C.

24      12.     Despite this agreement, a subsequent request submitted by Dataway

25  and multiple additional correspondence with AT&T, Dataway received a Past Due

26

27

28

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM                    CASE NO. C07-02440 MMC

1    Reminder that the balance was still open and, shortly after, a Notice of Disconnect for

2    Dataway's account. See Notice of Disconnect attached hereto as Exhibit D.

3        13.    To resolve the dispute Defendant again contacted and informed AT&T

4    as well as AT&T's local managers, as well as four administrative authorities, among

5    them the F.C.C. and C.P.U.C. Defendant also replied to a form received from the

6    AT&T Fraud Resolution Group with the requested documents, a copy of

7    unauthorized account statement and a statement of dispute of account. See Form sent

8    to the Fraud Resolution Group attached hereto as Exhibit E.

9        14.    These endeavors merely resulted in a suspension of the disconnect

10    notice and an unacceptable offer to discount the total balance by 35% (November

11    2006) and then 50% (December 2006). Both were refused by Defendant who

12    subsequently responded by filing an informal complaint with the F.C.C.. AT&T was

13    served by the F.C.C. with this informal complaint on January 17, 2007. Also in

14    January, Dataway was notified, that its case had been referred to C.P.U.C. and, in a

15    phone conference on February 1, 2007, an F.C.C. agent explained that the F.C.C.

16    would be disqualified from further involvement due to AT&T's offer to settle.

17

18                        **FIRST CAUSE OF ACTION**

19                    **BREACH OF EXPRESS CONTRACT**

20        15.    Dataway hereby incorporates by reference each and every allegation

21    set forth above, as though fully set forth herein.

22        16.    The Letter of Agency and the Carrier Slamming Protection constitute

23    legally binding, enforceable and reasonable contracts between SBC, and its successor

24    AT&T, and Dataway. These contemplate an implied warranty to impose security

25    means restricting access by third parties.

26

27

28

---

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM                    CASE NO. C07-02440 MMC

17.     Dataway has fully performed all of the obligations it was required to perform. It made and still makes payments covering AT&T's charges for Dataway's authorized account usage.

18.     On July 24, 2006 hacker illegally accessed the voice mail system Dataway maintained with AT&T using AT&T's Legacy T network. In August 2006, AT&T billed Dataway for the five calls made by these hackers to the Philippines from another, external account but with Dataway's routing number. AT&T billed these calls at a rate of $ 5.78 per minute. According to the contractual long distance plan rate, calls to the Philippines should cost $ 0.30 cents per minute. The arbitrary $5.67 rate used to calculate the unauthorized calls, however, is 1,920% higher than Defendant contracted for were the calls authorized. Furthermore, on November 3, 2006, AT&T sent a Disconnect Notice to Dataway, threatening Dataway to disconnect its authorized account.

19.     AT&T's conduct was arbitrary and unreasonable.

## SECOND CAUSE OF ACTION
## BREACH OF ORAL CONTRACT

20.     Dataway hereby incorporates by reference each and every allegation set forth above, as though fully set forth herein.

21.     After Dataway contacted AT&T's local managers on September 20, 2006, and requested the removal of the disputed charges from its accounts, AT&T represented to Dataway that AT&T would waive its charges for the fraudulent calls once Dataway formally disputed them.

22.     On November 10, 2006, Dataway submitted a written denial and sent a duly completed form to AT&T's Fraud Resolution Group with copies to AT&T.

17

23. Even though the threatened disconnection was suspended and Dataway was, once again, reassured that AT&T would drop all charges, Dataway was notified in January 2007, that AT&T referred the dispute to an attorney for collection and would judicially enforce its alleged claims.

## THIRD CAUSE OF ACTION

### FRAUDULENT INDUCEMENT TO CONTRACT

24. Dataway hereby incorporates by reference each and every allegation set forth above, as though fully set forth herein.

25. SBC/AT&T confirmed in its Carrier Slamming Protection Agreement that a switching of carriers would be impermissible and that Dataway would be responsible only for charges for which it had contracted. SBC/AT&T included this protection in accordance with 47 U.S.C § 258(a) and its implementing F.C.C. Regulations preventing telecommunication carriers from making unauthorized changes to subscribers' telephone service.

26. The Anti-Slamming Agreement was substantial inducement for Dataway to enter into the service contract with SBC/AT&T, to consolidate all its telecommunication services with SBC/AT&T.

27. Based on SBC's representations concerning Dataway's telecommunication service, Dataway entered into the contract which presents the basis of this action.

