1  Matlock Law Group, PC
2  Anne Leith Matlock, K Brian Matlock
   1485 Treat Blvd., Suite 200
3  Walnut Creek, CA 94597
   Office: (925) 944-7131
4  Fax: (925) 944-7138
   E-mail: anne-leith@matlocklawgroup.com
5
   Attorneys for Defendant/Counterplaintiff,
6  Dataway, Inc.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

| | |
|---|---|
| 12  AT&T Corp. | **CASE NO. C07-02440 EDL** |
| 13           PLAINTIFF, | |
| 14     v. | **DATAWAY'S MOTION TO STRIKE AT&T'S UNTIMELY REPLY TO DATAWAY'S COUNTERCLAIMS** |
| 15  Dataway, Inc. | |
| 16           DEFENDANT. | |
| 17 | |
| 18  Dataway, Inc. | |
| 19           COUNTERCLAIMANT | Date: August 26, 2008<br>Time: 9:00 a.m.<br>Courtroom: E |
| 20     v. | |
| 21  AT&T Corp. | |
| 22           COUNTERDEFENDANT | |
| 23 | |

24

25      Defendant and Counterplaintiff Dataway, Inc. (hereinafter "Dataway" or "Defendant")

26  hereby moves to strike the Reply of Counterdefendant AT&T Corp. to Counterclaim of

27  Counterclaimant Dataway Inc., d.b.a. as Dataway Designs (hereinafter "AT&T's

28  answer/reply" or "AT&T's responsive pleading", see Docket No.115) pursuant to Fed. R. Civ.

P. § 12(f) because each admission and denial in AT&T's answer/reply to Counterclaim of Counterclaimant Dataway is redundant, immaterial, impertinent, or scandalous because AT&T's pleading was filed over six (6) months after the deadline for such a responsive pleading had expired.

## ARGUMENTS

**1. AT&T's Reply to Dataway's Counterclaims is extremely untimely and all allegations and denials therein should be stricken in conformity with the Federal Rules of Civil Procedure.**

On October 17, 2007 Defendant Dataway filed and served its Answer and Counterclaims to AT&T's Complaint for Damages supported by a Declaration of Anne-Leith Matlock and Exhibits A through E. See Docket Nos. 31 and 32. Docket No. 33 is the Certificate of Service of these two pleadings served on AT&T by Dataway.

Counterclaims state claims for affirmative relief just like complaints. Therefore, all procedures that are available with respect to answering and moving to dismiss claims in general are applicable when replying to counterclaims. As with a complaint, the plaintiff must serve an answer to a counterclaim in the defendant's answer or file a motion to dismiss the counterclaims within 20 days after service of the answer. Fed R Civ P 12(a)(1)(A) and (B). Three additional days must be added if service of the pleading is achieved by mail. Fed. R. Civ. P. 6(d) and 5(b)(2)(C). The Certificate of Service states that Dataway's pleadings were served by electronic service in accordance with the pertinent rules and/or General Orders in this matter upon Timothy Carl Aires, AT&T's counsel of record. The twentieth day after service is November 6, 2007.

The only papers served and filed by AT&T were AT&T's Motion to Dismiss on November 5, 2007 and related supportive documents. Plaintiff's Motion to Dismiss was denied by the Court on January 16, 2008 and electronically filed and served on the same day.

Filing a motion to dismiss under Fed. R. Civ. P. 12(b) acts as a tolling mechanism to extend the time within which the defendant must file an answer. If the court denies the motion or postpones a decision on the motion until trial, the defendant must serve an answer within 10

days after receiving notice of the court's action. Fed. R. Civ. P. 12(a)(4). The tenth day after notice of the order (filed and served on January 16, 2008) was January 26, 2008. Pursuant to Fed. R. Civ. P. 6 the last day of the period computed shall not be included if it's a Saturday, a Sunday, or a legal holiday. Fed. R. Civ. P. 6(a). Hence, AT&T's answer/reply was due on Monday, January 28, 2008.

AT&T however, failed to file a timely responsive pleading by January 28, 2008. Instead, AT&T filed and served its responsive pleading on July 16, 2008, 170 days after the actual due date of this pleading. Upon information and belief, Dataway asserts that AT&T attempted to submit the AT&T answer/reply on July 16, 2008 (170 days late) in response to Dataway's Opposition to AT&T's Motion for Summary Judgment (hereinafter "Opposition to AT&T's MSJ"), filed and served on July 15, 2008. In the Opposition to AT&T's MSJ, Dataway demonstrated the consequences of AT&T's failure to respond. See Opposition to AT&T's MSJ, Docket No. 114, p. 3 l.6-20. AT&T's failure to respond to Dataway's pleading to which a responsive pleading was required resulted in an admission of the averment. Fed. R. Civ. P. 8(b)(6). AT&T cannot avoid this result by filing and serving a responsive pleading 170 days late. In addition to being extremely untimely, AT&T is attempting to file its answer/reply after the end of the discovery period and after dispositive motions were filed. AT&T's answer/reply attempts to unacceptably circumvent procedural requirements.

