IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AT&T CORP, | No. C-07-02440 EDL |
| Plaintiff, | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO STRIKE; DENYING MOTION FOR SANCTIONS** |
| v. | |
| DATAWAY INC, | |
| Defendant. | |

AT&T Corporation ("AT&T") filed a motion for summary judgment and Dataway, Inc. ("Dataway") filed a motion to strike and a motion for sanctions which came on for hearing on August 12, 2008. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby grants the motion for summary judgment and denies the motion to strike and the motion for sanctions for the reasons stated at the hearing and for the reasons set forth below.

**I.   BACKGROUND**

AT&T filed a complaint pursuant to 47 U.S.C. § 203 of the Federal Communications Act, 47 U.S.C. 201, et seq. ("Federal Communications Act"). AT&T claims that it billed Dataway for telecommunication calls and related services and claims that payment is due, alleging the following causes of action: (1) liability under the Federal Communications Act; and (2) quantum meruit. Dataway previously moved to dismiss the complaint, and the Court denied that motion on January 8, 2008. Dataway also filed counterclaims on October 17, 2007 in this case for: (1) breach of express contract; (2) breach of oral contract; (3) fraudulent inducement to contract; (4) "Violation of the Telecommunications Act - Slamming" for violations of 42 U.S.C. § 258(a); and (5) tortious

interference with contractual relations. Generally, Dataway alleges that AT&T erroneously charged it for fraudulent calls made on Dataway's voicemail system using an AT&T network that Dataway never subscribed to. Counterclaim ¶ 8. AT&T previously moved to dismiss the first, second, third, and fifth counterclaims for relief. The Court denied that motion without prejudice on January 8, 2008, because the parties did not address the ramifications of the de-tariffed telecommunications marketplace in its motion, see Ting v. AT&T, 39 F.3d 1126 (9th Cir. 2003), but noted that the Court would reconsider those issues if properly raised in future dispositive motions.

On July 16, 2008, AT&T filed an answer to Dataway's counterclaims. Dataway now moves to strike AT&T's belated answer to its counterclaim. AT&T moves for summary judgment on both of its claims for relief alleged in its complaint and on all of Dataway's counterclaims. Dataway has also moved for sanctions on the grounds that AT&T has not adequately complied with the Court's discovery order that required AT&T to produce certain records by May 27, 2008. However, Dataway did not oppose AT&T's motion for summary judgment under Federal Rule of Civil Procedure 56(f). The Court addresses these pending motions in turn.

## II.     MOTION TO STRIKE

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. Pro. 12(f). Here, while AT&T improperly waited 170 days to file its answer to the counterclaim, and counsel admits to his oversight, AT&T has been vigorously defending and prosecuting this action from the inception of this case. For example, AT&T filed a motion to dismiss and for summary judgment and also defended a motion to compel by attacking the merits of the case. Dataway never raised AT&T's failure to answer previously and seems to have avoided bringing the matter to AT&T's attention in order to seek a tactical advantage. Furthermore, Dataway has failed to show any unfair prejudice as it does not point to any defenses that AT&T is asserting that caught it by surprise.

The Court therefore, declines to exercise its discretion to strike AT&T's answer to Dataway's counterclaims, denies Dataway's motion, and will resolve this case on the merits. See Canady v. Erbe Elektromedizin GmbH, 307 F. Supp. 2d 2, 8 (D.D.C. 2004) ("[I]f the court were to rule in favor of the defendants, where would that leave the court and the parties? The answer to this

question provides the guiding force for the court's decision. The defendants would like to strike the plaintiffs' answer so that the court can declare the plaintiffs in default and proceed toward default judgment. Such a result, however, would contravene the established policies disfavoring motions to strike.").

As to Dataway's arguments that certain affirmative defenses are redundant, immaterial, impertinent, and scandalous, such arguments are more properly addressed on summary judgment, and, as discussed below, are erroneous.