28. However, Dataway is informed and believes and, based on such information and belief, alleges that SBC/AT&T knew or should have known at all times relevant to this dispute that such a slamming device was not an appropriate means, in particular with regard to the imminent acquisition of SBC by AT&T. The narrow wording of the Anti-Slamming Agreement would be rendered useless if not

18

1    applied to AT&T's spread out corporate structure. This supports that SBC/AT&T

2    knew and did not intend to protect Dataway from switching between different

3    services as required by 47 U.S.C. § 258(a). Nevertheless, AT&T assumed all of

4    SBC's liabilities when it acquired SBC.

5         29.    At all times relevant to this Counterclaim Dataway relied Plaintiffs

6    express and/or agreement as contracted for in the Anti-Slamming Agreement. In

7    addition Dataway built on Counterdefendant's representations that Dataway would

8    not be charged anything but its contractual rate for the service it authorized, and

9    Dataway relied on AT&T's faithfully assume SBC's business and obligations.

10         30.    Dataway has been, and will continue to be irreparably injured by

11    AT&T's breach of the Slamming Agreement.

12

13                    **FOURTH CAUSE OF ACTION**

14      **VIOLATION OF THE TELECOMMUNICATION ACT – SLAMMING**

15         31.    Dataway hereby incorporates by reference each and every allegation

16    set forth above, as though fully set forth herein.

17         32.    Due a lack of a protection against unauthorized calls, hackers were

18    able to access Dataway's voice mail system on July 24, 2007. According to the strict

19    liability standard imposed by the anti-slamming rules AT&T is liable for any charges

20    from the resulting unauthorized calls.

21         33.    In violation of 47 U.S.C. § 258(a) AT&T did not provide adequate

22    means for protecting Dataway from these calls that were made to the Philippines

23    using a service Dataway never authorized nor subscribed for, namely the Legacy T

24    Network.

25         34.    Dataway never gave permission for the utilization of this service and,

26    in fact, did not have any knowledge of this incident until it received AT&T's bill.

27

28

---

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM                        CASE NO. C07-02440 MMC

1    35.    In this bill AT&T's claimed charges calculated in accordance with the

2    Legacy T Network Tariff, a rate that Dataway had not contracted for and that was not

3    part of its tariff.

4    36.    AT&T failed to notify its customer Dataway of this service change and

5    did not undertake any resolution or  verification procedures as prescribed by the

6    F.C.C.

7    ### FIFTH CAUSE OF ACTION

8    ### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

9    37.    Dataway hereby incorporates by reference each and every allegation

10    set forth above, as though fully set forth herein.

11    38.    At all times relevant to this complaint, Dataway used AT&T as its

12    only business telecommunication carrier.

13    39.    The hackers purposefully chose a voice mail system set up with

14    AT&T.

15    40.    This system was accessed in an unauthorized manner with the

16    intention to misuse it for the hackers' unlawful purpose. This conduct must be

17    attributed to AT&T because AT&T had superior authority and control over the

18    account Dataway maintained with it, yet recklessly did not provide sufficient security

19    means to impede or prevent the hackers from accessing Dataway's voice mail system.

20    Thus, it is vicariously liable for the conduct of the alleged wrongdoers.

21    41.    The hackers' conduct led to abnormal and excessive charges that

22    brought about to a dispute between the contractual parties and to this action.

23    42.    Dataway has been, and will continue to be irreparably injured by

24    AT&T's reckless impairment of its contractual relationship, respectively its failure to

25    prevent fraudulent use of its services.

26

27

28

DATAWAY, INC.'S ANSWER AND COUNTERCLAIM                    CASE NO. C07-02440 MMC

**PRAYER FOR RELIEF**

WHEREFORE, Defendant Dataway prays for following relief:

A.   Awarding Plaintiff all compensatory and non-compensatory damages according to proof at trial with interest at the highest legal rate;

B.   Awarding punitive damages to Plaintiff in an amount determined by the Court to be fair and reasonable for Counterdefendant's willful and deliberate actions complained of herein, and to deter AT&T from making unauthorized changes to subscribers' telephone service in the future.

C.   Awarding Plaintiff its costs, attorney's fees and expenses in prosecuting this action.

D.   Awarding Plaintiff such other and further relief granted as the Court deems just and proper.

DATED: October 17, 2007

Respectfully Submitted,

MATLOCK LAW GROUP

By:   Anne-Leith W. Matlock

Attorney for Dataway, Inc.

21