Hence, pursuant to Fed R. Civ. P. 8(b)(6) the allegations of the answer and counterclaims and the lack of defenses are undisputed evidence on record because AT&T's failure to respond in a timely manner. Moreover, the factual allegations are not only stated and admitted as undisputed in Dataway's Answer and Counterclaim, but are also repeated and supported by the Depositions of Francisco Molieri and Simon Lewis, officers of Dataway. See the accompanying Declaration of Anne-Leith Matlock, p.2 l.16 – p. 3 l.25 and Exhibits A and B, attached to the Declaration.

As demonstrated above, AT&T admitted Dataway's allegations and waived its defenses. AT&T cannot be allowed to sidestep fundamental procedural rules by filing a responsive pleading at this grossly late stage. The resulting admissions and waived defenses by AT&T are

now and remain available to Dataway in order to establish Dataway's Counterclaims and demonstrate that AT&T's so-called undisputed "facts" are contrary to the record. For this reason, Dataway requested in its Opposition to AT&T's MSJ that AT&T's motion shall be denied and summary judgment in favor of Dataway is proper and shall be entered. AT&T should not be allowed to file its responsive pleading 170 days late and in violation of Fed R Civ P 12(a)(1). Being a bold attempt to sidestep the Fed. R. Civ. P., AT&T's answer/reply in its entirety should be stricken.

### 2. AT&T's Affirmative Defenses Stated in the Untimely AT&T answer/reply must be Stricken because they were filed untimely and because they are Redundant

The two affirmative defenses AT&T asserts in its untimely filed answer (see supra) must be stricken because they are redundant, immaterial, impertinent, and scandalous.

#### a. Dataway Stated Five Counterclaims upon which Relief shall be Granted

AT&T's first affirmative defense, that Dataway failed to state a claim under Fed. R. Civ. P. 12(b)(6) lacks merit. AT&T raised this defense previously in its Motion to Dismiss (Docket No. 46) which was denied by the Court. The Court ordered (Docket No. 76) that AT&T failed to demonstrate why Dataway's state law claims would be preempted. In AT&T's untimely answer/reply, AT&T makes the same argument previously rejected by the Court and again fails to provide the arguments or explanation previously requested by the court.

Dataway, on the other hand, showed in its Opposition to AT&T's MSJ, Dataway that it sufficiently stated five counterclaims upon which relief shall be granted. Dataway satisfied the notice pleading requirements of the Federal Rules of Civil Procedure by making a short and plain statement of each claim, showing that the Counterplaintiff is entitled to relief, and making a demand for judgment for the relief the counterplaintiff seeks. Fed. R. Civ. P. 8(a). See Dataway's Opposition to AT&T's MSJ, p.7 l.27 – p.8 l.2. All facts supporting Dataway's claims are undisputed record evidence and discovery showed that Dataway's damages amount to $ 57,200.00. See Dataway's Opposition to AT&T's MSJ, p.8 l.2-5. For this reason, AT&T's first defense is blatantly without merit.

### b. The Filed Rate Doctrine does not Apply and should be Stricken

Without further explanation, AT&T asserts as its Second Affirmative Defense that the Filed Rate Doctrine purportedly bars Dataway's Counterclaims. As previously referred above, this Court's Order Denying AT&T's Motion to Dismiss stated that AT&T did not demonstrate why the federal tariff requirements and not the Ting holding should govern the dispute at hand. In Ting the court held that the telecommunications marketplace is detariffed and that state law causes of action are actionable. Ting v. AT&T, 319 F.3d 1126 (9th Cir. 2003). Throughout this case, Dataway asserted that Ting will prevent AT&T from relying on the filed tariff doctrine to bar Dataway's counterclaims. Id. The authority of Ting should be construed to apply to small business consumers. Similarly, Lovejoy and In re NOS Communications, which expressly authorized state law claims like those claimed by Dataway, should apply in the instant case. Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 102 (Cal. App. 3d Dist. 2001); In re NOS Communications, 495 F.3d 1052 (9th Cir. 2007).