## III.    MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative evidence tending to support the complaint." Smolen v. Deloitte, Haskins & Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue

3

where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

### B.     Undisputed Facts

Preliminarily, Dataway objects to Mr. James Lake's affidavit on the basis that AT&T failed to disclose him as a person most knowledgeable when Dataway requested to conduct a Rule 30(b)(6) deposition. However, AT&T notes that James Lake was disclosed in AT&T's Rule 26(e) supplemental disclosures served on April 7, 2008. Pl. Reply at 1:8-9. AT&T designated Pam Tyler as its person most knowledgeable, and Dataway previously raised no formal complaint as to Ms. Tyler's sufficiency. Id. at n.2. This objection is overruled. To the extent that Dataway objects to AT&T's records and documents referred to in the Lake declaration on the basis of hearsay, these are admissible business records.

The undisputed facts are as follows. AT&T is a corporation with its principal place of business in New Jersey, and is a common carrier providing telecommunications services under published services. Dataway has its principal place of business in California. AT&T Tariff No. 30 ("Tariff 30"), Section 5, "Casual Calling Services," permits callers who are not pre-subscribed to AT&T to access AT&T's switched network for completion of their state to state and international dial station calls by dialing access code 1010288. This Tariff is filed with the Federal Communications Commission ("FCC"). Lake Decl. ¶ 4. The Tariff lists schedules and rates for 1010288 calls in Section 8. See Tariff at 73. AT&T billed Dataway pursuant to that Tariff for calls placed using its system made by dialing carrier access code 1010288. In response, Dataway has not pointed to any evidence showing that it was billed according to rates other than those listed in Tariff 30. In fact, Dataway utterly failed to dispute or address the fact that the calls were made via the 1010288 access code pursuant to the Tariff. Rather, Dataway argued that such rates were much higher than the rates that apply under its separate long distance contract.

On July 24, 2006, the telephone system owned and operated by Dataway was allegedly

4

1 compromised by an unauthorized intervening third party accessing the AT&T network by dialing
2 carrier access code 1010288, which created a new account for Dataway. Lake Decl. ¶ 4. AT&T did
3 not contract to prevent access through the telephone system owned and operated by Dataway to
4 AT&T by dialing that carrier access code. Id. Dataway was billed for those charges. The total
5 charges amount to $11,534.67, and interest is calculated at a rate pursuant to the tariff. AT&T
6 points out that there is no evidence that it waived its claim to this money.

7 Of course, for purposes of this motion, the Court must view the facts in a light most
8 favorable to Dataway. However, Dataway largely relies on allegations from its counterclaims,
9 because AT&T filed a belated answer to those counterclaims. For the reasons discussed above,
10 however, the Court has denied its motion to strike the answer. Accordingly, Dataway cannot rely on
11 the facts alleged in its counterclaim for the purposes of this motion.

12 Dataway has presented limited evidence in support of its claims. According to Dataway,
13 AT&T admitted that hackers compromised the phone system Dataway maintained with AT&T and
14 told Dataway that it should immediately change its password. See Molieri Depo. at 8. Dataway
15 changed their passwords immediately. Id. at 13. Mr. Simon Lewis of Dataway spoke with an
16 individual at AT&T (he could not recall a job title) who indicated that the fraudulent calls were
17 likely made through the voice mail system. Lewis Depo. at 6, 10-11. AT&T detected the
18 irregularity in the calls. Id. Those calls were made to the Philippines, among other places. Molieri
19 Depo. at 7. In addition, a representative of AT&T told Mr. Lewis that "we'll take care of this."
20 Lewis Depo. at 29. Later, Mr. Lewis claimed an AT&T representative stated that "it will be taken
21 off our bill." Id. at 44. Dataway has maintained a long distance plan with AT&T for five or six
22 years with a certain long distance rate, which is lower than the amount charged by AT&T. Id. at 34,
23 46. After billing Dataway for these phone calls, AT&T eventually sent notices to Dataway
24 threatening to cut off its service. Matlock Decl., Ex. C.

25 For the Court to consider as admissible Dataway's evidence of various AT&T individuals'
26 representations regarding taking charges off of their bill, Dataway must offer evidence that the
27 employees in question were authorized to take action about the subject matter of the statements.
28 Pappas v. Middle Earth Condominium Ass'n, 963 F.2d 534, 538 (2d Cir. 1992). In other words,

5

while the declarant need not have been authorized to make the specific statements at issue, the proffering party must show that the statement relates to a matter within the scope of the employee's employment. United States v. Chang, 207 F.3d 1169, 1176 (9th Cir. Cal. 2000).  Here, Dataway has not provided any such evidence, such as these individuals' job titles or roles, so it has not satisfied its burden.  These statements, therefore, are inadmissible hearsay.