Dataway disproved Plaintiff's argument that Dataway's counterclaims are preempted by the Federal Communications Act, 47 U.S.C. 201, *et. seq*. As the court expressly stated in Ting, "the principle of preemption, which was a product of the filed rate doctrine . . . did not survive detariffing." Ting, at 1139. Furthermore, "courts treat [47 U.S.C. ] § 202(a) as a consumer protection provision that is designed to remedy unreasonable price disparities" and that "courts have never interpreted [47 U.S.C] § 202(a) as a preemptive provision." Id., at 1140, n.8. Therefore, to the extent AT&T relies on 47 U.S.C. § 202 as preemptive, the reliance is misplaced.

The filed rate doctrine was designed to ensure "all purchasers of communications services receive[d] the same federally regulated rates." Id., at 1131 (quoting ICOM Holding, Inc. v. MCI Worldcom, Inc., 238 F.3d 219, 221 (2d Cir. 2001)). Under the filed rate doctrine, a regulated entity could not charge a rate other than that specified in its tariff. AT&T v. Cent. Office Tel., Inc., 524 U.S. 214, 222 (1998). Pursuant to this doctrine, federal law preempted any state-law claim seeking to enforce a contractual provision that differed from a filed rate. ICOM Holding, 238 F.3d at 221.

State law claims are specifically authorized in the new, deregulated area. Id., at 1141. The detarrifing of telecommunications under the 1996 Communications Act "create[d] a complimentary role between federal and state law . . . ." Id., at 1141. The market-based mechanism that replaced rate filing "depends in part on state law for the protection of consumers in the deregulated and competitive marketplace." Id. The strongest statement of the role of state law claims under the new system came from the F.C.C. itself. The Commission expressly stated that "consumers will be able to pursue remedies under state consumer protection and contract laws in a manner currently precluded by the 'filed-rate' doctrine." Second Report and Order, 11 F.C.C.R. 20,730 at ¶ 38. According to the F.C.C., under the new system, consumers will be protected both through the F.C.C. complaint process and state law. Id., at ¶ 42. In Ting, the Ninth Circuit specifically addressed the effect of the 1996 Communications Act on the filed rate doctrine and preemption and found that "under the competition-based regime adopted by Congress in 1996, and implemented by the FCC, *state law protections are no longer excluded* . . . ." Ting, at 1143 (emphasis added). The mechanism chosen by Congress to ensure reasonable rates "permits-indeed, depends upon-the imposition of state law." Id., at 1144. Given this express language from the court, Plaintiff cannot successfully contend Dataway's counterclaims are barred.

Other controlling authority also demonstrates Dataway's state law claims are not barred by the filed rate doctrine. In Lovejoy, where AT&T also unsuccessfully argued that "there is no fraud exception to the filed rate doctrine…", the court stated that AT&T's assertion is irrelevant unless a carrier intentionally misrepresents its rate and a customer relies on the misrepresentation. Lovejoy v. AT&T Corp., 92 Cal. App. 4th 85, 102 (Cal. App. 3d Dist. 2001). In such a case the carrier cannot be held to the promised rate if it conflicts with the published tariff. Id. The maxim that there is no "fraud" exception to the filed rate merely means that courts will not intrude into the F.C.C.'s jurisdiction by enforcing promises to charge rates or provide services which vary from the filed tariff, regardless of the promisor's intent." Id., at 102. However, "…it does *not* mean that all fraudulent conduct committed by a carrier is immune from remedy." Id., at 102. In Brown, the court held that a claim is not precluded by the filed-

rate doctrine if (1) the Plaintiff alleges that there is no authorization in the tariff to charge a certain fee, and (2) that the fee therefore violated the tariff. Brown v. MCI Worldcom Network Servs., Inc., 277 F.3d 1166, 1172 (9th Cir. 2002). A plaintiff needs to be compensated for the tortious conduct pleaded. Lovejoy, at 101. Claims for "fraud, fraudulent inducement to switch contracts[ and] intentional interference with contract . . . *are not preempted* by the filed-rate doctrines." In re NOS Communications, 495 F.3d at 1060 (9th Cir. 2007) (emphasis added).