**C.     Discussion**

The crux of this dispute is as follows.  AT&T and Dataway have a contract for certain telephone services, which includes long distance services.  However, the evidence shows that the allegedly fraudulent calls at issue in this case were not calls made pursuant to that contract.  Rather, they were calls made by someone, whether hackers or otherwise, who used the 1010288 access code pursuant to Tariff 30 filed with the FCC.  This Tariff allows anyone to dial that particular access code to gain long distance access on their phone system.  AT&T's investigation indicated that the charges at issue were made on Dataway's system using this access code.  Dataway was billed for the calls pursuant to the rates in Tariff 30.

**1.     Dataway is Liable for Fraudulent Calls Made on Its System**

A customer is liable for all long-distance calls that originate from its on-premises private branch exchange system ("PBX") regardless of whether such calls were authorized or fraudulent. AT&T Corp. v. Cmty. Health Group, 931 F. Supp. 719, 723 (S.D. Cal. 1995) (citing Chartways Tech., Inc. v. AT&T Commc'ns, 6 F.C.C.R. 2952, 2954 (1991)).  The presence of a remote access mechanism does not affect the "origination" determination; calls are deemed "originated" from a customer's PBX system even if an outside party gains access to the PBX system to use AT&T's Long Distance Message Telecommunications Service ("LDMTS") from a remote location. Cmty. Health Group, 931 F. Supp. at 723-24.

The FCC, however, will not impose liability on the subscriber of a LDMTS, if the customer takes certain precautions, such as subscribing to security services, and therefore the carrier is in the best position to prevent fraudulent calls by hackers, but fails to take reasonable steps to do so. Cmty. Health Group, 931 F. Supp. at 724.  "Where a customer has affirmatively implemented anti-fraud devices such as line restrictions and screening services, the carrier that provides such

restrictions and services will be in the 'best position' to prevent fraud; the carrier has effectively been retained to monitor such fraud." Id. (finding that Defendants entered into no arrangements with AT&T to monitor its lines; applicable Tariff did not impose general duty on AT&T to warn its customers of possibility of unauthorized access to their PBX systems). A telephone company is not liable for fraudulent calls, therefore, where it does not maintain the customer's PBX system or control access to it, and where the customer controls access to their own PBX system.

Here, Dataway maintains that the charges were incurred when some unauthorized third party accessed its voice mail system to use AT&T's network. Def. Ans. ¶ 42. Dataway's voice mail system is part of the PBX system. Dataway used a Nortel PBX key system that it purchased through a different company approximately ten or eleven years ago. Aires Decl., Ex. E 9:9-10:11 (Lewis Depo.). The PBX system allowed employees to access their voice mails by dialing in remotely. Id. at 10:8-11. In this way, an unauthorized party could use AT&T's long distance service through the PBX system by dialing in remotely like an employee attempting to access the voice mail system. Id.

Dataway's voice mail system is part of its PBX system, and Dataway does not allege that AT&T is responsible for maintaining such a system. Rather Dataway only alleges that AT&T had superior authority and control over the account Dataway maintained with AT&T, yet failed to provide sufficient security means to prevent the hackers from accessing Dataway's voice mail system. Counterclaim ¶ 40. Dataway, however, fails to elaborate upon the source of AT&T's obligation to provide security measures for Dataway's voice mail system.[1] To the contrary, there is

---

[1] Insofar as Dataway claims that certain AT&T employees advised Dataway about additional security measures it should take to protect its system following the alleged hacking, this is irrelevant to what services Dataway contracted for prior to that point. In addition, such evidence is inadmissable as discussed above.