Dataway does not challenge the terms of a tariff. Dataway does not seek rate preferences not accorded to AT&T's other customers, and Dataway does not seek to enforce "side agreements" which vary from published tariffs. Rather, Dataway wants to enforce the contracted rate pursuant to the tariff. Moreover, rates have meaning only when one knows the services to which they are attached. Am. Tel. & Tel. Co. v. Centraloffice Tel., 524 U.S. 214, 223 (U.S. 1998). Any claim for excessive rates can be couched as a claim for inadequate services and vice versa. Id. The Communications Act recognizes this in the §§ 203(a) and (c). Hence, Dataway can maintain its counterclaims even assuming, arguendo, that the filed rate doctrine still has preclusive effect. AT&T's actions support Dataway's claim for exemplary damages. Three factors determine whether an award of exemplary damages is reasonable. BMW of N. Am. v. Gore, 517 U.S. 559, 574-575 (1996). The California Supreme Court adopted and followed the Gore test for exemplary damages in Johnson v. Ford Motor Co., 113 P.3d 82 (2005). "The most important indictor of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." Id. at 575. Intentional acts of misconduct by a defendant that cause economic injury "can warrant a substantial penalty." Id., at 576. Additionally, "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." Id., at 576-577.

AT&T's actions support a claim for exemplary damages because AT&T has engaged in intentional acts of misconduct that caused economic injury to Dataway. AT&T created a Legacy T account that was billed to Dataway despite not having received any authorization

from Dataway to open such an account. As a result of the creation of this account, Dataway suffered economic injury including, but not limited to, lost time and expense attempting to resolve the charges for unauthorized calls made by hackers. AT&T was aware that its system is prone to exploitation, as demonstrated by the news article (See Exhibit C attached to the accompanying Declaration of Anne-Leith Matlock) discussing the vulnerability of AT&T systems. Nevertheless, AT&T failed to apply required verification procedures and took no other action to prevent its customers systems from being exploited. This failure to secure its system and prevent client exploitation demonstrates a disregard of the law for which exemplary damages is the appropriate remedy. AT&T's pattern of disregarding its legal obligations despite the fact that such disregard inflicted economic injury on its customers warrants exemplary damages to cure AT&T's blatant disregard of its obligations and ensure customers are protected against such behavior in the future. In fact, AT&T also admitted that state law protections are no longer excluded and that the Ting holding governs the case at hand when it failed to respond to Dataway's Answer and Counterclaimes. Essentially, AT&T waived the inapplicable "Filed Rate Doctrine" Defense.

### 3. AT&T did not Request Extension of Time and Could not Show Good Cause for Such Extension of Time

The untimely filed AT&T answer/reply must be stricken because AT&T (i) failed to file a Motion to Change Time and (ii) cannot show good cause for extension of time to file an extremely late answer/reply. There is no good cause why AT&T should be allowed to receive special treatment. A party can only file a motion to change time if the party is without fault in creating the crisis or if the crisis occurred as a result of excusable neglect. Mission Power Eng'g Co. v. Continental Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995). Only under such conditions may a party receive special treatment. Id., at 492. AT&T failed to request an extension of time to file its responsive pleading months after the statutory time to respond expired. Further, AT&T cannot and has not demonstrated good cause in submitting its reply 170 days late. Finally, upon information and belief, Dataway asserts that AT&T had ample opportunity to answer/reply under the statutory period and, in fact, engaged in an extensive

motion practice in this case. However, as discussed, AT&T failed to file its answer/reply contrary to fundamental procedural rules and should not be allowed to circumvent the applicable rules.

AT&T's reply is inexcusably late for 170 days and this court should strike AT&T's reply in its entirety.

### 4. AT&T's Request for Costs is Unreasonable and Scandalous

In its prayer, AT&T requested that Counterclaimant takes nothing, demanded costs of suit, including reasonable attorneys' fees and other relief as the Court deems just and proper. This demand, made in an extremely belated answer that is blatantly redundant, must be stricken just like all other allegations, denials and defenses related to AT&T's untimely answer/reply..

### CONCLUSION

In light of the above mentioned incurable defects of AT&T's responsive pleading, Defendant Dataway respectfully requests that AT&T's answer/reply should not be available and be deemed ineffectual. All facts and allegations in Dataway's Answer and Counterclaim shall remain admitted pursuant to Fed. R. Civ. P. 8(b)(6).

Should AT&T not withdraw its answer/reply by August, 6 or such other time as the court may prescribe, on the grounds that (i) the filing of the untimely AT&T reply/answer cannot be sustained by a proper legal basis or is warranted by existing law and (ii) has only served to cause unnecessary delay in this case, the Court should strike AT&T's reply/answer in its entirety as Dataway argued herein.

Dated: July 21, 2008

MATLOCK LAW GROUP

By: _____
Anne-Leith Matlock, Esq.
Attorneys for Defendant/
Counterclaimant Dataway, Inc.