Insofar as Dataway claims that Plaintiff's claim under 47 U.S.C. § 201, et seq. does not create a claim for a telecommunication carrier against a customer, the cases Dataway relies upon do not stand for this proposition, and the caselaw indicates that a carrier does have such a claim. See, e.g., AT&T Corp. v. Florida-Texas Freight, Inc., 357 F. Supp. 977, 979 (S.D. Fla. 1973) (granting summary judgment for carrier against customer on 47 U.S.C. § 203 claim). Finally, Dataway's argument that AT&T's unjust enrichment claim fails because Dataway retained no benefit, has no merit. AT&T's claim is for quantum meruit, which requires only "(1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid." Haggerty v. Warner, 115 Cal. App. 2d 468, 475, 252 P.2d 373 (1953).

1 no evidence showing that AT&T undertook any duty to maintain Dataway's PBX system. Because
2 AT&T was not responsible for implementing security measures restricting third party access to
3 Dataway's voice mail system or PBX systems, summary judgment is proper on AT&T's claims.
4 While unfortunately, this is a harsh result for Dataway, which appears to have been the victim of
5 fraud, and the Court sympathizes with its predicament, under the applicable law, AT&T is not
6 obligated to forego charging for fraudulent calls where it was not responsible for Dataway's PBX
7 and voice mail security.

### 2. Dataway's Counterclaims Are Preempted

AT&T also moves for summary judgment on Dataway's state law counterclaims on the ground that the rights and liabilities of telecommunications carriers and their customers are governed by the tariff filed with the FCC pursuant to 47 U.S.C. § 203, so state contract law is inapplicable. According to AT&T, the filed rate doctrine bars state law claims, as the federal tariff requirements preempt state laws. See AT&T Corp. v. Central Office Telephone, Inc., 524 U.S. 214, 228 (1998).

Congress enacted the Federal Communications Act in 1934, which required telecommunications carriers to file with the FCC a list of tariffs showing "all charges … and … the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). The Act prohibited carriers from discriminating against some customers by providing privileges and facilities to others and ensured that all customers receive the same federally regulated rates. MCI Telecomms. Corp. v. AT&T Corp., 512 U.S. 218, 229-30 (1994). For over sixty years, courts have developed the "filed rate doctrine," under which the rates filed with the FCC bind both carriers and customers with the force of law. Brown v. MCI WorldCom Network Servs., Inc., 277 F.3d 1166, 1170 (9th Cir. 2002). In addition to barring suits directly challenging the filed rates, the filed rate doctrine also preempted any state-law claim challenging services, billing, or other practices, which could effectively alter the rights and liabilities defined by the tariffs. Id.

The Telecommunications Act of 1996 fundamentally altered the 1934 Act's regulatory scheme by authorizing the FCC to forbear from regulatory measures determined to be unnecessary to protect consumers. Ting v. AT&T, 319 F.3d 1126, 1141 (9th Cir. 2003); 47 U.S.C. § 160(a). The Ninth Circuit held that the filed rate doctrine no longer applies where the FCC has mandated

detariffing, but remains in full force where tariff filing is still required by statute or regulation. Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1084 (9th Cir. 2006) (citing Verizon Del., Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1088-89 (9th Cir. 2004)) (holding that the FCC indisputably imposed a rate filing requirement with respect to the public access rates at issue, but that the filed tariff doctrine did not bar a suit to enforce a command of the very regulatory statute which gave rise to the tariff filing requirement).

In the present case, the undisputed facts demonstrate that the FCC continues to permit AT&T to file tariffs with respect to the provision of international and domestic, interstate, interexchange services through dial-around 1+ services. Complaint ¶ 8; 47 C.F.R. § 61.19(b). In explaining the reason for creating this exception under the detariffing regime, the FCC concludes that permissive detariffing, as opposed to complete detariffing, with respect to the "dial around 1+ services" is in the public interest. Policy and Rules Concerning the International Interexchange Marketplace and 2000 Biennial Regulatory Review, 66 Fed. Reg. 16,874, 16,876 (Mar. 28, 2001) (to be codified at 47 C.F.R. pts 0, 42, 43, 61, 63, and 64).[2] As a non-dominant carrier (In re Motion of AT&T Corp. to be reclassified as a Non-Dominant Carrier, Order in FCC 95-427, ¶ 1 (Oct. 23, 1995)), AT&T filed Tariff 30, which governs calls placed through the AT&T network by dialing carrier access code 1010288. Mot. at 6. Thus, Tariff No. 30 binds AT&T and the customers of its dial-around 1+ services "with the force of law" and the filed rate doctrine still applies here. See Brown, 277 F.3d at 1170 (finding that rates filed with and approved by FCC are binding on both parties with force of law).

Dataway's counterclaims based on state law are barred by the Filed Rate Doctrine.

---

[2] The FCC determined that this was in the public interest because regarding casual calling services, neither contract law nor the provision of credit information or a billing number guaranteed that non-dominant interexchange carriers would have an enforceable contract with customers of such services if callers did not have notice of a carrier's rates, terms, and conditions prior to completion of a call. A means of ensuring the establishment of an enforceable contract with customers of dial-around 1+ services had not been determined. Therefore, the FCC concluded that adoption of complete detariffing for dial-around 1+ services would not be in the public interest until the cost burdens on non-dominant interexchange carriers to install the necessary signaling equipment to distinguish dial-around 1+ services and to provide recorded announcements regarding information about rates, terms, and conditions of such services to customers were reduced or alternative ways to notify customers became more widespread. Policy and Rules Concerning the International Interexchange Marketplace and 2000 Biennial Regulatory review, Notice of Proposed Rule Making, IB Docket No. 00-202, FCC 00-367, at *14-15 (Oct. 18, 2000).

1   Dataway's claims for breach of express and oral contracts constitute a direct challenge to Tariff 30
2   and are therefore barred, as the terms of the Tariff govern the billing and services here.  In addition,
3   as noted above, Dataway does not point to any terms in these long distance contracts that obligate
4   AT&T to maintain and protect its PBX and voice mail systems, so these counterclaims fail for this
5   additional reason.  To the extent that Dataway claims that the billed rates were much higher than its
6   long distance plan rate of $0.30/minute, the calls were not made pursuant to its long distance plan,
7   but were made via the 1+ access code.  Finally, with respect to the breach of oral contract claim, as
8   also noted above, Dataway's proffered evidence is inadmissible hearsay.

9   Dataway's claim for tortious interference with contractual relations is also based on AT&T's
10  failure to prevent unauthorized access by a third party.  Counterclaim ¶ 37-42.  Such a claim
11  constitutes a direct challenge to Dataway's rights to services and AT&T's obligation as a carrier
12  under Tariff 30.  See Central Office Tele. 524 U.S. at 226 (finding respondent's tortious-interference
13  claim was wholly derivative of contract claim for additional and better services).  Therefore, the
14  filed rate doctrine also preempts this state-law challenge.

15  As to Dataway's claims for fraudulent inducement of the contract, this claim may not be
16  preempted, as it may not require a determination of the validity or reasonableness of the filed tariffs.
17  See In re NOS Commc'ns., 495 F.3d 1052, 1060 (9th Cir. 2007) (holding fraudulent inducement
18  claim not preempted).  Dataway's "slamming" claim is made under federal law and is not
19  preempted.  Dataway contends that AT&T improperly induced Dataway to enter into the service
20  contract by knowingly misrepresenting the "Anti-Slamming Agreement" as sufficient protection
21  against unauthorized changes of service rates.  Counterclaim ¶¶ 24-30.  The 1996 Act prohibits
22  telecommunication carriers from making unauthorized changes to the provider of telephone service,
23  i.e., switching the customer to another company's service without the customer's permission, a
24  practice known as "slamming."  AT&T Corp. v. FCC, 323 F.3d 1081, 1082 (D.C. Cir. 2003); see
25  also 47 U.S.C. § 258(a) (2008) ("No telecommunication carrier shall submit or execute a change in a
26  subscriber's selection of a provider of telephone exchange service or telephone toll service except in
27  accordance with such verification procedures as the Commission shall prescribe.").  The "Carrier
28  Slamming Protection Form for Large Business Customers," which Dataway refers to as the Anti-

10

Slamming Agreement, merely provides that carriers cannot be switched between providers without customer notice and consent. But the gravamen of Dataway's counterclaims for fraudulent inducement and slamming is not a switch of subscribed services from one provider to another. Rather, Dataway contends that it should not have to pay for calls pursuant to Tariff 30, which are not subscribed services, but are casual calling services available to anyone without a prior service contract. Dataway seems to argue that its prior provider SBC had a duty to protect its phone system, and that if AT&T no longer had such a duty when it acquired SBC, this constituted prohibited slamming. The acquisition of AT&T by SBC does not appear to constitute the kind of switch to a separate provider contemplated by the anti-slamming provision, and Dataway provided no authority in support of its argument. Moreover, Dataway does not point to any specific evidence regarding misrepresentations made about this agreement that relate to AT&T's security duties. Dataway also fails to point to any evidence that its prior long distance provider had any duty to maintain its voice mail or PBX systems. Therefore, summary judgment is proper as to these claims.

Finally, as to Dataway's alleged damages for all of its counterclaims, Dataway only claims damages for "time expenditure" and "business interruption." It calculates such damages at $57,200 in its response to AT&T's interrogatories. However, its own interrogatory responses do not constitute admissible evidence, but are hearsay. Judge William W Schwarzer, et al., Rutter Group Practice Guide: Federal Civil Procedure Before Trial § 11:1801 (The Rutter Group, 2008). In addition, such calculations are likely too speculative to meet the requirement of proximate causation. See Berge v. Int'l Harvester Co., 142 Cal. App. 3d 152, 161 (1983). However, the Court need not reach the issue of whether summary judgment is proper on the basis of insufficient damages allegations, as summary judgment is granted for the reasons set forth above.[3]

---

[3] Plaintiff AT&T filed evidentiary objections to the July 15, 2008 Matlock declaration on July 30, 2008. As to AT&T's objections to that declaration and accompanying exhibits, Exhibit A is relevant to Defendant's claim that Plaintiff failed to disclose Mr. James Lake as a person most knowledgeable when Dataway requested to conduct a Rule 30(b)(6) deposition; Exhibits B and C are copies of the Disconnect Notice received by Dataway from AT&T, which are relevant to Dataway's counterclaims and fall within the business record exception of the hearsay rule; and Exhibit D is a copy of the Answer and Counterclaim filed by Dataway on October 17, 2007, and Court may take judicial notice of document itself (but not the truth of the underlying allegations). AT&T's objections are therefore overruled. As to the July 21, 2008 declaration, AT&T's objection to the statement that "[b]oth parties refer to the Deposition of Simon Lewis and Francisco Molieri, Officers of Dataway, which

**IV.   MOTION FOR SANCTIONS**

On May 21, 2008, following Dataway's motion to compel hearing, the Court ordered AT&T to produce the requested records at issue by May 27, 2008. The Court recognized that many of the records may be privileged and/or protected by the work product doctrine, and ordered AT&T to produce a privilege log for documents it withheld on that basis, as required by this Court's standing order and the Federal Rules of Civil Procedure. However, the Court noted that AT&T could "log privileged documents by category if appropriate." Dataway waited for the summary judgment deadline to elapse and waited until one week after AT&T filed its motion for summary judgment to request sanctions. Dataway argues that AT&T only produced one large document, but AT&T notes that it timely produced all additional records except privileged matters. Dataway also complains about the categorization in AT&T's privilege log. AT&T, however, maintains that it tried to resolve the privilege log issue with counsel by asking her to give him a suggestion of how to categorize the privilege log or how itemization would be beneficial. AT&T suggested an informal conference with the Court and did not hear from Dataway's counsel again on the matter until she filed the motion for sanctions. Given the failure to adequately meet and confer as described above, the Court denies Dataway's request for sanctions.

**V.   CONCLUSION**

In accordance with the foregoing, the court GRANTS AT&T's motion for summary judgment as to all claims, and DENIES Dataway's motion to strike and motion for sanctions. This order terminates the above-captioned case and any pending motions. The clerk shall close the case file.

Dated: August 14, 2008

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge

---

constitute evidence satisfying the standard of F.R.C.P. 56" is sustained, because it constitutes an inadmissible legal conclusion. However, counsel may draw such conclusions in her brief. AT&T's objection to paragraphs 4 and 5 of the declaration are sustained because those paragraphs contain characterizations of the depositions. All other objections to the declaration are overruled.

**United States District Court**
For the Northern District of California